IRA L. GOTTLIEB (SBN 103236)
igottlieb@bushgottlieb.com
LISA C. DEMIDOVICH (SBN 245836)
ldemidovich@bushgottlieb.com
ADAM KORNETSKY (SBN 336919)
akornetsky@bushgottlieb.com
BUSH GOTTLIEB, A Law Corporation
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260
Telephone:  (818) 973-3200
Facsimile:  (818) 973-3201

Attorneys for United Teachers Los
Angeles and Cecily Myart-Cruz

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

## UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| CONCERNED JEWISH PARENTS AND TEACHERS OF LOS ANGELES, JOHN DOE, AND JANE DOES 1-5,<br><br>    Plaintiffs,<br><br>    vs.<br><br>LIBERATED ETHNIC STUDIES MODEL CURRICULUM CONSORTIUM; UNITED TEACHERS LOS ANGELES; CECILY MYART-CRUZ, THERESA MONTANO, AND GUADALUPE CARRASCO CARDONA, in their individual and official capacities as public employees; AND DOES 1-10,<br><br>    Defendants, | **CASE NO. 2:22-cv-03243-FMO-PVC**<br><br>**DEFENDANTS UNITED TEACHERS LOS ANGELES AND CECILY MYART-CRUZ'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT [FRCP 10(a), 12(b)(1) & (b)(6)] AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION**<br><br>**Hearing Date:** November 3, 2022<br>**Hearing Time:** 10:00 AM<br>**Location:** First Street Courthouse<br>      350 W. 1st Street<br>      Courtroom 6D<br>      Los Angeles, CA 90012 |

1    and

2    LOS ANGELES UNIFIED SCHOOL
3    DISTRICT,

4                Nominal Defendant.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

**PLEASE TAKE NOTICE THAT** on Thursday, November 3, 2022, at 10:00 a.m. or as soon thereafter as counsel may be heard in the courtroom of the Honorable Fernando M. Olguin, located in Courtroom 6D of the United States Courthouse, 350 West 1st Street, 6th Floor, defendants United Teachers Los Angeles and Cecily Myart-Cruz ("UTLA Defendants") will and do move to dismiss the Second Amended Complaint ("SAC") pursuant to Federal Rules of Civil Procedure 10(a), 12(b)(1), and 12(b)(6).

This motion is made upon the following grounds:

1.      Plaintiffs' SAC is subject to dismissal under Fed. R. Civ. P. Rule 10(a) because the "Doe" Plaintiffs cannot proceed anonymously without successfully seeking leave of court, and, despite having notice and the opportunity to have done so, they have not sought leave of court.

2.      Plaintiffs' claims in the SAC against UTLA Defendants are subject to dismissal under Fed. R. Civ. P. Rule 12(b)(1) because the Court lacks subject-matter jurisdiction to hear the claims.  Plaintiffs lack Article III standing for all forms of relief sought in the SAC because the injuries to Plaintiffs and members of the association Plaintiff, to the extent any injuries are even alleged, are not concrete and particularized, are not fairly traceable to the conduct of UTLA Defendants, and are not redressable.  Further, the claims are non-justiciable as political questions because there are no judicially discoverable and manageable standards for resolving the key questions, it would be impossible to resolve the questions without an initial policy determination of a kind clearly for nonjudicial discretion, and holding for Plaintiffs would require an impermissible interference with separation of powers. Finally, the claims are subject to the Religious Abstention Doctrine because there is no objective basis for the Court to resolve questions about the religious nature of Zionism.

3.      Plaintiffs' claims in the SAC against UTLA Defendants are subject to dismissal under Fed. R. Civ. P. Rule 12(b)(6) for failure to state a claim for the

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1  following reasons:

2  (a)  Plaintiffs' SAC fails to state a viable 42 U.S.C. §1983 claim against

3  either of the UTLA Defendants because none of the alleged speech or conduct

4  constitutes state action for the purposes of § 1983 or the underlying First

5  Amendment and Equal Protection claims.  The First Amendment Free exercise

6  clause claim additionally fails because Plaintiffs have not alleged substantial burden

7  on their exercise of religion.  Further, the claims fail because discriminatory intent is

8  insufficiently alleged and because Equal Protection claims cannot be based on the

9  content of teaching materials alone.

10  (b)  Plaintiffs' SAC fails to state a viable claim against either of the UTLA

11  Defendants under Title VI because the UTLA Defendants are not entities receiving

12  federal assistance and Plaintiffs are not intended beneficiaries of such assistance.

13  Also, the claim fails because discriminatory intent is insufficiently alleged and

14  because Title VI claims cannot be based on the content of teaching materials alone.

15  (c)  Plaintiffs' SAC fails to state a viable claim against either of the UTLA

16  Defendants under California Education Code section 220 because the UTLA

17  Defendants are not educational institutions receiving state aid.  Further, the Section

18  220 claim is to be construed in accordance with caselaw applying federal anti-

19  discrimination statutes and fails for the same reasons that the Title VI claim fails.

20  (d)  Plaintiffs' SAC fails to state a viable claim against either of the UTLA

21  Defendants on the other asserted California Education Code grounds, including

22  sections 51500, 51501, and 51225.3.  None of the statutes cited by Plaintiffs

23  regulate the conduct of private individuals and entities such as the UTLA

24  Defendants.  Additionally, none of the statutes preclude adoption by a school district

25  of instructional materials or use of instructional materials by teachers without a

26  notice and comment process or approval by the State Board of Education.  Further,

27  as to the content of instruction, Plaintiffs have failed to adequately plead abuse of

28  discretion.

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

(e)    Plaintiffs' SAC claims against the UTLA Defendants must be dismissed because they are subject to numerous defenses based on the protected nature of UTLA Defendants' conduct.  UTLA Defendants' actions are protected by the right to free speech and petition under the U.S. Constitution and the California Constitution.  Their activity is also petitioning activity targeted at teachers, the school district, and state lawmakers and officials, protected by the *Noerr-Penningon* Doctrine, and by California Code of Civil Procedure section 47.  Finally, their conduct is protected by the California Educational Employment Relations Act, Cal. Gov't Code § 3543.5(a)-(c).

This motion is made following a conference of counsel pursuant to L.R. 7-3. By email on September 20, 2022, UTLA Defendants gave Plaintiffs timely notice of the instant motion to dismiss and detailed the grounds for this motion, and had a substantive discussion regarding these grounds over the course of several emails. The topics had also been discussed in a prior meet and confer that occurred by phone on July 11, 2022, and the legal grounds previously discussed where re-raised in the September 20 email.  Plaintiffs' counsel indicated they were not available for a phone call until September 28.  On September 28, 2022, the parties participated in a phone conference at which they further discussed the grounds for this motion, but were unable to resolve their differences to avoid the need for this motion.


DATED:  September 30, 2022        IRA L. GOTTLIEB
                                 LISA C. DEMIDOVICH
                                 ADAM KORNETSKY
                                 BUSH GOTTLIEB, A Law Corporation



                                 By:    s/ *Adam Kornetsky*
                                 _____
                                    ADAM KORNETSKY
                                 Attorneys for United Teachers Los Angeles and
                                 Cecily Myart-Cruz

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

# **TABLE OF CONTENTS**

Page

I.    INTRODUCTION ................................................................................. 1

II.   STATEMENT OF ALLEGED FACTS ............................................... 2

III.  LEGAL STANDARD .......................................................................... 3

IV.   ARGUMENT ...................................................................................... 3

      A.    Plaintiffs cannot proceed anonymously. ................................... 3

      B.    Plaintiffs' claims are not justiciable and must be dismissed pursuant to  Rule 12(b)(1). ............................................................ 3

            1.    Plaintiffs lacks standing to seek prospective relief ...................... 3

            2.    SAC is non-justiciable under the Political Question Doctrine. ..................................................................................... 8

            3.    SAC is barred by the Religious Abstention Doctrine ................. 9

      C.    § 1983 claims against UTLA Defendants fail under Rule 12(b)(6). .................................................................................... 10

            1.    Plaintiffs fail to allege action under color of state law necessary under §1983 ........................................................... 11

            2.    Plaintiffs fail to allege a First Amendment violation. ............... 14

            3.    Plaintiffs fail to allege an Equal Protection claim. .................... 16

      D.    Plaintiffs fail to allege a viable Title VI claim ....................................... 18

            1.    Neither Plaintiffs nor UTLA Defendants are proper parties. ................................................................................. 18

            2.    Plaintiffs have not sufficiently pleaded intentional discrimination. ............................................................................. 19

      E.    Plaintiffs fail to allege a viable Education Code section 220 claim. ........................................................................................ 20

      F.    Plaintiffs' other Education Code claims should also be dismissed. ................................................................................. 21

      G.    UTLA Defendants have many defenses to the SAC, meriting dismissal. ................................................................................. 23

V.    CONCLUSION .................................................................................. 25

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

i

UTLA & MYART-CRUZ'S NOTICE OF MOTION AND MOTION TO DISMISS [FRCP 10(a), 12(b)(1) & (b)(6)]

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*1-800 Contacts, Inc. v. Steinberg,*
    107 Cal.App.4th 568 (2003) ................................................................ 24

*Action Apartment Ass'n v. City of Santa Monica,*
    41 Cal.4th 1232 (2007) ..................................................................... 24

*Alaska Right to Life Political Action Committee v. Feldman,*
    504 F.3d 840 (9th Cir. 2007) ............................................................... 4

*Alexander v. Sandoval,*
    532 U.S. 275 (2001) ................................................................... 18, 19

*Allen v. Wright,*
    468 U.S. 737 (1984) ................................................................ 4, 6, 7

*Am. Family Ass'n, Inc. v. City and Cnty. of S.F.,*
    277 F.3d 1114 (9th Cir. 2002) ............................................................. 15

*Arlington Heights v. Metro. Hous. Dev. Corp.,*
    429 U.S. 252 (1977) ....................................................................... 16

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ........................................................................ 3

*Assoc'd Gen. Contractors v. Cal. Dep't of Transp.,*
    713 F.3d 1187 (9th Cir. 2013) .............................................................. 6

*Augustine v. U.S.,*
    704 F.2d 1074 (9th Cir. 1983) .............................................................. 3

*Austin v. Univ. of Or.,*
    925 F.3d 1133 (9th Cir. 2019) ............................................................. 20

*B.Q.* v. *Dekok,*
    825 Fed.Appx. 533 (9th Cir. 2020) ....................................................... 11

*Babb v. Cal. Teachers Ass'n,*
    378 F.Supp.3d 857 (C.D. Cal. 2019) ...................................................... 25

Bᴜsʜ Gᴏᴛᴛʟɪᴇʙ
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

*Baker v. Carr*,
   369 U.S. 186 (1962) ............................................................................................8

*Baker v. United States*,
   722 F.2d 517 (9th Cir. 1983) .............................................................................6

*Bd. of Educ. v. Pico*,
   457 U.S. 853 (1982) ............................................................................................9

*Belgau v. Inslee*,
   975 F.3d 940 (9th Cir. 2020) ...........................................................................11

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ..........................................................................................13

*Brown v. Redlands*,
   2013 WL 55364669 (C.D. Cal. 2013) ..............................................................20

*Cal. Parents v. Noonan*,
   600 F. Supp. 2d 1088 (E.D. Cal. 2009) ...........................................................16

*Cal. Parents v. Torlakson*,
   267 F. Supp. 3d 1218 (N.D. Cal. 2017)...........................................14, 15, 16, 17

*Cal. v. Texas*,
   141 S. Ct. 2104 (2021) ........................................................................................6

*Caldwell v. Caldwell*,
   545 F.3d 1126 (9th Cir. 2008) ...........................................................................4

*Cannon v. Univ. of Chicago*,
   441 U.S. 677 (1979) .....................................................................................20, 21

*Cayley v. Nunn*,
   190 Cal.App.3d 300 (1987) ..............................................................................24

*City of L.A. v. Lyons*,
   461 U.S. 95 (1983) ..............................................................................................4

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) ............................................................................................5

*Collins v. Womancare*,
   878 F.2d 1145 (9th Cir. 1989) .........................................................................14

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

*Contreras v. Dowling*,
   5 Cal.App.5th 394 (2016) ................................................................................23

*Corrie v. Caterpillar, Inc.*,
   503 F.3d 974 (9th Cir. 2007) ............................................................................9

*Corser v. Cnty. of Merced*,
   2009 WL 174144 (E.D. Cal. Jan. 26, 2009) ...................................................12

*Crockett v. NEA-Alaska*,
   367 F.Supp.3d 996 (D. Alaska 2019) .............................................................25

*Davis v. FEC*,
   554 U.S. 724 (2008) ..........................................................................................4

*Dawson v. E. Side Union High Sch. Dist.*,
   28 Cal. App. 4th 998 (1994) ............................................................................22

*Doe 1 v. Manhattan Beach Unified Sch. Dist.*,
   No. 19-cv-6962, 2021 WL 3883910 (C.D. Cal. Aug. 31, 2021) .....................21

*Doe v. Kamehameha Sch.*,
   596 F.3d 1036 (9th Cir. 2010) ..........................................................................3

*Doe v. LAUSD*,
   No. 216CV00305CASJEMX, 2016 WL 4238636 (C.D. Cal. Aug. 8,
   2016) ...............................................................................................................20

*Donovan v. Poway*,
   167 Cal. App. 4th 567 (2008) ..........................................................................21

*El Rancho Unified School Dist. v. Nat'l Educ. Ass'n*,
   33 Cal. 3d 946 (1983) ......................................................................................25

*Empress LLC v. City & Cnty. of San Francisco*,
   419 F.3d 1052 (9th Cir. 2005) ........................................................................23

*Florer v. Congregation Pidyon Shevuyim*,
   639 F.3d 916 (9th Cir. 2011) ..........................................................................11

*Fobbs v. Holy Cross Health Sys. Corp.*,
   29 F.3d 1439 (9th Cir. 1994) ..........................................................................18

*Franklin v. Fox*,
   312 F.3d 423 (9th Cir. 2002) ..........................................................................13

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

*Garcetti v. Ceballos*,
    547 U.S. 410 (2006) ...................................................................................... 23

*Gardner v. Martin*,
    563 F.3d 981 (9th Cir. 2009) ........................................................................ 3

*Graham v. Portland Pub. Sch. Dist. #1J*,
    3:13-CV-00911-AC, 2015 WL 1010534 (D. Or. Mar. 5, 2015) ....................... 19

*Grimes v. Sobol*,
    832 F. Supp. 704 (S.D.N.Y 1993) ............................................................ 17, 18

*Griswold v. Driscoll*,
    625 F.Supp.2d 49 (D. Mass. 2009) ............................................................... 8

*Gritchen v. Collier*,
    254 F.3d 807 (9th Cir. 2001) ...................................................................... 12

*Grove v. Mead Sch. Dist. No. 354*,
    753 F.2d 1528 (9th Cir. 1985) (Canby, J., concurring) ............................. 15, 16

*Hutterville Hutterian Brethren, Inc. v. Sveen*,
    776 F.3d 547 (8th Cir. 2015) ...................................................................... 10

*Hyun Jin Moon v. Fam. Fed'n for World Peace & Unification Int'l*,
    2022 D.C. App. LEXIS 286 (Aug. 25, 2022) ................................................. 10

*Johnson v. Dodson Pub. Schs*,
    2006 U.S. Dist. LEXIS 110325 (D. Mont. May 4, 2006) ............................... 11

*Johnson v. Knowles*,
    113 F.3d 1114 (9th Cir. 1997) .................................................................... 12

*Jones v. Pore*,
    2007 U.S. Dist. LEXIS 47175 (D. Or. Jun. 26, 2007) .................................. 14

*Karasek v. Regents of the Univ. of Cal.*,
    No. 15-cv-03717-WHO, 2015 U.S. Dist. LEXIS 166524 (N.D. Cal.
    Dec. 11, 2015) ............................................................................................ 21

*Laird v. Tatum*,
    408 U.S. 1 (1972) ....................................................................................... 15

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

*Laird v. UTLA*,
 No. 2:21-cv-02313-FLA, 2022 U.S. Dist. LEXIS 137816 (C.D. Cal.
 Jul. 20, 2022) .................................................................................................. 14

*Lavine v. Blaine Sch. Dist.*,
 257 F.3d 981 (9th Cir. 2001) ........................................................................... 9

*Lujan v. Defenders of Wildlife*,
 504 U.S. 555 (1992) ........................................................................................ 6

*Mandel v. Bd. of Trs. of the Cal. State Univ.*,
 2018 U.S. Dist. LEXIS 39345 (N.D. Cal. Mar. 9, 2018) ........................... 17, 18

*Mathis v. Pac. Gas & Elec.*,
 75 F.3d 498 (9th Cir. 1996) ........................................................................... 14

*Minor v. Centocor, Inc.*,
 457 F.3d 632 (7th Cir. 2006) ......................................................................... 20

*Monteiro v. Tempe Union High Sch. Dist.*,
 158 F.3d 1022 (9th Cir. 1998) ..............................................................*passim*

*Mujica v. AirScan Inc.*,
 771 F.3d 580 (9th Cir. 2014) ........................................................................... 9

*Naffe v. Frey*,
 2012 U.S. Dist. LEXIS 195526 (C.D. Cal. Dec. 10, 2012).............................. 12

*Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*,
 795 F.3d 1124 (9th Cir. 2015) ....................................................................... 13

*Newman v. Point Park Univ.*,
 No. 2:20-cv-00204, 2022 U.S. Dist. LEXIS 60722 (W.D. Pa. Mar.
 31, 2022) .......................................................................................................... 9

*Oakleyy v. McWilliams*,
 879 F.Supp.2d 1087 (C.D. Cal. 2012)............................................................. 8

*Ohno v. Yasuma*,
 723 F.3d 984 (9th Cir. 2013) ......................................................................... 11

*Parker v. Hurley*,
 514 F.3d 87 (1st Cir. 2008) ........................................................................... 16

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

*Pers. Admin. of Mass. v. Feeney*,
    442 U.S. 256 (1979) ............................................................................17

*Polk Cty. v. Dodson*,
    454 U.S. 312 (1981) ............................................................................12

*Radcliffe v. Rainbow Const. Co.*,
    254 F.3d 772 (9th Cir. 2001) .............................................................13

*Rashdan v. Geissberger*,
    764 F.3d 1179 (9th Cir. 2014)............................................................20

*Royer v. Steinberg*,
    90 Cal.App.3d 490 (1979).................................................................24

*Sabra v. Maricopa Cty.*,
    44 F.4th 867 (9th Cir. 2022).............................................................11

*Safe Air for Everyone v. Meyer*,
    373 F.3d 1035 (9th Cir. 2004).............................................................3

*Schucker v. Rockwood*,
    846 F.2d 1202 (9th Cir. 1988)...........................................................13

*Scott v. McDonnell Douglas Corp.*,
    37 Cal.App.3d 277 (1974)................................................................24

*Serbian Orthodox Diocese for United States and Canada v Milivojevich*,
    426 U.S. 696 (1976) .............................................................................8

*Silberg v. Anderson*,
    50 Cal. 3d 205 (1990)........................................................................23

*Simon v. E. Kentucky Welfare Rights Org.*,
    426 U.S. 26 (1976) ...............................................................................7

*Smith v. Barton*,
    914 F.2d 1330 (9th Cir. 1990)...........................................................20

*Smith v. Cal. Bd. of Educ.*,
    No. CV-13-5395 FMO, 2014 U.S. Dist. LEXIS 159317 (C.D. Cal.
    Oct. 6, 2014) .....................................................................................19

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

*Smith v. Cal. Bd. of Educ.*,
   No. CV-13-5395 FMO, 2014 U.S. Dist. LEXIS 92669 (C.D. Cal.
   Jun. 3, 2014) ................................................................................................ 18

*Susan B. Anthony List v. Driehaus*,
   573 U.S. 149 (2014) ...................................................................................... 6

*T. K. v. Adobe Sys.*,
   No. 17-CV-04595-LHK, 2018 U.S. Dist. LEXIS 142988 (N.D. Cal.
   Aug. 22, 2018) .............................................................................................. 6

*Texas v. United States*,
   523 U.S. 296 (1998) ...................................................................................... 6

*Tsao v. Desert Palace, Inc.*,
   698 F.3d 1128 (9th Cir. 2012) .............................................................. 12, 13

*United Bhd. of Carpenters & Joiners v. Bldg. & Constr. Trades Dep't*,
   770 F.3d 834 (9th Cir. 2014) ...................................................................... 13

*Valley Forge Christian Coll. v. Americans United for Separation of
   Church & State, Inc.*,
   454 U.S. 464 (1982) ...................................................................................... 4

*Van Dyke v. Regents of Univ. of Cal.*,
   815 F. Supp. 1341 (C.D. Cal. 1993) ............................................................. 8

*Van Ort v. Estate of Stanewich*,
   92 F.3d 831 (9th Cir. 1996) ........................................................................ 12

*Vance v. Universal Amusement Co.*,
   445 U.S. 308 (1980) ...................................................................................... 7

*Vernon v. City of L.A.*,
   27 F.3d 1385 (9th Cir. 1994) ...................................................................... 15

*Wash. v. Davis*,
   426 U.S. 229 (1976) .................................................................................... 16

*Wilderness Soc., Inc. v. Rey*,
   622 F.3d 1251 (9th Cir. 2010) ...................................................................... 5

*Wilson v. Superior Court of L.A. Cty.*,
   13 Cal. 3d 652 (1975) ................................................................................. 23

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

UTLA & MYART-CRUZ'S NOTICE OF MOTION AND MOTION TO DISMISS [FRCP 10, 12(b)(1) & (b)(6)]

*Woodrum v. Woodward Cty.*,
   866 F.2d 1121 (9th Cir. 1989) ............................................................... 13

*Wright v. SEIU*,
   2022 U.S. App. LEXIS 26099 (9th Cir. Sep. 19, 2022) ..................... 7

**Statutes**

42 U.S.C. §1983 .................................................................................... 10, 11

42 U.S.C. § 2000d ....................................................................................... 18

Cal. Educ. Code § 220 ............................................................................ 2, 21

Cal. Educ. Code § 51225.3 ................................................................ 2, 20, 21

Cal. Educ. Code § 51500 ............................................................................. 2

Cal. Educ. Code § 51501 ............................................................................. 2

Civil Code section 47(b) ...................................................................... 23, 24

Civil Rights Act Title VI .................................................................... *passim*

Educ. Code § 210.3 ..................................................................................... 21

Educ. Code § 51511 .................................................................................... 23

EERA § 3540 et seq. ................................................................................... 25

Gov't Code § 3543(a) ................................................................................. 25

**Other Authorities**

First Amendment .................................................................................. 10, 23

California Constitution Article I, section 2(a) ........................................... 23

Fed. R. Civ. Pro. 8(a) ................................................................................. 20

Fed. R. Civ. Pro. 10(a) ................................................................................. 3

Fed. R. Civ. Pro. 12(b)(1) ................................................................... 1, 2, 3

Fed. R. Civ. Pro. 12(b)(6) .............................................................. 1, 2, 3, 10

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs' claims for declaratory and injunctive relief against defendants United Teachers Los Angeles ("UTLA"), a labor union representing educators in the Los Angeles Unified School District ("LAUSD" or "District"), and Cecily Myart-Cruz, its president (collectively, "UTLA Defendants"), regarding advocacy related to the Liberated Ethnic Studies Model Curriculum (the "LESMC") must be dismissed for lack of subject matter jurisdiction and failure to state a claim pursuant to Federal Rules of Civil Procedure Rule 12(b)(1) and 12(b)(6).  Plaintiffs, consisting of an association and anonymous parents and teachers who do not allege concrete, cognizable or particularized harm attributable to UTLA Defendants have failed to establish the requisite elements of standing under Article III.  In essence, they are attempting to litigate the adoption of an ethnic studies curriculum in LAUSD before any curriculum has actually been adopted (or even proposed), in an impermissible attempt to get a court to rule, with no case or controversy before it, that certain political views are inherently antisemitic, and consequently preemptively restrain private actors from communicating these ideas they find offensive.  The Court does not have jurisdiction to hear their claims.

Further, Plaintiffs' Second Amended Complaint ("SAC") does not state legally viable claims under the First Amendment, the Fourteenth Amendment Equal Protection Clause, Title VI, or the California Education Code.  Through conclusory allegations, they inaccurately brand UTLA Defendants' legally protected public efforts to advocate for a more academically rigorous version of ethnic studies as somehow discriminatory.  But ideas may not be banned for merely being offensive to some people, and UTLA Defendants, as private actors, have First Amendment protection and are not constrained in their advocacy by the provisions Plaintiffs claim they are violating.

UTLA Defendants respectfully request that the Court dismiss the SAC against

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1  them under Rule 12(b)(1) and with prejudice under Rule 12(b)(6).

## II.    STATEMENT OF ALLEGED FACTS

On August 25, 2020, LAUSD began to require high school students to take at least one class in ethnic studies.  SAC ¶ 2.  LAUSD also integrated ethnic studies into PreK-8 curricula.  SAC ¶ 2.  In October 2021, California enacted a law establishing an ethnic studies graduation requirement and adopting an Ethnic Studies Curriculum.  SAC ¶ 3.  UTLA Defendants have allegedly engaged in advocacy surrounding the scope of ethnic studies within LAUSD, including whether or how the curriculum should treat the Israel-Palestine conflict.  UTLA has hosted an Ethnic Studies Panel open to the public discussing the subject, SAC ¶ 8; posted on social media promoting learning about ethnic studies and teaching about the Israel-Palestine conflict, SAC ¶ 92; and bargained for and appointed members to a joint LAUSD-UTLA Ethnic Studies Committee, SAC ¶ 32-33.  During the Panel, Myart-Cruz called for "authentic" ethnic studies.  SAC ¶ 92.

Plaintiffs do not make clear which of these specific activities serve as the bases of their claims against UTLA Defendants.  The SAC's gravamen appears to be UTLA Defendants are promoting the LESMC in LAUSD and, in doing so, are violating Plaintiffs' federal constitutional and statutory rights as well as the California Education Code.  SAC ¶ 200-32.  They allege that LESMC advocacy violates: (1) the Equal Protection Clause because the curriculum is based on animus against Israel and Zionism, SAC ¶ 200-04; (2) the Free Exercise Clause because the curriculum's purpose is to suppress expression of and support for Zionism, SAC ¶ 205-10; (3) Title VI of the Civil Rights Act because the curriculum discriminates against Israel and the belief in Zionism, SAC ¶ 211-16; (4) California Education Code sections 220, 51500, 51501, and 51225.3 because the curriculum criticizes Israel and Zionism, SAC ¶ 217-29; and (5) section 51225.3 because LESMC advocacy caused the teaching of unapproved materials without public notice and comment, SAC ¶ 230-32.

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

## III.    LEGAL STANDARD

A Rule 12(b)(6) motion should be granted if the complaint does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A claim is plausible only when "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  A court should disregard conclusory factual allegations, and "draw on its judicial experience and common sense" to determine whether a claim is plausible. *Id.* at 678-79.

On a Rule 12(b)(1) motion to dismiss, the Court may consider evidence beyond the complaint and "need not presume the truthfulness of the plaintiff's allegations" concerning jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  The moving party should prevail "if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Augustine v. U.S.*, 704 F.2d 1074, 1077 (9th Cir. 1983).  The Court may dismiss without leave to amend if amendment would be futile. *Gardner v. Martin*, 563 F.3d 981, 990 (9th Cir. 2009).

## IV.    ARGUMENT

### A.    Plaintiffs cannot proceed anonymously.

Rule 10(a) of the Federal Rules of Civil Procedure requires that the title of a complaint name all the parties.  The individual "Doe" Plaintiffs have not sought leave from the court to proceed anonymously or pseudonymously.  Unless such leave is granted, the Complaint is subject to dismissal. *Doe v. Kamehameha Sch.*, 596 F.3d 1036 (9th Cir. 2010).

### B.    Plaintiffs' claims are not justiciable and must be dismissed pursuant to  Rule 12(b)(1).

#### 1.    Plaintiffs lacks standing to seek prospective relief.

A plaintiff in federal court must establish Article III jurisdiction for each form

Bush Gottlieb
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1  of relief sought.  *Davis v. FEC*, 554 U.S. 724, 734 (2008).  Plaintiffs must

2  demonstrate they (1) "suffered an injury in fact that is 'concrete and particularized'

3  and 'actual or imminent, not conjectural or hypothetical;' (2) a causal connection

4  between that injury and the complained-of conduct; and (3) that a favorable decision

5  will likely redress the alleged injury." *Alaska Right to Life Political Action*

6  *Committee v. Feldman*, 504 F.3d 840, 848 (9th Cir. 2007) (quoting *Lujan v.*

7  *Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  Further, for standing for

8  prospective relief, the plaintiff must show "real and immediate threat of future

9  injury by the defendant." *City of L.A. v. Lyons*, 461 U.S. 95, 107 n.8 (1983)

10      Plaintiffs do not meet these requirements.  First, they have failed to articulate

11  a concrete and particularized injury to themselves from students learning about the

12  Israel-Palestine conflict.  That a plaintiff is offended by particular conduct or speech

13  does not mean that they have a concrete and particularized injury.  While stigmatic

14  injury may be the basis for Article III standing, it does so only for "those persons

15  who are personally denied equal treatment by the challenged discriminatory

16  conduct." *Allen v. Wright*, 468 U.S. 737, 755 (1984) (cleaned up); *Valley Forge*

17  *Christian Coll. v. Americans United for Separation of Church & State, Inc*., 454

18  U.S. 464, 485–86 (1982) ("[Plaintiffs] fail to identify any personal injury suffered

19  by them as a consequence of the alleged constitutional error, other than the

20  psychological consequence presumably produced by observation of conduct with

21  which one disagrees. That is not an injury sufficient to confer standing under Art.

22  III, even though the disagreement is phrased in constitutional terms.").  Even in the

23  establishment clause context, where injury requirements are relaxed, merely

24  encountering materials that were posted online is generally not sufficient. *Caldwell*

25  *v. Caldwell*, 545 F.3d 1126, 1133 (9th Cir. 2008)

26      Here, there is no alleged past, present, or future disparate treatment or direct

27  impact whatsoever, let alone disparate treatment of Plaintiffs personally; they are at

28  most attempting to raise the claims of others not before the Court.  Indeed, while

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

Plaintiffs allege, upon information and belief, that Defendant Dueñas is teaching the challenged LESMC materials in the classroom, they do not allege that they, or any of their children, are or will be in a classroom where the LESMC is taught, or even that they attend or will attend a school where the LESMC is taught.[1]

Rather, the parent Plaintiffs allege that they are being harmed because they are being "forced" to choose between sending their children to school and protecting their children's religious beliefs.  SAC ¶ 29.  But their children are still in school and are *not* being taught the LESMC, so the only harm is that they made a "choice", not that their children are actually exposed to offensive curricular content.  But even if Plaintiffs seek to mitigate a conjectural risk of harm from the future teaching of the LESMC, this would not be sufficient for standing.  Plaintiffs  "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending."  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013).  To the extent that Plaintiffs are claiming that they are injured by the "concealment" of teaching materials that could only conceivably harm them if conveyed in class, their allegations are insufficient because they have not stated how this supposed deprivation of information affects their concrete interests. *See Wilderness Soc., Inc. v. Rey*, 622 F.3d 1251 (9th Cir. 2010).  They also cannot establish that they have any right to such information, so the injury is not cognizable.

Likewise, the former teacher plaintiff (Jane Doe 2) and teacher plaintiff (Jane Doe 3) do not allege any cognizable injury.  No injury to the former LAUSD teacher is alleged aside from the fact that she "chose to not realign herself with the current

---

[1] They further allege that Defendant Cardona is teaching the LESMC, but do not allege she is teaching the challenged portion.  FAC ¶ 45.  They also vaguely allege that an online class "led teachers to bring the LESMC 'to their own classrooms,'" but they do not allege that these teachers are teaching the challenged portion of the curriculum, and UTLA's only alleged connection to the class is that it provided "fiscal commitments" to the sponsors of the class. FAC ¶ 39.

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1  leadership of UTLA due to UTLA's escalating antisemitism." SAC ¶ 23.  This

2  internal union political grievance is far too vague to establish standing, especially

3  for prospective relief.  *Baker v. United States*, 722 F.2d 517, 518 (9th Cir. 1983)

4  (explaining that the facts showing standing must be clearly apparent on the face of

5  the complaint). As for the current teacher, the diffuse allegation that she is forced to

6  work in an environment where her "identity is being officially denounced," SAC 30

7  ¶, by other teachers is neither concrete nor particularized, nor attributable to UTLA

8  Defendants.  *Allen v. Wright*, 468 U.S. at 755.

9       Plaintiff Association also points to no injury that can provide it with standing.

10  There is no harm to the Association itself alleged, and none of the "Doe" members

11  from whom it could derive associational standing have standing themselves. *Assoc'd*

12  *Gen. Contractors v. Cal. Dep't of Transp.*, 713 F.3d 1187, 1194 (9th Cir. 2013).

13       Some SAC allegations appear to contemplate future injuries that may occur

14  due to more widespread adoption of the LESMC.  These are plainly "conjectural"

15  and "hypothetical" injuries rather than "actual or imminent ones," and as such they

16  cannot provide a basis for standing.  *Lujan*, 504 U.S. at 560.[2]  To be imminent, there

17  must be a "substantial risk" that an injury will occur.  *Susan B. Anthony List v.*

18  *Driehaus*, 573 U.S. 149, 158 (2014).  LAUSD—not UTLA Defendants—later

19  adopting the LESMC is a possibility, not a probability, and would depend on a

20  tenuous chain of speculation that includes the future independent and unpredictable

21  decisions by LAUSD.  *Cal. v. Texas*, 141 S. Ct. 2104, 2117 (2021).  Likewise, that a

22  student *might* be assigned to a teacher who *might* teach allegedly objectionable

23  materials is too speculative to confer standing.  *See*, *e.g.*, *T. K. v. Adobe Sys.*, No.

24  17-CV-04595-LHK, 2018 U.S. Dist. LEXIS 142988, at *13 (N.D. Cal. Aug. 22,

25  2018) (dismissing prospective relief claims with prejudice on standing grounds as a

26

27  ────────────────

28  [2] For similar reasons, these claims are not ripe. *Texas v. United States*, 523 U.S. 296, 300 (1998) ("[A] claim is not ripe for adjudication if it rests on contingent future events that may not occur as anticipated, or indeed may not occur at all.").

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

UTLA & MYART-CRUZ'S NOTICE OF MOTION AND MOTION TO DISMISS [FRCP 10, 12(b)(1) & (b)(6)]

"possible requirement by a hypothetical future teacher cannot be said to be certainly impending"). Thus, the future event claims are premature and must be dismissed.

Even if Plaintiffs had adequately alleged they are suffering or will imminently suffer a concrete and particularized injury from the teaching of the LESMC, they do not allege any facts that plausibly suggest that such an injury would be fairly traceable to the UTLA Defendants. Speculation that speaking at, hosting, or otherwise supporting events discussing the LESMC led or will lead specific teachers to teach the curriculum, or the District to adopt it, is not sufficient to support standing. *Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26, 38 (1976) (holding injuries to plaintiffs by third parties were not fairly traceable to the promulgation by defendant IRS of a tax rule that "encouraged" third parties' actions because third parties' decisions may have been motivated by other concerns). Indeed, here the UTLA Defendants are removed from the teaching of Plaintiffs' children in the classroom by individual teachers in the future by at least four levels of contingency and third-party decision-making—they *might* continue to sponsor events supporting the LESMC, which *might* lead to other educators encouraging teachers to teach the LESMC, who *might* decide to teach the LESMC and *might* end up teaching Plaintiffs' children. Even at the motion to dismiss stage, this is far too attenuated. *Allen v. Wright*, 468 U.S. at 757; *Wright v. SEIU*, 2022 U.S. App. LEXIS 26099, at *11-12 (9th Cir. Sep. 19, 2022).

Finally, Plaintiffs' claims against UTLA Defendants are not redressable because they seek an injunction amounting to an unconstitutional prior restraint on speech. *Vance v. Universal Amusement Co.*, 445 U.S. 308, 315 (1980) (noting the onerous burden that an injunction prohibiting future speech must overcome). Plaintiffs' requested remedy with respect to UTLA Defendants, issuing "declaratory and injunctive relief prohibiting any Defendant from counseling teachers not to disclose, or to take any steps to conceal from any person, the content of the material such teachers teach about Ethnic Studies" and prohibiting them from "using the

Bush Gottlieb
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

elements of the LESMC at issue in this case in their public school classrooms or in any training sessions funded by public funds, or for which salary points are awarded by LAUSD [and] counseling public school teachers to conceal the content of their teaching materials from the public, from parents, or from any other public school employees" is patently overbroad and suppressive of protected speech. SAC, Prayer ¶ 2, 6. *Van Dyke v. Regents of Univ. of Cal.*, 815 F. Supp. 1341, 1346 (C.D. Cal. 1993) (finding similar requested remedy vague and overbroad). *Any* effective injunction against UTLA Defendants would necessarily be an unconstitutionally overbroad prior restraint of speech because of the impossibility to define what future speech would be unprotected. *Id.*; *Oakley v. McWilliams*, 879 F.Supp.2d 1087, 1090 (C.D. Cal. 2012) ("[I]njunction [would] be ineffective, overbroad, or both.").

### 2.    SAC is non-justiciable under the Political Question Doctrine.

Courts are not appropriate venues for determining whether anti-Zionism is inherently anti-Semitic or whether Zionism is fundamental to Judaism. These questions are political and religious questions for legislators, school boards, or individual teachers, or clergy and congregations to decide and act upon, and are not justiciable by the courts. There are no judicially discoverable and manageable standards for resolving these types of questions, and it would be impossible to resolve them without an initial policy determination of a kind clearly for nonjudicial discretion. *Baker v. Carr*, 369 U.S. 186, 217 (1962). Similarly, the Courts should not be embroiled in deciding questions of religious doctrine. *Serbian Orthodox Diocese for U.S. and Canada v Milivojevich*, 426 U.S. 696 (1976).

The non-justiciability of political questions grew out of a concern for the separation of powers, *Id.* at 211, and decisions regarding curriculum are generally political questions that should not be decided by the judiciary. "[D]ecisions concerning what should be taught must be made by state and local school boards rather than by federal judges." *Griswold v. Driscoll*, 625 F.Supp.2d 49, 54 (D. Mass. 2009). Courts have called for deference to school officials, recognizing they

Bush Gottlieb
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

hold great discretion in determining what materials should be taught in public schools, as well as the scope of discussion regarding certain issues and events. *Bd. of Educ. v. Pico*, 457 U.S. 853, 863-64 (1982); *Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1028 (9th Cir. 1998); *Lavine v. Blaine Sch. Dist.*, 257 F.3d 981, 988 (9th Cir. 2001) ("In the school context, we have granted educators substantial deference as to what speech is appropriate.").  This Court should decline to dictate how LAUSD should instruct on the Israel-Palestine conflict or what the scope of LAUSD's ethnic studies curriculum should be before LAUSD does so.

Moreover, this Court should not intervene in this political question addressing foreign policy issue in a manner that would upset the separation of powers.  *Mujica v. AirScan Inc.*, 771 F.3d 580 (9th Cir. 2014) ("Courts have found that U.S. interests weigh against hearing cases where doing so would be harmful to U.S. foreign policy.").  In *Corrie v. Caterpillar, Inc.*, the Ninth Circuit held claims Caterpillar should not have sold bulldozers to Israeli Defense Forces were nonjusticiable because they raised a political question.  503 F.3d 974, 982 (9th Cir. 2007).  Just as in *Corrie*, allowing this case to proceed would require the questioning of foreign policy decisions and deciding a debate within Judaism not subject to judicial review. This court should decline to hold that a defendant—who might in the future be a State Department official rather than a schoolteacher—may be liable for civil rights violations merely for stating a position on Zionism or the rights of Jewish Israelis and Palestinians.  *Newman v. Point Park Univ.*, No. 2:20-cv-00204, 2022 U.S. Dist. LEXIS 60722, at *80 (W.D. Pa. Mar. 31, 2022) (declining to enjoin expression of strong anti-Zionist views that allegedly created a hostile work environment). Thus, Plaintiffs' invitation to wade into this political question should be declined.

### 3.    SAC is barred by the Religious Abstention Doctrine.

Plaintiffs ask this Court to resolve, or take their side in, thorny and hotly debated religious doctrinal questions relating to the role of Zionism in Judaism, and how that interrelationship should be taught in public schools. This is not a

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

circumscribed situation where there is an objective basis, such as the language of a synagogue's corporate charter, for a court to resolve a secular aspect of a religious institution's dispute.  Instead, Plaintiffs seek judicial endorsement of their particular views, as the basis for making decisions about the content of LAUSD's curriculum. Just as this Court should not wade into the political quicksand that characterizes the heated debate about Israel/Palestine, it should not delve into the debate about the proper role for Zionism within Jewish religion. "The First Amendment generally precludes civil courts from resolving religious conflicts, in what is sometimes called the religious abstention doctrine." *Hyun Jin Moon v. Fam. Fed'n for World Peace & Unification Int'l*, 2022 D.C. App. LEXIS 286 (Aug. 25, 2022); *Hutterville Hutterian Brethren, Inc. v. Sveen*, 776 F.3d 547 (8th Cir. 2015); *Episcopal Church Cases*, 45 Cal. 4th 467, 485 (2009) ("State courts must not decide questions of religious doctrine; those are for the church to resolve."). The fundamental questions raised by Plaintiffs about the role Zionism plays in Judaism would require a court to answer fundamental religious doctrinal questions that rabbis, scholars and congregations have debated for centuries, without resolution. There is no place for an Article III Court to participate in, much less rule upon, such a debate. This religious abstention principle is sufficient by itself to warrant dismissal without leave to amend.

### C.    § 1983 claims against UTLA Defendants fail under Rule 12(b)(6).

Plaintiffs bring suit under 42 U.S.C. §1983 alleging that their First Amendment and Equal Protection rights are being violated through UTLA Defendants' promotion of the LESMC, which Plaintiffs claim is inherently discriminatory and burdens their free exercise of religion for criticizing the State of Israel and Zionism.  The § 1983 claims against UTLA Defendants must be dismissed because Plaintiffs have not alleged facts to conclude their conduct constitutes "state action" as needed to pursue a § 1983 claim, and because they do

Bush Gottlieb
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

not assert viable First Amendment or Equal Protection claims.[3]

### 1.    Plaintiffs fail to allege action under color of state law necessary under §1983.

For a Section 1983 claim to be viable, the defendant must be acting "under color of state law." This requires "state action" such that "the conduct allegedly causing the deprivation of a federal right [is] fairly attributable to the State." *Ohno v. Yasuma*, 723 F.3d 984, 993 (9th Cir. 2013) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936-37 (1982)); *see also Belgau v. Inslee,* 975 F.3d 940, 947 (9th Cir. 2020).  The only basis for liability alleged that could even conceivably turn UTLA Defendants' alleged activities into state action is the teaching of the LESMC in the classroom by teachers, while they are in the employ of LAUSD, not UTLA. There is nothing that would turn UTLA Defendants into joint participants in this activity.

The private parties' conduct is presumed not to be state action.  *Florer v. Congregation Pidyon Shevuyim*, 639 F.3d 916, 922 (9th Cir. 2011).  UTLA, a labor union, is a private party and not a state actor, regardless of its negotiated right to appoint members to the LAUSD-UTLA Ethnic Studies Committee, a purely advisory committee under the CBA.  SAC ¶ 33. And although Myart-Cruz is alleged to be a UTLA appointee on this Committee, Plaintiffs do not allege that this Committee has actually *done* anything.  Further, the SAC does not describe the specifics of her role on the Committee, and none of her activities—which the SAC admits were pursuant to her role as UTLA President, SAC ¶ 41—are alleged to be within the scope of her Committee role.[4] That Myart-Cruz serves on this advisory

---

[3] Parents may not bring § 1983 claims on their own behalf based on violation of their children's rights. *Johnson v. Dodson Pub. Schs*, 2006 U.S. Dist. LEXIS 110325, at *17 (D. Mont. May 4, 2006) (citing cases).  Teacher plaintiffs also have no right to bring a § 1983 claim based on their students' rights.

[4] If Myart-Cruz were a state actor, she would be entitled to qualified immunity and thus dismissal because the illegality of her actions are not "beyond debate" based on existing precedent.  *Sabra v. Maricopa Cty.*, 44 F.4th 867 (9th Cir. 2022); *B.Q.* v. *Dekok*, 825 Fed.Appx. 533 (9th Cir. 2020).

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

Committee does not imbue all of her related speech and activity, done in her capacity as UTLA President, with the character of that position, even if her role as a committee member "may have enhanced [her] influence." *Johnson v. Knowles*, 113 F.3d 1114, 1117 (9th Cir. 1997) (dismissing under 12(b)(6) a § 1983 claim against a state assemblyman based on his actions associated with his *ex officio* role as member of a state-established and regulated party committee because the committee was non-governmental in nature, and he possessed no power on the committee by virtue of his legislative office).[5]  Even if Myart-Cruz's activities were within the scope of her Committee work, and even if the advisory Committee were a state actor, she herself would not be a state actor because, by virtue of her legal duties as a union officer and prohibitions against employer interference and domination, she is speaking and acting as a private representative of her constituents.  *See Polk Cty. v. Dodson*, 454 U.S. 312, 317-19 (1981) (holding public defenders employed by a county are not state actors).  There are four tests under which the conduct of a private actor *may* amount to state action: (1) the public function test; (2) the joint action test; (3) the state compulsion test; and (4) the governmental nexus test. *Tsao v. Desert Palace, Inc*., 698 F.3d 1128, 1140 (9th Cir. 2012).

The public function, governmental compulsion, and governmental nexus tests are plainly inapplicable here, leaving only the joint action test.  The joint action test

---

[5] *See also Gritchen v. Collier*, 254 F.3d 807, 812-13 (9th Cir. 2001) ("Just because [defendant] is a police officer does not mean that everything he does is state action."); *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835-36 (9th Cir. 1996) ("If a government officer does not act within his scope of employment or under color of state law, then that government officer acts as a private citizen."); *Naffe v. Frey*, 2012 U.S. Dist. LEXIS 195526, at *12-16 (C.D. Cal. Dec. 10, 2012) (dismissing because plaintiff did not sufficiently allege that the complained-of activities were within the scope of defendant's public employment); *Corser v. Cnty. of Merced*, 2009 WL 174144, at *13 (E.D. Cal. Jan. 26, 2009) (holding that county advisory board with no decision making authority is not state actor, and even if it were a state actor, the chairperson's comments on an issue related to the board's purpose could not be presumed to be said in his official capacity).

asks "whether state officials and private parties have acted in concert in effecting a

particular deprivation of constitutional rights." *Id*. (cleaned up). This requirement

can be satisfied by either "[1] proving the existence of a conspiracy or [2] by

showing that the private party was a willful participant in joint action." *Franklin v.

Fox*, 312 F.3d 423, 445 (9th Cir. 2002).  As to conspiracy, "it is not enough merely

to include conclusory allegations that certain actions were the result of a conspiracy;

the plaintiff must allege facts that make the conclusion plausible." *Name.Space, Inc.

v. Internet Corp. for Assigned Names & Numbers*, 795 F.3d 1124, 1129 (9th Cir.

2015).  "A conclusory allegation of agreement at some unidentified point does not

supply facts adequate to show illegality." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

556-57 (2007).  Thus, to allege a conspiracy, "the complaint must answer the basic

questions: who, did what, to whom (or with whom), where, and when?" *United Bhd.

of Carpenters & Joiners v. Bldg. & Constr. Trades Dep't*, 770 F.3d 834, 842-43 (9th

Cir. 2014).  It also must show the conspiracy actually resulted in a deprivation of

rights. *Woodrum v. Woodward Cty*., 866 F.2d 1121, 1126 (9th Cir. 1989).

       Here, the who, what, when, and where of the conspiracy are entirely absent.

There are only vague and conclusory allegations of an agreement with unknown

teachers at an unknown time and place, without any specified effect, and allegations

that certain Defendants—but not the UTLA Defendants—published materials that

arguably would encourage teachers to teach LESMC materials.  These facts cannot

sustain an inference of conspiracy.  Indeed, even if Plaintiffs could allege that

UTLA Defendants directly encouraged specific teachers at a specific time and place

to teach specific, objectionable things, and those teachers did so, this kind of mere

encouragement without actual agreement would not sustain an allegation of

conspiracy.  *See*, *e.g.*, *Radcliffe v. Rainbow Const. Co*., 254 F.3d 772, 783-784 (9th

Cir. 2001) (holding individual's encouragement of district attorney's investigation

did not constitute "meeting of the minds" required for Section 1983 conspiracy);

*Schucker v. Rockwood*, 846 F.2d 1202, 1204-05 (9th Cir. 1988) (prosecuting a

Bush Gottlieb
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1  lawsuit does not make a private party a state actor in conspiracy with the judge

2  where there is no *agreement*, *e.g.* for a favorable ruling in exchange for a bribe);

3  *Jones v. Pore*, 2007 U.S. Dist. LEXIS 47175, at *11-12 (D. Or. Jun. 26, 2007) ("If a

4  private citizen advocates a particular action, and officials then take the proposed

5  action, that is not sufficient to show a conspiracy between the private citizen and the

6  officials."). As for the "willful participant in joint action" prong, a private party is

7  liable under this theory only if its actions are "inextricably intertwined" with

8  government action. *Mathis v. Pac. Gas & Elec.*, 75 F.3d 498, 503 (9th Cir. 1996).

9  This requires a showing of "substantial cooperation." *Collins v. Womancare*, 878

10 F.2d 1145, 1154 (9th Cir. 1989). Here, no allegations approach this type of

11 cooperation; at best, there is unilateral encouragement. Courts have held

12 significantly closer relationships between a union and a governmental actor not to be

13 joint action. *E.g. Laird v. UTLA*, No. 2:21-cv-02313-FLA, 2022 U.S. Dist. LEXIS

14 137816, at *22-24 (C.D. Cal. Jul. 20, 2022) (holding UTLA not a state actor under

15 joint action test by causing LAUSD to deduct dues from an employee paycheck).

16                **2.    Plaintiffs fail to allege a First Amendment violation.**

17        Plaintiffs contend Defendants violate the First Amendment by implementing

18 the LESMC in order to "suppress public expression of, and support for, Zionist

19 beliefs and to prevent Zionists from acting on their sincerely held religious beliefs."

20 SAC ¶ 207. Their allegations are woefully insufficient to state a viable Free

21 Exercise claim because they have failed to state how their religious conduct has

22 been or will be impacted or hindered in any way, a threshold requirement.[6] Even if

23 criticism of Zionism were criticism of Judaism—a religious tenet that remains the

24 subject of fervent disagreement within the global Jewish community—such

25 criticism is not tantamount to interfering with the exercise of religion. *Cal. Parents

26 v. Torlakson*, 267 F. Supp. 3d 1218, 1225-27 (N.D. Cal. 2017).

27

28 [6] Even if they could pass this threshold, they have not sufficiently pleaded intent.

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

UTLA & MYART-CRUZ'S NOTICE OF MOTION AND MOTION TO DISMISS [FRCP 10, 12(b)(1) & (b)(6)]

1    Plaintiffs alleging a Free Exercise claim are required to demonstrate a

2    *substantial* burden on the exercise of religion. *Am. Family Ass'n, Inc. v. City and*

3    *Cnty. of S.F.*, 277 F.3d 1114, 1123-24 (9th Cir. 2002).  A substantial burden is more

4    than an inconvenience, and must actually interfere with "a tenet or belief that is

5    central to religious doctrine." *Vernon v. City of L.A.*, 27 F.3d 1385, 1393 (9th Cir.

6    1994).  "Alleging a subjective chilling effect on free exercise rights is not sufficient

7    to constitute a substantial burden." *Am. Family*, 277 F.3d at 1124; *see also Laird v.*

8    *Tatum*, 408 U.S. 1, 13-14 (1972).  That is, specific religious conduct must be

9    affected; the actual exercise of religion must be directly impacted.  *Id.* at 1124; *Cal.*

10    *Parents*, 267 F.Supp.3d at 1225-27.  "Distinctions must be drawn between those

11    governmental actions that actually interfere with the exercise of religion, and those

12    that merely require or result in exposure to attitudes and outlooks at odds with

13    perspectives prompted by religion." *Grove v. Mead Sch. Dist. No. 354*, 753 F.2d

14    1528, 1543 (9th Cir. 1985) (Canby, J., concurring).

15    In *California Parents*, a court dismissed with prejudice a similar claim to

16    Plaintiffs'.  267 F.Supp.3d at 1225-27.  There, plaintiffs contended the adoption of a

17    sixth-grade public school curriculum which involved teaching that the caste system

18    was a central religious belief of Hinduism violated the Free Exercise Clause because

19    it was disparaging to Hindus and Hinduism.  *Id.* at 1223.  The court summarily

20    rejected this argument because plaintiffs "failed[ed] to satisfy the threshold

21    requirement—pleading a burden on their Free Exercise." *Id.* at 1226.  As they did

22    not "allege any specific religious conduct" affected by the state's actions, the court

23    held plaintiffs had not "demonstrat[ed] a substantial burden on their religious

24    exercise as required." *Id.* at 1227 (citing *Am. Family*, 277 F.3d at 1123-24).

25    Plaintiffs here make the same bare allegation.  They contend the LESMC

26    violates the Free Exercise Clause because it "denounce[s]" their beliefs.  SAC ¶ 207.

27    But just as in *Cal. Parents*, Plaintiffs fail to "allege any specific religious conduct"

28    that has been or plausibly would be affected by the promotion or teaching of the

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

15

UTLA & MYART-CRUZ'S NOTICE OF MOTION AND MOTION TO DISMISS [FRCP 10, 12(b)(1) & (b)(6)]

1  LESMC and have failed to demonstrate a substantial burden. *Id.*; *accord Grove*,

2  753 F.2d at 1534 (affirming summary judgment on Free Exercise claim against a

3  school district where plaintiff solely alleged assigned course material offended her

4  religious beliefs); *Parker v. Hurley*, 514 F.3d 87, 105-07 (1st Cir. 2008).

5  ### 3.  Plaintiffs fail to allege an Equal Protection claim.

6  Plaintiffs allege by supporting the LESMC, UTLA has violated the Equal

7  Protection Clause of the Fourteenth Amendment by discriminating against Israelis

8  and Middle Eastern and American Jews committed to Zionism.  SAC ¶ 202.  They

9  contend, in conclusory terms, that the goal of the Defendants is to cast Zionism,

10  Israel, and Jewish people as evil.  *Id.*  In essence, their theory is that because

11  Zionism is a religious belief held by many Jewish people, anti-Zionism is inherently

12  anti-Semitic, at least where other  foreign states are not subjected to equivalent

13  criticism.  SAC ¶ 15.  But to state a claim under the Equal Protection Clause, factual

14  allegations supporting an inference of discriminatory intent are required.  *Wash. v.*

15  *Davis*, 426 U.S. 229, 240-42 (1976); *Arlington Heights v. Metro. Hous. Dev. Corp.*,

16  429 U.S. 252, 265 (1977).  Pointing out an allegedly unbalanced focus on criticism

17  of certain religious or state practices is not enough to support such an inference.

18  Plaintiffs have failed to allege sufficient facts to demonstrate discriminatory intent

19  and thus, their Equal Protection claim is not viable.

20  The Ninth Circuit has held that curriculum content, even if derogatory or

21  disparaging, cannot form the basis for alleging discriminatory conduct under the

22  Equal Protection Clause.  *Monteiro*, 158 F.3d at 1026-32; *Cal. Parents v. Noonan*,

23  600 F. Supp. 2d 1088, 1111 (E.D. Cal. 2009).  In *Monteiro*, the Ninth Circuit

24  rejected an Equal Protection claim brought by a parent alleging that their child and

25  "other similarly situated African-American students suffered psychological injuries

26  and lost educational opportunities due to the required reading of literary works" that

27  included the repeated use of a "profane, insulting, and racially derogatory term."

28  158 F.3d at 1024.  Even though racist ideas and language could cause injury, the

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

court "reject[ed] the notion that putting books on trial . . . is the proper way to determine the appropriateness of their use in the classroom" and instead found assigning materials "cannot constitute the type of discriminatory conduct prohibited by the Fourteenth Amendment . . . ." *Id.* at 1031-32. It is "not the role of courts to serve as literary censors or to make judgments as to whether reading particular books does students more harm than good." *Id.* As the Equal Protection Clause "is not a means for challenging curriculum content decisions in public schools[,]" Plaintiffs' claims must be dismissed. *Cal. Parents*, 267 F. Supp. 3d at 1232.

Even setting aside *Monteiro*'s explicit foreclosure of Plaintiffs' Equal Protection claim, Plaintiffs have failed to support an inference of purpose or intent to discriminate *because of* the alleged differential impact the LESMC would have. To state an actionable discrimination claim as a constitutional violation, plaintiffs must assert that "the decision maker selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Pers. Admin. of Mass. v. Feeney*, 442 U.S. 256, 279 (1979). For example, in *Grimes*, plaintiffs argued that a school board's refusal to embrace a curriculum more inclusive of Africans and African Americans was intentional racial discrimination and that intent could be inferred from the fact the curriculum lacked such a focus despite the inclusion of Holocaust and Italian heritage curriculum. *Grimes v. Sobol*, 832 F. Supp. 704, 708 (S.D.N.Y 1993). The court, relying on the *Feeny* test, rejected this argument, recognizing that these allegations were inadequate to sustain the inference of discriminatory intent needed to overcome a motion to dismiss. *Id.* at 708. Likewise, a court dismissed claims against a university professor who allegedly held anti-Zionist and anti-Israel views and associated with allegedly antisemitic individuals and events, holding these allegations were inadequate to show that she acted with specific intent to discriminate. *Mandel v. Bd. of Trs. of the Cal. State Univ.*, 2018 U.S. Dist. LEXIS 39345, at *65-66 (N.D. Cal. Mar. 9, 2018).

1    Plaintiffs have not alleged UTLA Defendants took actions (or failed to take

2    actions) to differentially impact or intentional discriminate against people of Jewish

3    faith or ethnicity.  As in *Grimes*, the inclusion of materials regarding the experience

4    of some oppressed peoples, without inclusion of all oppressed peoples, is not

5    sufficient to plead intent.  As in *Mandel*, mere espousal of anti-Zionist views or

6    association with anti-Zionists and antisemites is insufficient to show intent to

7    discriminate.  Plaintiffs have failed to state a cognizable Equal Protection claim.

8    ### D.    Plaintiffs fail to allege a viable Title VI claim.

9    Plaintiffs assert that through various activities encouraging use of the

10   LESMC, UTLA Defendants have engaged in intentional discrimination.  SAC ¶

11   214.  Title VI of the Civil Rights Act provides that no person: "shall, on the ground

12   of race, color, or national origin, be excluded from participation in, be denied the

13   benefits of, or be subjected to discrimination under any program or activity

14   receiving Federal financial assistance."  42 U.S.C. § 2000d.  The Supreme Court has

15   recognized that Title VI only creates a private right of action for individuals to sue

16   for *intentional* discrimination.  *Alexander v. Sandoval*, 532 U.S. 275, 275 (2001).

17   As discussed above in regards to Equal Protection, Plaintiffs have failed to articulate

18   any factual allegations to support their conclusory intentional discrimination

19   allegation, and thus, they have failed to state a viable claim under Title VI.

20   ### 1.    Neither Plaintiffs nor UTLA Defendants are proper parties.

21   To state a claim under Title VI, a plaintiff must allege, *inter alia*, that "the

22   entity involved is receiving federal financial assistance."  *Fobbs v. Holy Cross*

23   *Health Sys. Corp.*, 29 F.3d 1439, 1447 (9th Cir. 1994).  There is no allegation that

24   UTLA Defendants received federal assistance.  Further, Myart-Cruz cannot be held

25   liable under Title VI  because she is an individual and not an entity.  *Smith v. Cal.*

26   *Bd. of Educ.*, No. CV-13-5395 FMO, 2014 U.S. Dist. LEXIS 92669, at *11 (C.D.

27   Cal. Jun. 3, 2014), adopted 2014 U.S. Dist. LEXIS 92736, at *1 (C.D. Cal., Jul. 8,

28   2014).  Thus, neither UTLA Defendant is subject to Title VI.

Bush Gottlieb
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

Additionally, parents (and, by extension, organizations representing parents) are not proper plaintiffs in a Title VI action because they are not the intended beneficiaries of the federal aid (i.e., students). *Smith v. Cal. Bd. of Educ.*, No. CV-13-5395 FMO, 2014 U.S. Dist. LEXIS 159317, at *9 (C.D. Cal. Oct. 6, 2014), *adopted* 2014 U.S. Dist. LEXIS 159315, at *1. No Plaintiffs are students (or parents filing in a representative capacity), further requiring dismissal of the Title VI claim.

### 2.    Plaintiffs have not sufficiently pleaded intentional discrimination.

Under the *Sandoval* decision, discrimination under Title VI means intentional discrimination. 532 U.S. at 281-84. Plaintiffs must show that (1) "actions of the defendants had a discriminatory impact," and (2) defendants "acted with an intent or purpose to discriminate based on plaintiffs' membership in a protected class." *Graham v. Portland Pub. Sch. Dist. #1J*, 3:13-CV-00911-AC, 2015 WL 1010534, at *6 (D. Or. Mar. 5, 2015) (quoting *Darensburg v. Metro. Transp. Comm'n*, 636 F.3d 511, 522 (9th Cir. 2011)). Plaintiffs have failed to allege facts showing any discriminatory intent by UTLA Defendants or any actual impact.

In *Monteiro*, the Ninth Circuit held curriculum content decisions cannot form the basis of an Equal Protection Clause *or* Title VI claim. 158 F.3d at 1032. Again, this determination was rooted in the broad discretion afforded state officials in making curriculum decisions, as well as the fear that students' First Amendment rights may conversely be infringed upon "when books that have been determined by the school district to have legitimate educational value are removed from a mandatory reading list because of threats of damages, lawsuits, or other forms of retaliation." *Id.* at 1029. Based on this recognition, the court held that the decision to include the arguably racist books in the curriculum could not constitute intentional discrimination under Title VI. *Id.* at 1032. UTLA Defendants' advocacy with respect to the LESMC likewise cannot be the basis for a Title VI claim.

Even absent *Monteiro*, Plaintiffs have not alleged sufficient facts to indicate

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

19

discriminatory intent.[7] *Rashdan v. Geissberger*, 764 F.3d 1179, 1183 (9th Cir. 2014) (derogatory statements to students must be "excessive and opprobrious" to establish intentional discrimination); *Doe v. LAUSD*, No. 216CV00305CASJEMX, 2016 WL 4238636, *4-5 (C.D. Cal. Aug. 8, 2016) (dismissing Title VI claim that district failed to implement racial sensitivity training because no facts indicated intentional discrimination were alleged); *Brown v. Redlands*, 2013 WL 55364669, *7 (C.D. Cal. 2013) (assigning book with racial slur).

Moreover, Plaintiffs' Title VI claim fails because they did not allege any discriminatory impact.  Due to "the similarities between Title VI and Title VII, courts frequently have looked to Title VII in determining rights and procedures available under Title VI."  *Smith v. Barton*, 914 F.2d 1330, 1336 (9th Cir. 1990). Title VII has been interpreted to prohibit discrimination that results in differential treatment that has a *material* effect.  *Minor v. Centocor, Inc.*, 457 F.3d 632, 634 (7th Cir. 2006).  Plaintiffs have not alleged facts demonstrating they were directly or indirectly excluded, denied benefits, or otherwise discriminated against by UTLA Defendants at all, and certainly not in a material way.  Dismissal is required here as Plaintiffs have alleged neither discriminatory intent nor discriminatory impact.

**E.    Plaintiffs fail to allege a viable Education Code section 220 claim.**

Plaintiffs allege UTLA Defendants violated section 220 of the California Education Code.  SAC ¶ 223.  Section 220, which is essentially California's version of the anti-discrimination provisions of Titles VI and VII, only applies to "educational institutions," defined as "a public or private preschool, elementary, or secondary school or institution; the governing board of a school district; or any combination of school districts or counties recognized as the administrative agency

---

[7] A conclusory allegation of intent is insufficient under Title VI.  *Austin v. Univ. of Or.*, 925 F.3d 1133, 1135 (9th Cir. 2019) (holding FRCP Rule 8(a) is the appropriate standard for reviewing a motion to dismiss in a Title IX case); *Cannon v. Univ. of Chicago*, 441 U.S. 677 (1979) (holding "drafters of Title IX explicitly assumed that it would be interpreted and enforced in the same manner as Title VI").

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1    for public elementary or secondary schools."  Educ. Code § 210.3.  UTLA

2    Defendants cannot be held liable under this section because they are not educational

3    institutions.  *Karasek v. Regents of the Univ. of Cal*., No. 15-cv-03717-WHO, 2015

4    U.S. Dist. LEXIS 166524, at *56 (N.D. Cal. Dec. 11, 2015).  There is no allegation

5    that they receive or benefit from state financial assistance. Educ. Code § 220.

6           This claim must also be dismissed for the same reasons as Title VI: intent and

7    impact are insufficiently alleged, and there can be no liability based only on the

8    decision to teach particular material under *Monteiro*.  While there are no reported

9    cases setting forth the standard to be applied in a section 220 case alleging

10   intentional racial or religious discrimination, in the sex discrimination context, "the

11   Legislature intended Title IX's elements to govern an action under Section 220."

12   *Donovan v. Poway*, 167 Cal. App. 4th 567, 581 (2008).  And as explained above,

13   Title IX is interpreted and enforced like Title VI.  *See Cannon*, 441 U.S. at 677.

14          Accordingly, because Plaintiff's allegations were not sufficient to amount to a

15   violation of Title VI, Plaintiffs' allegations are also insufficient to amount to a

16   violation of section 220.  *Doe 1 v. Manhattan Beach Unified Sch. Dist.,* No. 19-cv-

17   6962, 2021 WL 3883910 (C.D. Cal. Aug. 31, 2021).

18          **F.    Plaintiffs' other Education Code claims should also be dismissed.**

19          Plaintiffs allege that a variety of Education Code provisions, some of which

20   they do not even specify, are being violated by the teaching of the LESMC.  These

21   include provisions regarding discriminatory instructional materials and teaching,

22   and notice and comment prior to adoption of curricula and instructional materials.

23          None of the Education Code sections relied on in the SAC (other than section

24   220, discussed above) put any restrictions on the conduct of a private actor or

25   otherwise allow for an action against a private actor, and UTLA Defendants are both

26   private actors.  All of these laws by their terms apply to either teachers, local

27   education agencies, or the state Board of Education—not unions and their officers.

28          Section 51225.3, the ethnic studies law on which Plaintiffs rely, is not

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1   implicated.  The statute's function is to create an ethnic studies graduation

2   requirement (by the graduating class of 2029-2030), and a mandate that school

3   districts offer a compliant ethnic studies course (by the 2025-2026 school year).  *Id.*

4   § 51225.3(a)(1)(G)(i).  This statute does not, by its terms, prevent a school district

5   from offering or requiring ethnic studies courses that do not qualify for the state

6   graduation requirement or course mandate.  *Accord id.* § 60210(a).

7          Plaintiffs do not point to any law that would make it inherently illegal to teach

8   ethnic studies instructional materials not approved by the state or local Board of

9   Education—indeed, under the Education Code, the local school board must

10  *disapprove* of materials in order to make their use without official authorization

11  unlawful.  *Id.* § 51510. Moreover, the statute cited in the Complaint requiring public

12  notice and comment, Education Code section 60005, applies only to adoption by the

13  State Board of Education. Plaintiffs also do not allege that the materials—or ideas—

14  associated with the LESMC that are purportedly being taught are not aligned with

15  academic content standards or fall outside LAUSD's previous adoption of

16  instructional materials for its already-established official ethnic studies courses.

17         Additionally, to rely on Education Code regulation of curriculum content,

18  Plaintiffs must allege an abuse of discretion in determining that content.  *Dawson v.*

19  *E. Side Union High Sch. Dist.*, 28 Cal. App. 4th 998, 1019 (1994).  Plaintiffs have

20  not sufficiently pled such abuse of discretion, certainly not as to UTLA Defendants.

21  Indeed, as described, the LESMC is, on its face, merely a factual description of the

22  Israel-Palestine conflict.  Plaintiffs' disagreement with the *framing* of these facts in

23  terms of descriptors such as "apartheid," and the lack of inclusion of their own

24  viewpoints, SAC ¶15, is insufficient to show an abuse of discretion sufficient to

25  ground an Education Code claim.  If the LESMC's teaching could violate the

26  Education Code's prohibitions on discriminatory content, virtually any factual

27  material that reflects poorly on a particular national government or religious belief,

28  whether mainstream or esoteric, would be subject to removal.  History, ethnic

studies, and other subjects simply could not be taught under such restrictions, and the Education Code clearly was not intended to impose them. Educ. Code § 51511 (providing the Education Code should not be construed to prohibit references to religion or things with religious significance if these references are "incidental to or illustrative of matters properly included in the course of study").

### G.    UTLA Defendants have many defenses to the SAC, meriting dismissal.

Plaintiffs' SAC claims target UTLA Defendants' activity that, as alleged, is protected First Amendment speech and petitioning activity by two private actors. As such, they are subject to dismissal. *Garcetti v. Ceballos*, 547 U.S. 410, 419 (2006). *See* Special Motion to Strike (concurrently filed).[8]  Plaintiffs' claims are likewise barred by the *Noerr-Pennington* doctrine, which embodies the First Amendment right to petition and protects petitioning activities even of state actors, including private parties engaged in section 1982 conspiracies. *Empress LLC v. City & Cnty. of San Francisco*, 419 F.3d 1052, 1057 (9th Cir. 2005). *See* Special Motion to Strike (concurrently filed).

Furthermore, the absolute privilege accorded under Civil Code section 47(b) precludes Plaintiffs' claims based on UTLA Defendant's communications. "A privileged publication or broadcast is one made: [] In any (1) legislative proceeding, [ or] in any other official proceeding authorized by law . . . ." *Id*. This privilege is construed broadly such that "[a]ny doubt about whether the privilege applies is resolved in favor of applying it." *Contreras v. Dowling*, 5 Cal.App.5th 394, 415 (2016) (cleaned up). It applies to all torts except malicious prosecution. *Silberg v. Anderson*, 50 Cal. 3d 205, 212 (1990) (citations omitted). Section 47 covers not only to traditional legislative proceedings, but also local school board meetings.

---

[8] The speech and conduct is also protected by Article I, section 2(a) of the California Constitution, providing even more expansive protections for speech. *Wilson v. Superior Court of L.A. Cty.*, 13 Cal. 3d 652, 658 (1975).

Bush Gottlieb
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1    *Royer v. Steinberg*, 90 Cal.App.3d 490, 506 (1979).

2        Section 47 applies "when it is shown that the statement [at issue] bears some

3    connection to the work of the legislative body." *Scott v. McDonnell Douglas Corp.*,

4    37 Cal.App.3d 277, 285 (1974).  To fall within the bounds of the Section 47

5    privilege, a communication need not be "'directly relevant' to proposed legislation."

6    *1-800 Contacts, Inc. v. Steinberg*, 107 Cal.App.4th 568, 588 (2003).  It simply must

7    be of "reasonable relevancy to the subject matter" and such relevancy is "not that

8    narrow, particularly where the subject matter involves legislation." *Id*.  The subject

9    matter and purpose of UTLA Defendants' communications was "reasonably related"

10   to both the Legislature and school board's decisions regarding ethnic studies.  *Id.*

11       Further, the privilege covered by Civil Code section 47(b) applies not only to

12   the "proceeding itself" but also to all other connected activity.  *Id.*; *see also Action*

13   *Apartment Ass'n v. City of Santa Monica*, 41 Cal.4th 1232, 1241 (2007) (explaining

14   the privilege "is not limited to statements made during a . . . proceeding, but may

15   extend to steps taken prior thereto, or afterwards").  Here, the intended impact of the

16   statements demonstrates a reasonable relation to the legislative proceedings.  *Cayley*

17   *v. Nunn*, 190 Cal.App.3d 300, 303-06 (1987) (holding although defendant's alleged

18   statements that plaintiff had wiretapped his phone had nothing to do with the subject

19   matter of the legislative proceedings at issue, such statements were sufficiently

20   related because they in an were an "attempt to influence the outcome" of the vote).

21   The alleged communications here were meant to encourage the formal adoption of

22   UTLA Defendants' favored curricular model and were logically connected to the

23   Legislature's and School Board's curriculum decision-making processes.  *1-800*

24   *Contacts*, 107 Cal.App.4th at 586-87 (finding because "the entire thrust of

25   [defendant's] activity was to enable the enactment of legislation, by soliciting other

26   interested parties to pursue it, and assisting them with information and expertise[,]"

27   Section 47 immunized his activity).  The legislative privilege thus bars Plaintiffs'

28   causes of action stemming from this communication.

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

UTLA Defendants' activities are also protected under the Educational Employment Relations Act, Cal. Gov't Code §§ 3540-49.34. EERA provides public employees the right to advocate for working conditions, Gov't Code § 3543(a), provides their unions and their officers with the right to engage in representation efforts for their members, *id.* at § 3543.1(a), and protects those rights by making it an unfair practice for their employer to interfere with or deny those rights, *id.* at 3543.5(a)-(c). To the extent Plaintiffs' attempt to reconstrue their claims against UTLA Defendants as common law claims, EERA preempts all common law claims arising from conduct that is protected or even arguably protected by EERA. *El Rancho Unified School Dist. v. Nat'l Educ. Ass'n*, 33 Cal. 3d 946, 953 (1983). Thus, any common law claims arising from the exercise of those protected rights are preempted. *Id.* at 957-60; *see also Crockett v. NEA-Alaska*, 367 F.Supp.3d 996, 1008-11 (D. Alaska 2019) (explaining why public sector union laws preempt common law claims) (cleaned up); *accord Babb v. Cal. Teachers Ass'n,* 378 F.Supp.3d 857, 887 (C.D. Cal. 2019) (same for EERA).

## V.    CONCLUSION

SAC suffers from numerous fatal defects which cannot be cured by amendment. Plaintiffs sued a union and its President, both private actors entitled to First Amendment protection, to stop them from speaking out regarding what students are taught in public schools, an issue of great public importance, to halt the promulgation of a curriculum with which Plaintiffs disagree, but that has not cognizably harmed them and will not harm them. This Court should dismiss the SAC against UTLA Defendants with prejudice and without leave to amend.

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1 | DATED:  September 30, 2022

2

3

4

IRA L. GOTTLIEB
LISA C. DEMIDOVICH
ADAM KORNETSKY
BUSH GOTTLIEB, A Law Corporation

By: _____
        ADAM KORNETSKY
Attorneys for United Teachers Los Angeles and
Cecily Myart-Cruz

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260