LORI LOWENTHAL MARCUS (Pro Hac Vice)
JEROME M. MARCUS (Pro Hac Vice)
THE DEBORAH PROJECT
P.O. Box 212
Merion Station, PA 19066
Telephone: (610) 664-1184
lorilowenthalmarcus@deborahproject.org
jmarcus@marcuslaw.us

ROBERT PATRICK STICHT (SBN 138586)
JUDICIAL WATCH, INC.
425 Third Street SW, Suite 800
Washington, D.C. 20024
Telephone: (202) 646-5172
Fax: (202) 646-5199
Email: rsticht@judicialwatch.org

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| CONCERNED JEWISH PARENTS AND TEACHERS OF LOS ANGELES, JOHN DOE, AND JANE DOES 1-5,<br><br>Plaintiffs,<br><br>v.<br><br>LIBERATED ETHNIC STUDIES MODEL CURRICULUM CONSORTIUM; UNITED TEACHERS OF LOS ANGELES; CECILY MYART-CRUZ, THERESA MONTANO, AND GUADALUPE CARRASCO CARDONA, in their individual and official capacities as public employees; AND DOES 1-10,<br><br>Defendants,<br><br>and<br><br>LOS ANGELES UNIFIED SCHOOL DISTRICT,<br><br>Nominal Defendant. | Case No. 2:22-cv-03243-FMO(PVCx)<br><br>**PLAINTIFFS' OMNIBUS OPPOSITION TO UTLA DEFENDANTS' MOTION FOR ORDER TO STAY DISCOVERY AND LESMCC DEFENDANTS' MOTION FOR A PROTECTIVE ORDER STAYING DISCOVERY AND REQUEST FOR JUDICIAL NOTICE**<br><br>Hearing: January 5, 2023<br>Time: 10:00 a.m.<br>Place: Courtroom 6D<br>First Street Courthouse<br>350 W. 1st Street<br>Los Angeles CA 90012 |

Plaintiffs respectfully submit this opposition to defendants United Teachers Los Angeles and Cecily Myart-Cruz's ("UTLA Defendants") Motion for Order to Stay Discovery (Dkt. 82) and Theresa Montaño, Guadalupe Cardona, and the Liberated Ethnic Studies Model Curriculum Consortium's Motion for a Protective Order Staying Discovery Under Fed. R. Civ. 26(c)(1) (Dkt. 85) and Corrected Request for Judicial Notice (Dkt. 88).

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The complaint in this case alleges that the State of California has directed that a particular set of antisemitic and anti-Zionist materials not be used to teach Ethnic Studies in California's public schools, but that Defendants expressly cause LAUSD teachers to violate this command, and that the teacher defendants violate it themselves, by directing the use of precisely the antisemitic and anti-Zionist materials that the state directed *not* be used. The result is the use, now, in LA public schools, of material which is explicitly racist, antisemitic and which denounces and seeks to silence public approval for Plaintiffs' sincerely held religious commitment to the Jewish principle of Zionism.[1]

The brief of Defendant Liberated Ethnic Studies Model Curriculum Consortium and Defendants Guadalupe Carrasco Cardona and Theresa Montaño ("LESMCC Defendants") effectively acknowledges that this is true. Asking this Court to protect them from having to reveal what they are doing, these defendants frankly reveal to this Court their fear that if LAUSD finds out what they are teaching, the teachers who use this material may be fired. More specifically, the LESMCC Brief argues that the discovery sought "will reveal the identity of teachers" who may

---

[1] While Defendants have argued that these materials are not antisemitic even though they oppose this religious belief, the United States Department of Education has, just this week, opened an investigation into antisemitism at another California public institution on the basis of overt hostility at that institution to "speakers who support 'Zionism, the state of Israel, and the occupation of Palestine.'" In other words, the discrimination being investigated is hostility to Zionism, thereby determining that such hostility is itself antisemitism. *See* Exhibit A.

"be fired" because they are using the racist material at issue in this case. *See* LESMCC Br. at 3. The LESMCC Defendants are thus proclaiming to this Court that using these materials is a firing offense, and then asking the Court to protect them from their employer by allowing them to conceal their actions from their employer.

Plaintiffs' complaint is well founded and includes extensive detail, quoting Defendants' statements, showing that the material being taught at Defendants' direction in LAUSD schools is

- explicitly racist and antisemetic, and

- exactly the material that the state of California has directed ***not*** be taught in California public schools.

The discovery sought is entirely appropriate and will enable Plaintiffs to gather evidence bearing on a fundamental jurisdictional issue that Defendants have raised: the presence of state action.

Finally, Ninth Circuit law states clearly that discovery is permitted in defense of an anti-SLAPP motion.

**II.  PLAINTIFFS ARE ENTITLED TO AT LEAST JURISDICTIONAL DISCOVERY, WHICH INCLUDES DISCOVERY OF FACTS BEARING ON WHETHER DEFENDANTS' EFFECTIVE CONTROL OVER MATERIALS TAUGHT IN LAUSD SCHOOLS MAKES THEM STATE ACTORS.**

For a claim against an otherwise private actor under the Civil Rights statutes, a federal court has subject matter jurisdiction only if the defendant engages in state action, 42 U.S.C. §1983, and for that reason, the presence of state action is jurisdictional, at least if the court's subject matter jurisdiction is alleged on the basis of 28 U.S.C. §1343, as it is in this case. *See* Second Amended Complaint ("SAC") (Dkt. 62) at 16. As the court explained in *Elliot v. GEICO,* 2006 U.S.Dist. LEXIS 95633 (D. N.M. 2006), "the state action analysis here is jurisdictional and if there is no state action, then, pursuant to §1343, the Court does not have jurisdiction."

The Supreme Court has cautioned that "only by sifting facts and weighing

circumstances can the nonobvious involvement of the State in private conduct be attributed its true significance." *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 722 (1961). The Complaint in this case alleges that the Los Angeles Unified School District has imposed a requirement, effective since 2020, that Ethnic Studies be taught in every LAUSD high school. The Complaint further alleges that Defendants' racist and antisemitic version of Ethnic Studies is being taught in those schools now. And it alleges that Defendants wield effective control over the content of these classes in several ways:

- Through their official roles on the LAUSD/UTLA Ethnic Studies Committee, SAC ¶ 27;
- By concealing and urging LAUSD public school teachers to conceal the content of what is being taught now in LAUSD classrooms, SAC ¶ 12;
- By creating an employment environment in which a teacher's espousal of any position inconsistent with Defendants' antisemitic and anti-Zionist views precludes participation in UTLA, SAC ¶ 21.

The Ninth Circuit explained in *Laub v. U.S. Dep't of Interior, et al.,* 342 F.3d 1080, 1093 (9th Cir. 2003) that

> discovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." Butcher's Union Local No. 498 v. SDC Inv., Inc., 788 F.2d 535, 540 (9th Cir. 1986) (citation omitted). Although a refusal to grant discovery to establish jurisdiction is not an abuse of discretion when "it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction," discovery should be granted when, as here, the jurisdictional facts are contested or more facts are needed. See Wells Fargo & Co. v. Wells Fargo Express Co., 556 F.2d 406, 430 n.24 (9th Cir. 1977) (holding that district court abused its discretion in refusing to grant discovery on jurisdictional issue); see also Natural Res. Def. Council v. Pena, 331 U.S. App. D.C. 198, 147 F.3d 1012, 1024 (D.C. Cir. 1998) (remanding to permit "jurisdictional discovery" when allegations indicated its likely utility); Edmond v. United States Postal Serv. Gen. Counsel, 292 U.S. App. D.C. 240, 949 F.2d 415, 425 (D.C. Cir. 1992) [**37] (finding abuse of discretion when district court denied jurisdictional discovery in light of allegations suggesting

jurisdiction did exist).

The standard imposed by the Ninth Circuit in *Laub* is low: where "additional discovery would be useful to establish federal subject matter jurisdiction, and [where] the extent of [government] involvement in the challenged transactions is contested," it is an abuse of discretion not to allow such discovery. *Id.*

The complaint charges that state action is present here, among other reasons, because a committee created pursuant to the Union's collective bargaining agreement with the School District wields power over materials used in LAUSD to teach Ethnic Studies, (SAC ¶27), and in part through Defendants' actions to prevent school district supervisors from finding out when the materials at issue in this case are actually used in the classroom. *Id.* ¶12. The complaint alleges that Defendants have used their power to populate this committee by appointing people who are full-throated antisemites. *Id.* ¶ 31.

Defendants have argued that this committee has no formal power to mandate the use of any particular teaching materials, and therefore that their actions on the committee cannot establish state action. But Plaintiffs have responded that the Supreme Court's holding in *Bantam Books, Inc. v. Sullivan,* 372 U.S. 58 (1963) establishes that state action can be present through the operation of a government committee even when it has no formal power, and that whether state action is present depends on exactly how the committee operates and how it makes its desired outcomes known to those upon whom it operates.

For these reasons, Plaintiffs are entitled to discovery that will reveal the actual operation of this committee and the impact of the committee's work on materials used to teach Ethnic Studies in LAUSD.

### III. NINTH CIRCUIT LAW CLEARLY ALLOWS DISCOVERY IN DEFENSE OF A SLAPP MOTION.

The Ninth Circuit has held clearly that a party opposing an anti-SLAPP Motion has the right to discovery to gather evidence on facts bearing on the motion.

*Metabolife Int'l v. Wornik,* 264 F.3d 832, 846 (9th Cir. 2001). Defendants' attack on Plaintiffs' complaint creates exactly that situation. The UTLA Defendants argue that no discovery is needed here because their attack on the complaint relates to the sufficiency of Plaintiffs' legal allegations rather than a factual flaw. *See* UTLA Brief at 8. But this is clearly wrong.

Plaintiffs allege that Defendants wield effective "control" over the content of Ethnic Studies teaching materials in LAUSD, (SAC ¶ 28), through their legal power to determine the identity of certain members of the official LAUSD Ethnic Studies Committee and in other ways. As a result, Plaintiffs allege, Defendants wield the official state power of determining the content of teaching materials in a public school.

Defendants contradict this factual allegation, and say instead that they are, from the outside, "petitioning" the people who have the authority to determine the public school's teaching on this topic.

Which of these two accounts is correct is a factual dispute, and resolving it requires evidence – for example, on how much effective control Defendants have over materials used to teach Ethnic Studies in LAUSD, and how they exercise that control – both affirmatively, by directing the use of particular material and concealing the use of such materials (as the LESMCC Protective Order brief admits); and negatively, by creating a hostile environment for teachers who refuse to use it and who instead publicly express their commitment to the Jewish belief in Zionism.

Even by the UTLA Defendants' own argument, therefore, Plaintiffs are entitled to discovery sufficient to address this question. The discovery Plaintiffs have sought is focused on precisely that issue.

## IV. CONCLUSION

This case seeks nothing other than a bar on the use in public schools of explicitly racist and antisemitic teaching materials, a bar specifically imposed by the State of California with respect to exactly the materials Defendants are using and

causing others to use.  It does not seek to punish anyone; it seeks no money damages of any kind from any party; it does not seek to have anyone sanctioned, or fired.  It seeks only a racism- and antisemitism free public school environment.

The discovery Defendants are trying to avoid producing is targeted to yield the information Plaintiffs need to establish this Court's subject matter jurisdiction over their claims.  The Defendants should be ordered to produce it forthwith.  To the extent that Defendants have concerns about the confidentiality of private information, Plaintiffs are prepared to address those in negotiations.  Indeed, Plaintiffs made that willingness clear, in writing, to Defendants over a month ago when they first articulated this concern.  Defendants have never bothered to initiate a conversation on the topic.  If Plaintiffs indeed prove insufficiently sensitive to these concerns when they are, ultimately, expressed, the Court is able to fashion an appropriate protective order that safeguards any legitimate privacy interests in need of protection.

Accordingly, the Court should deny both the UTLA Defendants' motion for

order to stay discovery and the LESMCC Defendants' motion for a protective order staying discovery.[2]

Dated:  December 15, 2022            Respectfully submitted,

                                                      THE DEBORAH PROJECT

                                 By:   */s/ Lori Lowenthal Marcus*
                                       LORI LOWENTHAL MARCUS

                                 By:   */s/ Jerome M. Marcus*
                                       JEROME M. MARCUS

                                       JUDICIAL WATCH, INC.

                                 By:   */s/ Robert Patrick Sticht.*
                                       ROBERT PATRICK STICHT

                                             Attorneys for Plaintiffs

---

[2] The LESMCC Defendants are asking the Court to judicially notice an affidavit and judgment filed in an unrelated Los Angeles Superior Court case, as well as a web page, which do not appear to be cited or relied upon anywhere in their present motion.  *See* Corrected Request for Judicial Notice (Dkt. 88).  The request for judicial notice is wholly improper, but the information adduced is also completely irrelevant.  Two of the documents reference cases relating to people who are neither parties nor counsel to any party in this case; the third, which relates to the Deborah Project, Plaintiffs' counsel, provides no basis for any claim that counsel have engaged in any kind of misconduct at any time; and indeed, while the LESMCC Defendants cast aspersions, even Defendants do not actually suggest that Plaintiffs' counsel have done anything wrong or violated any rule, law or the confidentiality of any document.
     In any event, the request to take judicial notice of the first two documents simply ignores the law on judicial notice.  *See* Fed. R. Evid. 201(b).  "[A[llegations in complaints [] are often disputed. *Johnson v. JKLM Props., L.L.C.,* 2020 U.S.Dist. LEXIS 167794 (N.D. CA 2020).  That decision as well as *Gardiner Family, LLC v. Crimson Res. Mgmt. Corp.*, 147 F. Supp. 3d 1029, 1032 (E.D. Cal. 2015) and *Pollstar v. Gigmania, Ltd.*, 170 F. Supp. 2d 974 (E.D. Cal. 2000) all hold that there is "no authority for judicial notice of pleadings in an unrelated case."  For that reason, *JKLM* held that "to the extent that Plaintiff seeks judicial notice of the allegations in" various complaints filed in other courts, "Plaintiff's request is DENIED. *See Gardiner Family, LLC*, 147 F. Supp. 3d at 1032."  Furthermore, a court may not take judicial notice of the contents of an affidavit as being true or the truth of any facts at issue or disputed in a court decision or judgment.  *See United States v. S. Cal. Edison Co.*, 300 F. Supp. 2d 964, 974-75 (E.D. CA 2004); *Bryant v. Carleson*, 444 F.2d 353, 357-58 (9th Cir. 1971); *see also Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) ("a court cannot take judicial notice of disputed facts contained in such public records.")