1  IRA L. GOTTLIEB (SBN 103236)
2  igottlieb@bushgottlieb.com
   LISA C. DEMIDOVICH (SBN 245836)
3  ldemidovich@bushgottlieb.com
4  ADAM KORNETSKY (SBN 336919)
   akornetsky@bushgottlieb.com
5  BUSH GOTTLIEB, A Law Corporation
6  801 North Brand Boulevard, Suite 950
   Glendale, California 91203-1260
7  Telephone:  (818) 973-3200
   Facsimile:  (818) 973-3201
8
9  Attorneys for United Teachers Los
   Angeles and Cecily Myart-Cruz
10

11

12              UNITED STATES DISTRICT COURT

13      CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

14

15 | CONCERNED JEWISH PARENTS    CASE NO. 2:22-cv-03243-FMO-PVC

16 | AND TEACHERS OF LOS
   | ANGELES, AMY LESERMAN,        **DEFENDANTS UNITED**
17 | LINDSEY KOHN, DANNA          **TEACHERS LOS ANGELES AND**
   | ROSENTHAL, AND DENIAL ELI,   **CECILY MYART-CRUZ'S**
18 |                              **SPECIAL MOTION TO STRIKE**
19 |           Plaintiffs,        **[Cal. Code of Civ. Proc. § 425.16]**

20 |     vs.
   |                              **Hearing Date:** December 14, 2023
21 |                              **Hearing Time:** 10:00 AM
22 | LIBERATED ETHNIC STUDIES     **Location:** First Street Courthouse
   | MODEL CURRICULUM                        350 W. 1st Street
23 | CONSORTIUM; UNITED                      Courtroom 6D
24 | TEACHERS LOS ANGELES;                   Los Angeles, CA 90012
   | CECILY MYART-CRUZ, THERESA
25 | MONTANO, AND GUADALUPE
   | CARRASCO CARDONA, in their
26 | individual and official capacities as
27 | public employees; AND DOES 1-10,
28 |

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1        Defendants,

2    and

3
LOS ANGELES UNIFIED SCHOOL
4    DISTRICT,

5
            Nominal Defendant.
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

**PLEASE TAKE NOTICE THAT** on Thursday December 14, 2023, at 10:00 a.m. or as soon thereafter as counsel may be heard in the courtroom of the Honorable Fernando M. Olguin, located in Courtroom 6D of the United States Courthouse, 350 West 1st Street, 6th Floor, Defendants United Teachers Los Angeles and Cecily Myart-Cruz ("UTLA Defendants") will and do bring a Special Motion to Strike Plaintiffs' state law claims against UTLA Defendants under California's anti-SLAPP statute, California Code of Civil Procedure ("C.C.P.") section 425.16.

This motion is made upon the following grounds:

First, all of the claims against UTLA Defendants in the Second Amended Complaint ("SAC") arise from "act[s] . . . in furtherance of [a] person's right of petition or free speech" under the United States and California Constitution "in connection with a public issue," within the meaning of C.C.P. § 425.16(b)(1). All of the alleged conduct and speech of UTLA Defendants was in connection with a public issue because public school curriculum and the Israel-Palestine conflict are public issues and UTLA Defendants' acts were closely connected to them. UTLA Defendants' acts are all "in furtherance of [a] person's right of petition or free speech," C.C.P. § 425.16(e)(4) because they all involve either speech or conduct directly protected by the First Amendment and the California Constitution, or are in support of acts with such protection. All of UTLA Defendants' written and oral statements or writings are protected under C.C.P. § 425.16(e)(2) because they were closely related to decisions of LAUSD and state lawmakers and officials in official proceedings regarding adoption of instructional materials, and were directed toward people having potential interest in the proceedings. Likewise, the alleged public posts advertising the Ethnic Studies Panel and sharing of other resources regarding ethnic studies and anti-Zionism, and Myart-Cruz's speech at a public forum, are covered under § 425.16(e)(3) because they were made in a place open to the public.

Second, Plaintiffs cannot satisfy their burden of showing a probability of

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1  prevailing on any causes of action, C.C.P. § 425.16(b)(1), because their claims are

2  subject to dismissal under Rules 12(b)(1), and 12(b)(6) of the Federal Rules of Civil

3  Procedure for the following reasons, as explicated in UTLA Defendants'

4  concurrently filed Motion to Dismiss:

5       (a)    The Court lacks subject-matter jurisdiction to hear the claims. Plaintiffs

6  lack Article III standing for all forms of relief sought in the SAC because the

7  injuries to Plaintiffs and members of the association Plaintiff, to the extent any

8  injuries are even alleged, are not concrete and particularized, are not fairly traceable

9  to the conduct of UTLA Defendants, and are not redressable. Further, the claims are

10  non-justiciable under principles of political and religious abstention because it is not

11  for a federal court to resolve the questions regarding the relationship between

12  Zionism, Judaism, the State of Israel, and antisemitism that Plaintiffs seek to have

13  answered.

14       (b)    Plaintiffs' SAC fails to state a viable claim against the UTLA

15  Defendants under California Education Code section 220 because UTLA

16  Defendants are not educational institutions receiving state aid. Further, the Section

17  220 claim is to be construed in accordance with caselaw applying federal anti-

18  discrimination statutes and fails for the same reasons that the Title VI claim fails.

19  Plaintiffs' Title VI claim fails because Plaintiffs are not intended beneficiaries of

20  governmental assistance. Additionally, the claim fails because Plaintiffs

21  insufficiently allege discriminatory intent and because such claims cannot be based

22  on the content of teaching materials alone.

23       (c)    Plaintiffs' SAC fails to state a viable claim against UTLA Defendants

24  under the Equal Protection Clause of the California Constitution because the

25  challenged activity is not state action. The claim further fails because Plaintiffs

26  insufficiently allege discriminatory intent.

27       (d)    Plaintiffs' SAC fails to state a viable claim against UTLA Defendants

28  on the other asserted Education Code grounds, including sections 51500, 51501, and

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

51225.3. None of the statutes cited by Plaintiffs regulate the conduct of private individuals and entities such as UTLA Defendants. Also, none of the statutes preclude adoption by a school district of instructional materials, or use of materials by teachers, without a notice and comment process or approval by the State Board of Education. Further, as to the content of instruction, Plaintiffs have failed to adequately plead abuse of discretion.

(e)     Plaintiffs' claims in the SAC against UTLA Defendants must be dismissed because as alleged, they are subject to numerous defenses based on the protected nature of UTLA Defendants' conduct. Defendants' actions are protected by the right to free speech and petition under the U.S. Constitution and the California Constitution. Their activity is also petitioning activity targeted at teachers, the school district, and state lawmakers and officials, protected by the *Noerr-Pennington* Doctrine, as well as by California Code of Civil Procedure section 47.

This motion is made following a conference of counsel pursuant to L.R. 7-3. By email on October 24, 2023, UTLA Defendants gave Plaintiffs timely notice of the instant Special Motion to Strike and explained the grounds for this motion. On October 30, 2023, the Parties participated in a nearly two-hour long conference over Zoom at which they discussed the grounds for this motion, but were unable to resolve their differences to avoid the need for this motion. The meet and confer process is further described in the concurrently filed Declaration of Adam Kornetsky.

Bush Gottlieb
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1  DATED:  November 13, 2023    IRA L. GOTTLIEB

2                                LISA C. DEMIDOVICH

3                                ADAM KORNETSKY

                                BUSH GOTTLIEB, A Law Corporation

By: ADAM KORNETSKY

Attorneys for United Teachers Los Angeles and Cecily Myart-Cruz

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ........................................................................................ 1

II.   STATEMENT OF FACTS ......................................................................... 2

III.  ARGUMENT .............................................................................................. 4

    A.    The Anti-SLAPP statute was enacted to strike lawsuits that
    interfere with constitutional speech rights. ........................................... 4

    B.    Step One: Plaintiffs' Claims Against UTLA Defendants Arise
    from Acts of Petition and Free Speech in Connection with the
    Public Issues of Curriculum and the Israel-Palestine Conflict. ........... 6

        1.    All of the Speech and Conduct at Issue is Protected by the
        First Amendment and thus Protected under § 425.16(e)(4). ........ 9

            (a)    UTLA's speech and conduct are protected by the
            First Amendment. ............................................................... 10

            (b)    Myart-Cruz's speech and conduct are protected by
            the First Amendment. ......................................................... 10

            (c)    UTLA Defendants' speech and conduct are
            protected under the California Constitution. ...................... 12

            (d)    No allegations support that UTLA Defendants lost
            the constitutional protections for their speech. ................. 12

            (e)    All of the speech and conduct at issue addressed
            public issues. ..................................................................... 14

            (f)    UTLA Defendants' speech and conduct are further
            protected under the *Noerr-Pennington* doctrine. ............. 15

        2.    The Speech at Issue is Protected under § 425.16(e)(3). ............. 16

        3.    The Speech at Issue is Protected under § 425.16(e)(2). ............. 16

    C.    Step Two: Plaintiffs cannot carry their burden of showing a
    probability of prevailing on their claims. .............................................. 19

IV.   CONCLUSION ......................................................................................... 21

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

UTLA & MYART-CRUZ'S SPECIAL MOTION TO STRIKE [CCP § 425.16]

Bush Gottlieb
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

## TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

**Federal Cases**

*Alexander v. Sandoval*, 532 U.S. 275 (2001) ........................................................ 20

*Amawi v. Pflugerville Indep. Sch. Dist.*,
    373 F. Supp. 3d 717 (W.D. Tex. 2019) ....................................................... 10, 13

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................... 12

*In re Bah*, 321 B.R. 41 (9th Cir. 2005) ................................................................ 4

*Brandenburg v. Ohio*, 395 U.S. 444 (1969) ........................................................ 13

*Buzayan v. City of Davis Police Dep't*,
    2007 U.S. Dist. LEXIS 60032 (E.D. Cal. Aug. 8, 2007) ................................. 18

*Dean v. Kaiser Found. Health Plan, Inc.*,
    562 F. Supp. 3d 928 (C.D. Cal. 2022) ....................................................... 4, 6

*Demers v. Austin*, 746 F.3d 402 (9th Cir. 2014) .................................................... 11

*Doe 1 v. Manhattan Beach Unified Sch. Dist.*,
    No. 19-cv-6962, 2021 WL 3883910 (C.D. Cal. Aug. 31, 2021) ......................... 19

*Doe v. Gangland Prods.*, 730 F.3d 946 (9th Cir. 2013) ....................................... 5, 14

*E.R.R. Presidents Conference v. Noerr Motor Freight*,
    365 U.S. 127 (1961) ............................................................................. 15, 20

*Empress LLC v. City & Cnty. of S.F.*, 419 F.3d 1052 (9th Cir. 2005) ..................... 15

*Fitbit, Inc. v. Laguna 2, LLC*,
    2018 U.S. Dist. LEXIS 2402 (N.D. Cal. Jan. 5, 2018) .................................... 16

*Forro Precision, Inc. v. IBM*, 673 F.2d 1045 (9th Cir. 1982) ............................... 15

*Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180 (9th Cir. 2005) ........................ 15

*Garcetti v. Ceballos*, 547 U.S. 410 (2006) .......................................................... 12

*Gardner v. Martino*, 563 F.3d 981, 992 (9th Cir. 2009) .......................................... 2

*Greater L.A. Ag. on Deafness, Inc. v. CNN, Inc.*,
    742 F.3d 414 (9th Cir. 2014) ........................................................................5

*Gunn v. Drage*, 65 F.4th 1109, 1118 (9th Cir. 2023); ...........................................5

*Hess v. Indiana*, 414 U.S. 105 (1973) ..................................................................13

*Hilton v. Hallmark Cards*, 599 F.3d 894 (9th Cir. 2010) ......................................5

*Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954 (9th Cir. 2011) ....................12

*Jordahl v. Brnovich*, 336 F. Supp. 3d 1016 (D. Ariz. 2018) ..........................10, 13

*Karasek v. Regents of the Univ. of Cal.*, No. 15-cv-03717-WHO, 2015
    U.S. Dist. LEXIS 166524 (N.D. Cal. Dec. 11, 2015) ...............................19

*Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407 (2022) ...................................12

*Khai v. Cty. of L.A.*, 730 F. App'x 408 (9th Cir. 2018) ..........................................6

*Knox v. Serv. Emp. Int'l. Union, Local 1000*, 567 U.S. 298 (2012) ......................10

*Koontz v. Watson*, 283 F. Supp. 3d 1007 (D. Kan. 2018) .................................10, 13

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .............................................19

*Manistee Town Ctr.* v. *City of Glendale*, 227 F.3d 1090 (9th Cir. 2000) ..............15

*Manufactured Home Communities, Inc. v. County of San Diego*,
    655 F.3d 1171 (9th Cir. 2011) ....................................................................4

*Martin Baker Aircraft Co., Ltd. v. Teledyne Risi, Inc.*,
    2020 U.S. Dist. LEXIS 186262 (C.D. Cal. Oct. 6, 2020) ...........................6

*Martin v. Wrigley*, 540 F. Supp. 3d 1220 (N.D. Ga. 2021) ..............................10, 13

*Mogan v. Sacks, Ricketts & Case, LLP*,
    2022 U.S. Dist. LEXIS 4592, at *29 (N.D. Cal. Jan. 10, 2022) ..................5

*Monteiro v. Tempe Union High Sch. Dist.*,
    158 F.3d 1022, 1028 (9th Cir. 1998). ..........................................................19

*Monteiro v. Tempe Union High Sch. Dist.*,
    158 F.3d 1022 (9th Cir. 1998) ....................................................................20

*Packingham v. North Carolina*, 137 S.Ct. 1730 (2017) ........................................16

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

*Pickering v. Board of Educatio,* 391 U.S. 563 (1968) ............................................. 11

*Planned Parenthood Fed'n of Am. v. Ctr. for Med. Progress*,
    890 F.3d 828, 834 (9th Cir. 2018). ........................................................................ 5

*Roberts v. Kiafar*, No. SACV 15-1505-JLS, 2016 U.S. Dist. LEXIS
    5747 (C.D. Cal. Jan. 7, 2016) ............................................................................... 7

*Rodriguez v. Maricopa Cty. Cmty. Coll. Dist.*,
    605 F.3d 703 (9th Cir. 2009) ................................................................................ 13

*Sarver v. Chartier*, 813 F.3d 891 (9th Cir. 2016) ..................................................... 4

*Serra v. Lappin*, 600 F.3d 1191, 1200 (9th Cir. 2010); .............................................. 2

*Smith v. Cal. Bd. of Educ.*, No. CV-13-5395 FMO, 2014 U.S. Dist.
    LEXIS 159317 (C.D. Cal. Oct. 6, 2014) ............................................................. 19

*Smith v. Santa Rosa Press Democrat*,
    2011 U.S. Dist. LEXIS 121449 (N.D. Cal. Oct. 20, 2011) ............................... 19

*Sosa v. DIRECTV, Inc.*, 437 F.3d 923 (9th Cir. 2006) ........................................... 15

*Tannous v. Cabrini Univ.*,
    2023 U.S. Dist. LEXIS 179616 (E.D. Pa. Oct. 4, 2023) .................................... 9

*United Mine Workers v. Pennington*, 381 U.S. 657 (1965) .................................. 15

*White v. Lee*, 227 F.3d 1214 (9th Cir. 2000) ................................................... 13, 15

**California Cases**

*Action Apartment Ass'n v. City of Santa Monica*, 41 Cal.4th 1232 ...................... 20

*Balla v. Hall*, 59 Cal.App.5th 652 (2021) ............................................................... 16

*Barrett v. Rosenthal*, 40 Cal. 4th 33, 59 n. 4 (2006); .............................................. 16

*Bonni v. St. Joseph Health Sys.*, 11 Cal.5th 995 (2021) ......................................... 5

*Brody v. Montalbano*, 87 Cal. App. 3d 725 (1978) ........................................... 18, 20

*City of Cotati v. Cashman*, 29 Cal. 4th 69 (2002) .................................................... 7

*City of L.A. v. Animal Def. League*, 135 Cal. App. 4th 606 (2006) .......................... 5

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

UTLA & MYART-CRUZ'S SPECIAL MOTION TO STRIKE [CCP § 425.16]

*City of Montebello v. Vasquez*, 1 Cal. 5th 409 (2016)...............................................4

*Collier v. Harris*, 240 Cal.App.4th 41, *as modified* (Sept. 1, 2015) ........................7

*ComputerXpress, Inc., v. Jackson*, 93 Cal.App.4th 993 (2011) .............................16

*Contemporary Services Corp. v. Staff Pro Inc.*,
    152 Cal. App. 4th 1043 (2007)...............................................................17

*Damon v. Ocean Hills Journalism Club*, 85 Cal.App.4th 468 (2000) ...................16

*Damon v. Ocean Hills Journalism Club*,
    85 Cal .App. 4th 468, 479 (2000) ...........................................................14

*Dawson v. E. Side Union High Sch. Dist.*, 28 Cal. App. 4th 998 (1994) ...............20

*FilmOn.com v. DoubleVerify Inc.*, 7 Cal.5th 133 (2019) ......................................14

*Finato v. Keith A. Fink & Assocs.*, 68 Cal. App. 5th 136, 151 (2021) .....................9

*Gay Law Students Ass'n v. Pac. Tel. & Tel. Co.*, 24 Cal. 3d 458 (1979)...............20

*Hupp v. Freedom Commc'n, Inc.*, 221 Cal.App.4th 398 (2013) ............................10

*Ingels v. Westwood One Broad. Servs.*, 129 Cal.App.4th 1050 (2005) ...................7

*Jackson v. Mayweather*, 10 Cal.App.5th 1240 (2017) ....................................16, 19

*Kim v. Workers' Comp. Appeals Bd.*,
    73 Cal. App. 4th 1357, 1361-62 (1999). ................................................20

*King v. Meese*, 43 Cal. 3d 1217, 1229 (1987). ....................................................20

*Lafayette Morehouse,Inc. v. Chronicle Publ'g Co.*,
    37 Cal.App.4th 46 (1995) .......................................................................18

*Lee v. Flick*, 135 Cal.App.4th 89 (2005) ...............................................................18

*Lieberman v. KCOP Tel., Inc.*,  110 Cal.App.4th 156 (2003)..........................7, 14

*Med. Marijuana, Inc. v. ProjectCBD.com*, 46 Cal.App.5th 869 (2020) ............6, 19

*Navellier v. Sletten*, 29 Cal.4th 82 (2002) ..............................................................6

*Nygard, Inc. v. Uusi-Kerttula*, 159 Cal.App.4th 1027 (2008)........................14, 16

*Okorie v. L.A. Unified Sch. Dist.*, 14 Cal.App.5th 574 (2017)................................5

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

*Premier Med. Mgmt. Sys. v. Cal. Ins. Guar. Ass'n*,
    136 Cal.App.4th 464 (2006) ................................................................. 6

*Rivero v. AFSCME*, 105 Cal.App.4th 913 (2003) .................................... 14

*San Diegans for Open Gov't v. San Diego State Univ. Rsch. Found.*,
    13 Cal.App.5th 76 (2017) ..................................................................... 7

*Simpson Strong-Tie Co. v. Gore*, 49 Cal.4th 12 (2010) .......................... 6

*Taus v. Loftus*, 40 Cal.4th 683 (2007) ...................................................... 7

*Wilson v. Cable News Network, Inc.*, 7 Cal.5th 871 (2019)..................... 8

*Wilson v. Superior Court*, 13 Cal. 3d 652 (1975)................................... 12

**Other State Cases**

*Am. Studies Ass'n v. Bronner*, 259 A.3d 728, 740-742 (D.C. 2021) .......... 6

**California Statutes**

Cal. Code Civ. Proc.
    § 47 ..................................................................................................... 20
    § 425.16(a) ............................................................................................ 1
    § 425.16(b)(1) ........................................................................... 4, 5, 6, 8
    § 425.16(c)(1) ....................................................................................... 6
    § 425.16(e) ..............................................................................*passim*
    § 425.16(e)(2) .......................................................................... 16, 17, 18

Cal. Educ. Code
    § 220 ................................................................................................... 19
    § 51225.3(a)(1)(G)(ii) .......................................................................... 17
    § 60210(c) ............................................................................... 15, 17, 18

**Other Authorities**

Federal Rule of Civil Procedure Rules 10(a), 12(b)(1), and 12(b)(6) .................... 19

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

# I.    INTRODUCTION

California's anti-SLAPP statute was enacted in response to "a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." Cal. Code Civ. Proc. ("C.C.P.") § 425.16(a). This case, in which Plaintiffs ask this Court to inhibit or enjoin UTLA Defendants' expressive and petitioning activities relating to public issues with which they disagree, is precisely the type of lawsuit that the California State Legislature sought to eliminate at the earliest possible litigation stage through the anti-SLAPP statute. This Court must therefore strike this action unless Plaintiffs can establish that there is a probability that they will prevail. *Id.* § 425.16(b)(1). They cannot do so.

The claims in the Second Amended Complaint ("SAC") brought by Plaintiffs Concerned Jewish Parents and Teachers of Los Angeles, *et al.*, against United Teachers Los Angeles ("UTLA"), the labor organization that represents educators working for the Los Angeles Unified School District ("LAUSD"), and UTLA President Cecily Myart-Cruz (collectively, "UTLA Defendants"), meet this standard because they are frivolous, direct attacks on constitutionally protected activities. All of these claims arise from activities that, as alleged, are in furtherance of the rights of petition and free speech in connection with a public issue, specifically the ongoing debate over public school ethnic studies curricula and how or whether discussions of the Israel-Palestine conflict might fit in. Plaintiffs' claims are deficient for numerous reasons, most importantly because UTLA Defendants are private actors with free speech rights, not state actors.

Although the SAC is bereft of legal substance, it is full of overheated rhetoric attacking anti-Zionist ideas that Plaintiffs disagree with and incorrectly assert are "not protected ideas, beliefs, or expressions." SAC ¶ 225(c). UTLA Defendants recognize that the Israel-Palestine conflict is a profoundly fraught and turbulent situation, with heartfelt beliefs of existential character on both sides. But criticisms of Israel and its

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1  government, and even its right to exist, do not give rise to a legitimate lawsuit; nor

2  does advocacy for considering such ideas in ethnic studies classes. The SAC itself

3  shows that it is Plaintiffs, not UTLA Defendants, who are attempting to drive ideas

4  with which they disagree from the "public square" and short-circuit public,

5  democratic processes. (SAC ¶¶ 12, 66, 71, 72, 228).

6      For these reasons, UTLA Defendants respectfully request that this Court grant

7  their Special Motion to Strike and strike Plaintiffs' claims without leave to amend

8  because further amendment would be futile. *See Serra v. Lappin,* 600 F.3d 1191,

9  1200 (9th Cir. 2010); *Gardner v. Martino,* 563 F.3d 981, 992 (9th Cir. 2009).

10  **II.    STATEMENT OF FACTS**

11      Plaintiffs allege the defendants, including UTLA Defendants, violated the

12  California Education Code and the Equal Protection Clause of the California

13  Constitution by causing anti-Zionist ideas that Plaintiffs find offensive to be taught

14  in LAUSD. SAC ¶¶ 226-228, 246-258. In 2020, Los Angeles began requiring high

15  school students to take at least one class in ethnic studies and integrated ethnic

16  studies into the PreK-8 curricula. SAC ¶ 2. In October 2021, California enacted a

17  law adopting an Ethnic Studies Curriculum ("ESC"). SAC ¶ 4. LAUSD and UTLA

18  maintain an LAUSD-UTLA Ethnic Studies Committee, which includes five UTLA-

19  appointed members, pursuant to a collective bargaining agreement. SAC ¶ 34-35.

20  The role of the Committee, per the agreement, is to "provide input" on an ethnic

21  studies curriculum. SAC ¶¶ 35. Plaintiffs claim that UTLA Defendants have used

22  their power of appointment "to include in LAUSD classes the antisemitic and anti-

23  Zionist teaching materials at issue in this case." SAC ¶ 33.

24      Plaintiffs also allege that UTLA "expend[s] publicly funded teacher

25  resources, and union dues . . . to promote adoption of the LESMC[,]" although they

26  do not specify which alleged activities involve public funding or the nature of that

27  funding. SAC ¶ 33. The Union has provided professional development grants to a

28  group that held workshops regarding culturally responsive teaching that allegedly

Bush Gottlieb
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

"led teachers to bring the [Liberated Ethnic Studies Model Curriculum ("LESMC")] in LAUSD 'to their own classrooms[.]'" SAC ¶ 45. UTLA has also advertised discussions about teaching about Palestine and hosted a public Ethnic Studies Panel to discuss the State Board of Education's ethnic studies guidelines. SAC ¶¶ 9, 55, 92, 109. During the panel discussion, educators and union members made statements regarding their views on ethnic studies and its development within the California public-school curriculum. SAC ¶¶ 9-10. At this forum, Myart-Cruz voiced concerns regarding what she perceived to be flaws of the recently passed ESC. SAC ¶ 106. UTLA invited an expert on Palestine to the forum who, in the course of her presentation, criticized Zionism and the state of Israel for "settler-colonialism," "ethnic cleansing," and "ongoing land theft," and argued against the silencing of such views through the conflation of anti-Zionism and antisemitism. SAC ¶¶ 54-59. Plaintiffs characterize this presentation as "quoting hateful propaganda" and "indoctrinating the educators in anti-Israel hatred and antisemitism." SAC ¶ 56. Finally, a member of UTLA's Board refused Plaintiff Amy Leserman entrance to an LESMC Consortium event. SAC ¶¶ 122-127

The SAC alleges that through these activities, and through participation in a supposed "conspiracy" with the other Defendants and public school teachers, UTLA Defendants were promoting the LESMC in LAUSD, "concealing" its content, and, in doing so, violating several statutes and constitutional provisions including: (1) the Equal Protection Clause of the California Constitution and California Education Code section 220 because the curriculum is discriminatory, SAC ¶¶ 226-228, 249-253; (2) Education Code sections 51500, 51501, and 51225.3 because the curriculum criticizes Israel and Zionism, SAC ¶¶ 246-253; and (3) Education Code section 51225.3 because it caused the teaching of unapproved materials without public notice and comment, SAC ¶¶ 256-258.

Plaintiffs seek, *inter alia*, declaratory relief stating that use of the objected-to LESMC elements in Los Angeles public schools violates these statutes, SAC, Prayer

Bush Gottlieb
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

¶ 1, and:

> declaratory and injunctive relief [] permanently enjoining and prohibiting all Defendants from using the elements of the LESMC at issue in this case in their public school classrooms or in any training sessions funded by public funds, or for which salary points are awarded by LAUSD[.]

SAC, Prayer ¶ 6. They also request "any and all further relief to which Plaintiffs may be justly entitled." SAC, Prayer ¶ 8.

## III. ARGUMENT

### A. The Anti-SLAPP statute was enacted to strike lawsuits that interfere with constitutional speech rights.

California's anti-SLAPP statute provides for a "special motion to strike" any "cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue . . . ." C.C.P. § 425.16(b)(1). The law is designed to "discourage suits that masquerade as ordinary lawsuits but are brought to deter common citizens from exercising their political or legal rights or to punish them for doing so." *Sarver v. Chartier*, 813 F.3d 891, 901 (9th Cir. 2016) (cleaned up). As the Legislature decreed, the statute must "be construed broadly" to protect public participation from being chilled by lawsuits. C.C.P. § 425.16(a)*; Manufactured Home Communities, Inc. v. County of San Diego*, 655 F.3d 1171 (9th Cir. 2011); *City of Montebello v. Vasquez*, 1 Cal. 5th 409, 421 (2016) ("[T]he anti-SLAPP statute is to be 'construed broadly' so as to 'encourage continued§ participation in matters of public significance . . . .'").

In the Ninth Circuit, the anti-SLAPP statute applies in pendent jurisdiction cases. *E.g. Dean v. Kaiser Found. Health Plan, Inc*., 562 F. Supp. 3d 928, 934 (C.D. Cal. 2022); *In re Bah*, 321 B.R. 41 (9th Cir. 2005). Courts in the Ninth Circuit must apply the substantive aspects of the anti-SLAPP statute as the California Supreme

Bush Gottlieb
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1   Court and appellate courts have applied them. *Hilton v. Hallmark Cards*, 599 F.3d

2   894, 905–07 (9th Cir. 2010).

3       The anti-SLAPP analysis proceeds in two steps. Under C.C.P. § 425.16(b)(1),

4   a defendant has the initial burden of showing that the challenged causes of action

5   arise from acts in furtherance of their right of petition or free speech in connection

6   with a public issue, as defined in C.C.P. § 425.16(e). The defendant's burden on the

7   first prong is "not an onerous one." *Mogan v. Sacks, Ricketts & Case, LLP*, 2022

8   U.S. Dist. LEXIS 4592, at *29 (N.D. Cal. Jan. 10, 2022); *Okorie v. L.A. Unified Sch.*

9   *Dist.*, 14 Cal. App. 5th 574, 590 (2017) (disapproved of on other grounds in *Bonni v.*

10  *St. Joseph Health Sys.*, 11 Cal.5th 995, 1010-11 (2021)). The defendant "need only

11  make a prima facie showing that the plaintiff's claims arise from the defendant's

12  constitutionally protected free speech or petition rights," and does not need to

13  "establish his or her actions are constitutionally protected under the First Amendment

14  as a matter of law." *Okorie*, 14 Cal. App. 5th at 590 (cleaned up); *see also Doe v.*

15  *Gangland Prods.*, 730 F.3d 946, 954 (9th Cir. 2013). The "court must generally

16  presume the validity of the claimed constitutional right in the first step of the anti-

17  SLAPP analysis, and then permit the parties to address the issue in the second step of

18  the analysis, if necessary." *Greater L.A. Ag. on Deafness, Inc. v. CNN, Inc*., 742 F.3d

19  414, 422 (9th Cir. 2014) (quoting *City of L.A. v. Animal Def. League*, 135 Cal. App.

20  4th 606, 621 (2006)).

21      Once a defendant has made their showing, the burden shifts to the plaintiff to

22  establish "that there is a probability that the plaintiff will prevail on the claim."

23  C.C.P. § 425.16(b)(1). This prong is satisfied if the plaintiffs have not shown the

24  complaint to be legally sufficient in every material respect, including those not

25  affirmatively challenged by defendants in an anti-SLAPP motion.[1] *Gunn v. Drage*,

---

[1] This is the appropriate standard to apply to this Motion because it challenges only
the legal sufficiency of the SAC. *Planned Parenthood Fed'n of Am. v. Ctr. for Med.*

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

65 F.4th 1109, 1118 (9th Cir. 2023); *Navellier v. Sletten*, 29 Cal. 4th 82, 88-89 (2002); *Dean*, 562 F. Supp. 3d at 933; *see also Am. Studies Ass'n v. Bronner*, 259 A.3d 728, 740-742 (D.C. 2021) (holding claims targeting an academic Israel boycott resolution necessarily met the second prong of an analogous District of Columbia anti-SLAPP law because trial court had dismissed them for failure to state a claim). The operative complaint "provides the outer boundaries of the issues that are to be addressed in an anti-SLAPP motion," *Med. Marijuana, Inc. v. ProjectCBD.com*, 46 Cal. App. 5th 869, 889 (2020), and the court "must take the complaint as it is." *Martin Baker Aircraft Co. v. Teledyne Risi, Inc*, 2020 U.S. Dist. LEXIS 186262, at *23 (quoting *Premier Med. Mgmt. Sys. v. Cal. Ins. Guar. Ass'n*, 136 Cal. App. 4th 464, 476 (2006)).

If plaintiffs fail to carry their burden, the motion to strike must be granted and the challenged cause(s) of action "shall be stricken." *Simpson Strong-Tie Co. v. Gore*, 49 Cal. 4th 12, 21 (2010). A party prevailing on an anti-SLAPP motion is entitled to attorney's fees and costs. C.C.P. § 425.16(c)(1); *Khai v. Cty. of L.A.*, 730 F. App'x 408, 411 (9th Cir. 2018).

**B.     Step One: Plaintiffs' Claims Against UTLA Defendants Arise from Acts of Petition and Free Speech in Connection with the Public Issues of Curriculum and the Israel-Palestine Conflict.**

The anti-SLAPP statute applies to all claims against UTLA Defendants because they arise from "act[s] . . . in furtherance of [a] person's right of petition or free speech under the United States or California Constitution in connection with a public issue." C.C.P. § 425.16(b)(1). The statute defines such protected activity, non-exclusively, to include:

(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding

---

*Progress,* 890 F.3d 828, 834 (9th Cir. 2018).

Bush Gottlieb
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1  authorized by law, (2) any written or oral statement or writing made in

2  connection with an issue under consideration or review by a legislative,

3  executive, or judicial body, or any other official proceeding authorized

4  by law, (3) any written or oral statement or writing made in a place

5  open to the public or a public forum in connection with an issue of

6  public interest, or (4) any other conduct in furtherance of the exercise

7  of the constitutional right of petition or the constitutional right of free

8  speech in connection with a public issue or an issue of public interest.

9  *Id.* § 425.16(e). A defendant can make use of anti-SLAPP protections so long as

10  they demonstrate conduct within any *one* of the four categories. *City of Cotati v.*

11  *Cashman*, 29 Cal. 4th 69, 76 (2002). As we show below, Plaintiffs' claims fall into

12  at least three of these categories.

13  Plaintiffs' claims arise from constitutionally protected acts of advocacy:

14  UTLA Defendants' efforts to change the curricular model for public-school teaching

15  in Los Angeles and statements critical of the State's optional model curriculum for

16  ethnic studies, the ESC. Within the statute, "in furtherance of petitioning or free

17  speech" means "helping to advance, [or] assisting." *Roberts v. Kiafar*, No. SACV

18  15-1505-JLS, 2016 U.S. Dist. LEXIS 5747, at *18 (C.D. Cal. Jan. 7, 2016) (quoting

19  *Lieberman v. KCOP Tel., Inc.*, 110 Cal. App. 4th 156, 166 (2003). This means that

20  the acts complained of "need not constitute speech; they merely need to help

21  advance or facilitate the exercise of free speech rights." *Collier v. Harris*, 240 Cal.

22  App. 4th 41, 53 (Sept. 1, 2015); *see also Lieberman*, 110 Cal. App. 4th at 166

23  (explaining the "statute's reach is not restricted to speech, but expressly applies to

24  *conduct*"); *Taus v. Loftus*, 40 Cal. 4th 683, 712-13 (2007) (finding defendant's

25  prepublication activities such as carrying out an initial investigation constituted

26  conduct in furtherance of their right of free speech); *San Diegans for Open Gov't v.*

27  *San Diego State Univ. Rsch. Found.*, 13 Cal. App. 5th 76, 84 (2017) ("Providing

28  office space and related newsgathering facilities in exchange for investigative news

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1  stories furthers protected speech."). Thus, both the challenged speech and conduct

2  constitute "act[s]" within the scope of § 425.16(b).

3          The claims put forward by Plaintiffs arise directly from UTLA

4  Defendants' protected speech and conduct. Plaintiffs allege that UTLA has

5  advocated for the LESMC, promoted it among teachers, and encouraged teachers

6  (through unspecified means) to implement the curriculum in their classrooms despite

7  its lack of District approval. While the specific conduct and speech Plaintiffs take

8  issue with is difficult to ascertain, everything they allege UTLA or Myart-Cruz did or

9  said is protected communication, advocacy and/or collective bargaining. The

10  following acts appear to serve as the gravamen of their claims as alleged: UTLA's

11  appointment of advocates of the LESMC to the LAUSD-UTLA Ethnic Studies

12  Committee, SAC ¶40-44; UTLA's grants supporting an organization that held

13  workshops where teaching with a liberated ethnic studies lens was discussed, SAC ¶

14  45; its promotion of events regarding the importance of teaching about Palestine,

15  SAC ¶ 109; its hosting of a public panel and forum where members, Union leaders,

16  and a consultant criticized the ESC and spoke about the importance of addressing

17  Palestinian oppression within ethnic studies, SAC ¶ 9-10, 54-60, 172; and UTLA's

18  online advertising of this panel, SAC ¶ 129, b.

19          They also contend Myart-Cruz has openly criticized the current iteration of

20  ethnic studies. SAC ¶ 106. And throughout the SAC, they make vague and

21  conclusory allegations implying that UTLA Defendants have endorsed or otherwise

22  adopted the LESMC and that their endorsement or promotion of these materials

23  makes them directly liable. SAC ¶ 30, 116, 258. All of this is protected speech and

24  conduct and was "the wrong complained of" in Plaintiffs' complaint because the

25  theory underlying Plaintiffs' claims is that UTLA Defendants' conduct and speech

26  are somehow causing materials Plaintiffs find offensive to be publicized and taught

27  in LAUSD schools. *Wilson v. Cable News Network, Inc.*, 7 Cal. 5th 871, 884 (2019);

28  *see also Tannous v. Cabrini Univ.*, 2023 U.S. Dist. LEXIS 179616 (E.D. Pa. Oct. 4,

Bush Gottlieb
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

UTLA & MYART-CRUZ'S SPECIAL MOTION TO STRIKE [CCP § 425.16]

2023) (holding comments about alleged anti-Semitism to be protected speech on matters of public concern).

In an apparent attempt to avoid anti-SLAPP liability, Plaintiffs have inserted disclaimers suggesting that they are only challenging publicly funded and governmental activities rather than the issuance of certain (inadequately specified) "statements." SAC ¶¶ 75, 222-225. But even if these vague and evasive disclaimers could immunize Plaintiffs from anti-SLAPP liability, which they cannot,[2] it is still impossible to determine from the SAC what allegations Plaintiffs are attempting to disclaim as a basis for liability. This is particularly true given the SAC's vague and sweeping allegations regarding public funding and state action, SAC ¶ 31, 33, 49, its implication that the LESMC is inherently discriminatory and that exposure to it even outside the classroom is injurious, *e.g.*, SAC ¶¶ 30, 228, 233, 239, and a statement that "[t]he principles Defendants espouse as alleged herein are not protected ideas, beliefs, or expressions[].", SAC ¶ 225(c). Their claims are therefore undeniably based on UTLA Defendants' promotion—through conventional means of expression and petition—of curriculum content with which they disagree.

We now turn to the specific categories of speech and conduct protected by the anti-SLAPP statute.

    1.    <u>All of the Speech and Conduct at Issue is Protected by the First Amendment and thus Protected under § 425.16(e)(4).</u>

All of UTLA Defendants' challenged speech and conduct is "in furtherance of the exercise of the constitutional right of petition or the constitutional right of free

---

[2] Plaintiffs cannot avoid liability under the anti-SLAPP statute through disclaimers stating they are not challenging protected speech or conduct. *Finato v. Keith A. Fink & Assocs.*, 68 Cal. App. 5th 136, 151 (2021) (holding trial court should have disregarded disclaimer in complaint subject to anti-SLAPP that was an attempt to artfully plead around anti-SLAPP liability). If a plaintiff could avoid anti-SLAPP liability by inserting a paragraph disclaiming any allegations that might be targeting protected activity, the anti-SLAPP law would be a dead letter.

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1   speech in connection with a public issue or an issue of public interest" within the

2   meaning of C.C.P. § 425.16(e)(4). Plaintiffs' allegations find fault with, and their

3   state law causes of action arise from, UTLA Defendants' protected speech and

4   petitioning activities as private actors. Teachers and their representatives, including

5   UTLA Defendants, have First Amendment rights to comment on matters of public

6   interest including concerns regarding public school operations.

7              (a)    UTLA's speech and conduct are protected by the First

8                     Amendment.

9              UTLA's dissemination of information about alternate ethnic studies models,

10  its creation of space for and encouragement of critiques of the existing ESC, its

11  appointed panel members' direct interactions with LAUSD through the advisory

12  joint committee, and its general alleged endorsement and promotion of the LESMC

13  are all acts protected by the First Amendment. *See*, *e.g*., *Martin v. Wrigley*, 540 F.

14  Supp. 3d 1220 (N.D. Ga. 2021) (law prohibiting contractors from contracting with

15  anti-Israel vendors unconstitutional because advocating a boycott of Israel is

16  protected speech); *Jordahl v. Brnovich*, 336 F. Supp. 3d 1016 (D. Ariz. 2018)

17  (same), *vacated as moot and remanded* 789 F. App'x 589 (9th Cir. 2020); *Amawi v.

18  Pflugerville Indep. Sch. Dist*., 373 F. Supp. 3d 717 (W.D. Tex. 2019) (same), *vacated

19  as moot and remanded sub nom. Amawi v. Paxton*, 956 F.3d 816 (5th Cir. 2020);

20  *Koontz v. Watson*, 283 F. Supp. 3d 1007 (D. Kan. 2018). "Public-sector unions have

21  the right under the First Amendment to express their views on political and social

22  issues without government interference." *Knox v. Serv. Emp. Int'l. Union, Local

23  1000*, 567 U.S. 298, 321-22 (2012). Therefore, both UTLA's direct speech and its

24  conduct in support of its First Amendment rights and/or those of its members are

25  protected. Notably, hosting an event for discussion of a topic of public interest is "a

26  quintessential way to facilitate [First Amendment] rights." *Hupp v. Freedom

27  Commc'n, Inc.*, 221 Cal. App. 4th 398, 405 (2013).

28              (b)    Myart-Cruz's speech and conduct are protected by the

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

First Amendment.

Myart-Cruz's alleged speech and conduct, including her speech during the Ethnic Studies Panel, is similarly protected under the First Amendment. As further explained in the section on state action in the concurrently filed Memorandum of Points and Authorities in Support of UTLA Defendants' Motion to Dismiss ("Motion to Dismiss"), UTLA Defendants are private actors with full First Amendment rights, not state actors. Plaintiffs allege, upon information and belief, that Myart-Cruz was a member of the UTLA-LAUSD Ethnic Studies Committee, but the Committee is purely advisory, and she served at the pleasure of UTLA, not the District. Although Plaintiffs imply that Myart-Cruz's role with respect to the Committee imbued all her activities with state authority, they have not alleged that any of her speech or conduct occurred within the scope of her role on this Committee, or even what the nature of her role on this Committee was. Indeed, Plaintiffs essentially admit that her activities in support of the LESMC are all undertaken in her capacity as UTLA President. SAC ¶ 49.

However, even if Myart-Cruz were a public employee with respect to her role on the Committee, the activities challenged by the SAC would still be protected. To analyze speech restrictions on public employees, courts look to (1) whether an employee speaks "pursuant to [his or her] official duties," or "as a citizen addressing a matter of public concern" and (2) whether the employee's speech interests are outweighed by "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Board of Education*, 391 U.S. 563, 568 (1968); *see also Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2423; *Demers v. Austin*, 746 F.3d 402, 412 (9th Cir. 2014) (holding that the *Pickering* test continues to apply to "speech related to scholarship or teaching"). Under the first prong of the test, First Amendment protections still apply so long as the speaker speaks as a private citizen. *Pickering*, 391 U.S. at 568. The burden then shifts to the opposing party to demonstrate the public employer's interests outweigh

Bᴜsʜ Gᴏᴛᴛʟɪᴇʙ
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1   the public employee's retention of her First Amendment rights. *Id.*

2   Because Myart-Cruz spoke as a private citizen regarding a subject of public

3   concern, the First Amendment protections forecloses Plaintiffs' arguments absent a

4   plausible allegation suggesting a governmental need to curtail her speech. The

5   "critical question" in ascertaining whether the private citizen element is met is

6   "whether the speech at issue is itself ordinarily within the scope of an employee's

7   duties." *Bremerton*, 142 S. Ct. at 2423. That is, only speech that "owes its existence"

8   to Myart-Cruz's position can be curtailed. *Garcetti v. Ceballos*, 547 U.S. 410, 419

9   (2006); *see also Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954, 962, 966 (9th

10  Cir. 2011). None of the speech at issue in this complaint occurred because of Myart-

11  Cruz's position on the Committee. *See Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009)

12  (holding that an inference of liability is not plausible when the allegations in a

13  complaint give rise to an "obvious alternative explanation" of legality).

14  Because Myart-Cruz speech and conduct was as a private citizen, and as will

15  be shown below, her speech addressed a matter of public concern, it is protected

16  under the First Amendment. In turn, the burden shifts to Plaintiffs to demonstrate

17  the District's interests as an employer outweigh Myart-Cruz's private speech rights.

18  *Bremerton*, 142 S. Ct. at 2421. Plaintiffs have failed to allege any indication of such

19  an interest and could not plausibly do so, given that Myart-Cruz's role on the

20  Committee is to serve as a representative of UTLA, which has the power to appoint

21  and dismiss her. SAC ¶ 33.

22  (c)   UTLA Defendants' speech and conduct are protected

23  under the California Constitution.

24  UTLA Defendants' speech and conduct is also protected by Article I, section

25  2, subdivision (a) of the California Constitution, which provides more expansive

26  protections for speech than the U.S. Constitution. *See Wilson v. Super. Ct.*, 13 Cal.

27  3d 652, 658 (1975).

28  (d)   No allegations support that UTLA Defendants lost the

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

constitutional protections for their speech.

Plaintiffs make highly general allegations implying that UTLA Defendants are advocating for teachers to teach the LESMC prior to District adoption and/or secretly. *E.g.*, SAC ¶ 229. Although these allegations are not sufficiently specific to survive a motion to dismiss, they are necessarily targeting advocacy activity that is by its nature protected. *See Martin*, 540 F. Supp. 3d at 1225-28, *Jordahl v. Brnovich*, 336 F. Supp. 3d at 1042-43; *Amawi* 373 F. Supp. 3d at 743-45; *Koontz*, 283 F. Supp. 3d at 1022-1024. Indeed, even if the teaching of the LESMC in LAUSD were unlawful (which it is not), this would not remove the protections of the First Amendment for those who encourage such teaching. Advocacy for activity determined to be unlawful poses no bar to the protections of the First Amendment unless it is "directed to inciting or producing imminent lawless action and is likely to incite or produce such action." *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969). "[A]dvocacy of illegal action at some indefinite future time" is not actionable. *Hess v. Indiana*, 414 U.S. 105, 108–09 (1973). These protections extend to petitioning activities: "The mere fact that citizens urge their government to adopt measures that may be unlawful does not deprive the speech involved of its First Amendment protection. . . . Peaceful speech, even speech that urges civil disobedience, is fully protected by the First Amendment." *White v. Lee*, 227 F.3d 1214, 1227-28 (9th Cir. 2000).

Here, nothing in Myart-Cruz's or UTLA's prior statements or expressive conduct set forth in the SAC came close to incitement of imminent lawless action. *See id*. at 1227-28 (holding speech in opposition to conversion of a local motel into multi-family housing was protected under the First Amendment despite promoting discrimination); *Rodriguez v. Maricopa Cty. Cmty. Coll. Dist.*, 605 F.3d 703, 708 (9th Cir. 2009) (holding that untargeted general publication of offensive views on matters of public concern is pure, protected speech, even if similar but more targeted statements could be the basis of a discrimination claim in the context of a

1  supervisory relationship). Likewise, California courts have repeatedly held that even

2  when conduct is allegedly unlawful, it can still be in furtherance of the right of free

3  speech under the anti-SLAPP statute. *Lieberman*, 110 Cal. App. 4th at 165-66

4  (holding unlawful news-gathering activity in the form of surreptitious recordings

5  that were allegedly illegally obtained were still protected under the anti-SLAPP

6  statute because they were in furtherance of the right of free speech).

7           (e)       All of the speech and conduct at issue addressed public

8                     issues.

9           The operation of public schools and what should or should not be taught

10  within their classrooms is "a public issue [and] an issue of public interest," within the

11  meaning of C.C.P. § 425.16(e)(4). The courts have identified three broad categories

12  of cases that involve a public issue or an issue of public interest: cases that concern

13  (1) "a person or entity in the public eye"; (2) "conduct that could directly affect a

14  large number of people beyond the direct participants"; or (3) "a topic of widespread

15  public interest". *Rivero v. AFSCME*, 105 Cal. App. 4th 913, 924 (2003); *accord*

16  *FilmOn.com v. DoubleVerify Inc.*, 7 Cal. 5th 133, 149-50 (2019). The present case

17  falls within all three of these, as it concerns two entities (and one person) in the

18  public eye, LAUSD, UTLA, and Myart-Cruz; the challenged speech directly affects

19  a large number of people (LAUSD's hundreds of thousands of employees and

20  students, their parents, and the community); and the issue of public-school curricula,

21  especially in the second-largest public-school district in the nation, is a topic of

22  widespread public interest, as is the Israel-Palestine conflict. *See Doe v. Gangland*

23  *Prods.*, 730 F.3d 946, 955 n.4 (9th Cir. 2013) ("[A]n issue of public interest is '*any*

24  *issue in which the public is interested.*'") (quoting *Nygard, Inc. v. Uusi-Kerttula*, 159

25  Cal. App. 4th 1027, 1042 (2008)); *Damon v. Ocean Hills Journalism Club*, 85 Cal

26  .App. 4th 468, 479 (2000) (observing that "governmental matters" fall within the

27  definition of "public interest" under the anti-SLAPP). In sum, UTLA Defendants'

28  speech and conduct was in furtherance of their constitutional speech rights about a

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1  matter of public concern and was thus protected under § 425.16(e)(4).

2                           (f)      UTLA Defendants' speech and conduct are further

3                                    protected under the *Noerr-Pennington* doctrine.

4          UTLA Defendants' activities are also protected by the *Noerr-Pennington*

5  doctrine, which embodies the First Amendment right to petition and provides that

6  "those who petition any department of the government for redress are generally

7  immune from statutory liability for their petitioning conduct." *Sosa v. DIRECTV,*

8  *Inc.*, 437 F.3d 923, 929 (9th Cir. 2006); *see also United Mine Workers v.*

9  *Pennington*, 381 U.S. 657 (1965); *E.R.R. Presidents Conference v. Noerr Motor*

10  *Freight*, 365 U.S. 127 (1961). The doctrine derives from the First Amendment's

11  Petition Clause and applies to virtually all civil claims. *White*, 227 F.3d at 1231. It

12  immunizes direct petitioning activity as well as ancillary expressive conduct in

13  support of direct petitioning. *Noerr Motor Freight*, 365 U.S. at 142-45 (immunizing

14  public relations campaign); *see also Freeman v. Lasky, Haas & Cohler*, 410 F.3d

15  1180 (9th Cir. 2005).

16          In advocating for curriculum changes, UTLA Defendants are petitioning

17  LAUSD to take action in accordance with their visions for public education. This is

18  protected activity under the *Noerr-Pennington* doctrine. Even though some of this

19  speech was directed at teachers, this speech is also immunized because of the key

20  role of teachers in approving curriculum and their discretion over what materials to

21  teach. Cal. Educ. Code § 60210(c) (providing for majority teacher representation in

22  local district review of adoption of instructional materials); *Forro Precision, Inc. v.*

23  *IBM*, 673 F.2d 1045, 1060 (9th Cir. 1982). Additionally, UTLA Defendants'

24  petitioning activity would be immune under the doctrine even if they were held to be

25  state actors, as conspirators or otherwise. *Empress LLC v. City & Cnty. of S.F.*, 419

26  F.3d 1052, 1057 (9th Cir. 2005); *Manistee Town Ctr.* v. *City of Glendale*, 227 F.3d

27  1090, 1093 (9th Cir. 2000) (applying *Noerr-Pennington* doctrine to a §1983 claim

28  against municipality lobbying another municipality); *Fitbit, Inc. v. Laguna 2, LLC*,

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1    2018 U.S. Dist. LEXIS 2402 (N.D. Cal. Jan. 5, 2018).

2        2.    The Speech at Issue is Protected under § 425.16(e)(3).

3        Next, some of the Plaintiffs' claims also arise from Myart-Cruz and UTLA's

4    "written [and] oral statement[s] or writing[s] made in a place open to the public or a

5    public forum in connection with an issue of public interest." C.C.P. § 425.16(e)(3).

6    UTLA's public posts on social media advertising the Ethnic Studies Panel and

7    sharing of other resources regarding ethnic studies and anti-Zionism, and Myart-

8    Cruz's speech at that forum is covered under § 425.16(e)(3). As discussed above,

9    decisions about the breadth and coverage of public-school curriculum are clearly a

10   matter of public concern, as is the Israel-Palestine conflict. *See Nygard,* 159 Cal.

11   App. 4th at 1042. Moreover, courts broadly construe "public forum" to include any

12   "place that is open to the public where information is freely exchanged."

13   *ComputerXpress, Inc., v. Jackson*, 93 Cal. App. 4th 993, 1006 (2011). Such a forum

14   "is not limited to a physical setting, but also includes other forms of public

15   communication." *Damon*, 85 Cal. App. 4th at 476.

16       Social media and online platforms have been acknowledged as a "public

17   forum" akin to "the modern public square." *See Packingham v. N. Carolina*, 137 S.

18   Ct. 1730, 1736-37 (2017). As the California Supreme Court explained in *Barrett v.*

19   *Rosenthal*, "[w]eb sites accessible to the public . . . are 'public forums' for purposes

20   of the anti-SLAPP statute." 40 Cal. 4th 33, 59 n. 4 (2006); *see also Balla v. Hall*, 59

21   Cal. App. 5th 652, 673 (2021) (Facebook posts); *Jackson v. Mayweather*, 10

22   Cal.App.5th 1240, 1252 (2017) (Instagram posts and comments during radio

23   broadcast). Thus, UTLA's posting on social media and the speech expressed during

24   the online Ethnic Studies Panel both occurred at a public forum and are exactly the

25   types of expression C.C.P. § 425.16(e)(3) was meant to protect.

26       3.    The Speech at Issue is Protected under § 425.16(e)(2).

27       Finally, some of UTLA Defendants' speech constitute "[a]ny written or oral

28   statement or writing made in connection with an issue under consideration or review

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

UTLA & MYART-CRUZ'S SPECIAL MOTION TO STRIKE [CCP § 425.16]

by a legislative . . . body, or any other official proceeding authorized by law" within the meaning of § 425.16(e)(2). UTLA's online posting regarding the Ethnic Studies Panel and its promotion of other events and information regarding ethnic studies, as well as Myart-Cruz's commentary discussing the need for "authentic" ethnic studies, was meant to change public officials' perspectives about the curriculum and thereby encourage the official adoption of a different curricular model. SAC ¶ 9, 34-38, 39, 109. A statement is made "in connection with" a proceeding under § 425.16(e)(2) if it bears some relation to the substantive issues in the proceeding and is directed to persons having some potential interest in the proceeding. *Contemporary Services Corp. v. Staff Pro Inc.*, 152 Cal. App. 4th 1043, 1055 (2007).

The ESC was passed less than one year ago, SAC ¶ 4, and the scope and bounds of ethnic studies within public schools in California is an ongoing source of debate and contention among lawmakers and school board decision-makers. And at the local level, LAUSD is actively considering adoption of ethnic studies curricular materials. SAC ¶¶ 34-35. Because the speech at issue here was about public-school curriculum—an issue under consideration—and it was carried out in order to shape the discourse surrounding ethnic studies and influence decisions regarding school operations, it was sufficiently "*in connection with* an issue under consideration" by a legislative body—the Legislature—or an official proceeding authorized by law—the school board decision-making process—under § 425.16(e)(2).

UTLA Defendants' speech was sufficiently connected to an issue under review by the state legislature and official proceedings of the local school board. *See* Cal. Educ. Code § 60210(c) (official procedure for local adoption of instructional materials); *id.* § 51225.3 (a)(1)(G)(ii)(IV) (official procedure for local adoption of mandatory ethnic studies class curriculum).[3] Myart-Cruz's comments during the

---

[3] Although some of this speech and activity targeted teachers rather the District or members of the public, under California law, teachers have a key role in approval of

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

Ethnic Studies Panel and UTLA's public forum promotion and dissemination of information regarding alternative ethnic studies models were occasions for UTLA to provide its members and the public with the resources and knowledge to challenge the inadequacies of the current ESC. Thus, this speech was meant to influence the thinking of lawmakers and their constituents and accordingly is covered by the statute. C.C.P. § 425.16(e)(2); *Lafayette Morehouse*, 37 Cal. App. 4th at 51 (finding newspaper's articles describing an ongoing debate about unhoused residents, corresponding complaints, public hearings held in response, and later state court action, "were clearly united by dependence on or relation to the official executive, legislative, and judicial actions they described" and were sufficiently "in connection" with those proceedings, triggering application of § 425.16(e)(2)).

Moreover, "communications to an official agency intended to induce the agency to initiate action are part of an 'official proceeding.'" *Lee v. Flick*, 135 Cal. App. 4th 89, 96 (2005); *Buzayan v. City of Davis Police Dep't*, 2007 U.S. Dist. LEXIS 60032 (E.D. Cal. Aug. 8, 2007). For example, in *Lee v. Flick*, the court held that informal meetings by school officials concerning complaints can qualify as an "official proceeding" within the meaning of the statute. 135 Cal. App. 4th at 96-97; *cf. Brody v. Montalbano*, 87 Cal. App. 3d 725 (1978) (holding parent complaints to school board about principal are subject to absolute privilege). Much like complaints by parents, UTLA Defendants' commentary was made in order to induce the District to take action on adoption of curricular materials. Such speech was thus covered under the statute's protection of "any other official proceeding authorized by law." C.C.P. § 425.16(e)(2).

---

curriculum. *Id.*, § 60210(c) (providing for majority teacher representation in local district review of adoption of instructional materials).

Bush Gottlieb
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

**C.    Step Two: Plaintiffs cannot carry their burden of showing a
probability of prevailing on their claims.**

Plaintiffs cannot prevail on their state law claims raised in the SAC because, as
alleged, they fail as a matter of law. *See Med. Marijuana, Inc.*, 46 Cal. App. 5th at
889; *Jackson*, 10 Cal. App. 5th at 1263; *Smith*, 2011 U.S. Dist. LEXIS 121449, at
*20 (N.D. Cal. Oct. 20, 2011). As further explained in UTLA Defendants' Motion to
Dismiss, the state law claims are subject to dismissal under Federal Rule of Civil
Procedure Rules 12(b)(1) and 12(b)(6) for multiple independent reasons, including
the following:

(a)    The Court lacks subject-matter jurisdiction to hear the SAC's claims.
Plaintiffs lack Article III standing for all forms of relief sought in the SAC because
the injuries to Plaintiffs and members of the Association Plaintiff, to the extent any
injuries are even alleged, are not concrete and particularized, are not fairly traceable
to the conduct of UTLA Defendants, and are not redressable. *Lujan v. Defenders of
Wildlife*, 504 U.S. 555, 560 (1992). Further, the claims are non-justiciable under
principles of political and religious abstention because it is not for a federal court to
resolve the questions regarding the relationship between Zionism, Judaism, the State
of Israel, and antisemitism that Plaintiffs seek to have answered. *Monteiro v. Tempe
Union High Sch. Dist.*, 158 F.3d 1022, 1028 (9th Cir. 1998).

(b)    Plaintiffs' SAC fails to state a viable claim against UTLA Defendants
under California Education Code section 220 because UTLA Defendants are not
educational institutions receiving state aid. *Karasek v. Regents of the Univ. of Cal.*,
No. 15-cv-03717, 2015 U.S. Dist. LEXIS 166524, at *56 (N.D. Cal. Dec. 11, 2015).
Further, the Section 220 claim is to be construed in accordance with caselaw
applying federal anti-discrimination statutes and fails for the same reasons that the
Title VI claim fails. *See Doe 1 v. Manhattan Beach Unified Sch. Dist.*, No. 19-cv-
6962, 2021 WL 3883910 (C.D. Cal. Aug. 31, 2021). Plaintiffs' Title VI claim fails
because Plaintiffs are not intended beneficiaries of governmental assistance. *Smith v.*

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

Bush Gottlieb
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1    *Cal. Bd. of Educ.*, No. CV-13-5395, 2014 U.S. Dist. LEXIS 159317, at *9 (C.D.

2    Cal. Oct. 6, 2014), *adopted*, 2014 U.S. Dist. LEXIS 159315, at *1 (C.D. Cal. Nov.

3    10, 2014). The claim also fails because discriminatory intent is insufficiently

4    alleged, *Alexander v. Sandoval*, 532 U.S. 275, 275 (2001), and because such claims

5    cannot be based on the content of teaching materials alone, *Monteiro*, 158 F.3d at

6    1032.

7        (c)    Plaintiffs' SAC fails to state a viable claim against UTLA Defendants

8    under the Equal Protection Clause of the California Constitution because the

9    challenged activity is not state action. *Gay Law Students Ass'n v. Pac. Tel. & Tel.

10   Co.*, 24 Cal. 3d 458 (1979); *King v. Meese*, 43 Cal. 3d 1217, 1229 (1987). The claim

11   further fails because discriminatory intent is insufficiently alleged. *Kim v. Workers'

12   Comp. Appeals Bd.*, 73 Cal. App. 4th 1357, 1361-62 (1999).

13       (d)    Plaintiffs' SAC fails to state a viable claim against UTLA Defendants

14   on the other asserted Education Code grounds, including sections 51500, 51501, and

15   51225.3. None of the statutes cited by Plaintiffs regulate the conduct of private

16   individuals or entities such as UTLA Defendants. Further, none of the statutes

17   preclude adoption of instructional materials by a school district or use of

18   instructional materials by teachers without a notice and comment process or

19   approval by the State Board of Education. As to the content of instruction, Plaintiffs

20   have failed to adequately plead abuse of discretion. *Dawson v. E. Side Union High

21   Sch. Dist.*, 28 Cal. App. 4th 998, 1019 (1994).

22       (e)    Plaintiffs' claims in the SAC against UTLA Defendants must be

23   dismissed because as alleged, they are subject to numerous defenses based on the

24   protected nature of UTLA Defendants' conduct, including the First Amendment and

25   the *Noerr-Pennington* Doctrine, as explained, *supra*. UTLA Defendants'

26   communications are also protected by the absolute privilege of California Code of

27   Civil Procedure section 47. *Action Apartment Ass'n v. City of Santa Monica*, 41 Cal.

28   4th at 1241; *Brody,* 87 Cal. App. 3d at 725.

## IV.   CONCLUSION

For the foregoing reasons, this Court should grant UTLA Defendants' Special Motion to Strike and strike all of Plaintiffs' state law claims stated in the SAC against UTLA Defendants, without leave to amend, and with recovery of attorneys' fees under C.C.P. § 425.16(c)(1) with amount to be determined by separate motion.

DATED:  November 13, 2023          IRA L. GOTTLIEB
                                   LISA C. DEMIDOVICH
                                   ADAM KORNETSKY
                                   BUSH GOTTLIEB, A Law Corporation


                                   By: _____
                                        ADAM KORNETSKY
                                   Attorneys for United Teachers Los Angeles and
                                   Cecily Myart-Cruz

Bush Gottlieb
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1

CERTIFICATE OF COMPLIANCE

2         The undersigned, counsel of record for Defendants United Teachers Los

3   Angeles and Cecily Myart-Cruz, certifies that this Motion contains 6,880 words,

4   which complies with the word limit of L.R. 11-6.1.

5

DATED:  November 13, 2023         IRA L. GOTTLIEB
6                                   LISA C. DEMIDOVICH
7                                   ADAM KORNETSKY
                                    BUSH GOTTLIEB, A Law Corporation
8

9

10                                  By: _____

11                                      ADAM KORNETSKY
                                    Attorneys for United Teachers Los Angeles and
12                                  Cecily Myart-Cruz

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

## PROOF OF SERVICE

### Case No. 2:22-cv-03243
### 2:22-cv-03243-FMO-PVC

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Los Angeles, State of California. My business address is 801 North Brand Boulevard, Suite 950, Glendale, CA 91203-1260.

On November 13, 2023, I served true copies of the following document(s) described as **DEFENDANTS UNITED TEACHERS LOS ANGELES AND CECILY MYART-CRUZ'S SPECIAL MOTION TO STRIKE on** the interested parties in this action as follows:

### SEE ATTACHED SERVICE LIST

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from e-mail address cmayo@bushgottlieb.com to the persons at the e-mail addresses listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on November 13, 2023, at Glendale, California.

_____
Chelsea Mayo

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

**SERVICE LIST**

**Case No. 2:22-cv-03243**

Lori Lowenthal Marcus                          *Via E-mail and CM/ECF*
Jerome M. Marcus
The Deborah Project
P.O. Box 212
Merion Station, PA 19066
Telephone: (610) 664-7109
Email: lorilowenthalmarcus@marcuslaw.us
        imarcus@marcuslaw.us

Robert Patrick Sticht (SBN 138586)            *Via E-mail and CM/ECF*
Judicial Watch, Inc.
425 Third Street SW, Suite 800
Washington, D.C. 20024
Telephone: (202) 646-5172
Fax: (202) 646-5199
Email: rsticht@judicialwatch.org

Michele M Goldsmith                           *Via E-mail and CM/ECF*
Marina Melikyan
BDG Law Group
10880 Wilshire Boulevard Suite 1015
Los Angeles, CA 90024
310-470-6110
Fax: 310-474-0931
Email: mgoldsmith@bdgfirm.com
        mmelikyan@bdgfirm.com

Mark A Kleiman                                *Via E-mail and CM/ECF*
Kleiman Rajaram
12121 Wilshire Boulevard Suite 810
Los Angeles, CA 90025
310-392-5455
Fax: 310-306-8491
Email: mkleiman@quitam.org