1  IRA L. GOTTLIEB (SBN 103236)
2  igottlieb@bushgottlieb.com
   LISA C. DEMIDOVICH (SBN 245836)
3  ldemidovich@bushgottlieb.com
   ADAM KORNETSKY (SBN 336919)
4  akornetsky@bushgottlieb.com
5  BUSH GOTTLIEB, A Law Corporation
   801 North Brand Boulevard, Suite 950
6  Glendale, California 91203-1260
7  Telephone:  (818) 973-3200
   Facsimile:  (818) 973-3201
8
9  Attorneys for United Teachers Los
10 Angeles and Cecily Myart-Cruz

11              UNITED STATES DISTRICT COURT

12       CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

13

14 CONCERNED JEWISH PARENTS          **CASE NO. 2:22-cv-03243-FMO-PVC**
   AND TEACHERS OF LOS
15 ANGELES, JOHN DOE, AND JANE       **DEFENDANTS UNITED**
   DOES 1-5,                         **TEACHERS LOS ANGELES AND**
16                                   **CECILY MYART-CRUZ'S**
17           Plaintiffs,             **COMBINED REPLY IN SUPPORT**
        vs.                          **OF MOTION TO DISMISS**
18 LIBERATED ETHNIC STUDIES          **SECOND AMENDED COMPLAINT**
   MODEL CURRICULUM                  **AND SPECIAL MOTION TO**
19 CONSORTIUM; UNITED                **STRIKE**
   TEACHERS LOS ANGELES;
20 CECILY MYART-CRUZ, THERESA
   MONTANO, AND GUADALUPE            **Hearing Date:** December 14, 2023
21 CARRASCO CARDONA, in their        **Hearing Time:** 10:00 AM
   individual and official capacities as  **Location:** First Street Courthouse
22 public employees; AND DOES 1-10,            350 W. 1st Street
23          Defendants,                        Courtroom 6D
        and                                    Los Angeles, CA 90012
24
25 LOS ANGELES UNIFIED SCHOOL
   DISTRICT,
26
            Nominal Defendant.
27

28

# **TABLE OF CONTENTS**

Page

I.     INTRODUCTION ..................................................................................... 1

II.    LEGAL ARGUMENT ............................................................................. 2

    A.     Plaintiffs effectively concede that they have no claim against UTLA Defendants, private parties who have no control over what teachers teach in the classroom. ....................................................... 2

    B.     Plaintiffs do not have standing for any of their claims. ...................... 4

        1.     Plaintiffs have not alleged that they themselves are suffering a concrete and particularized injury. ............................. 4

        2.     None of the alleged injuries from teaching the LESMC are fairly traceable to UTLA Defendants. ............................. 7

        3.     Any redress would require an impermissible prior restraint on speech........................................................................................ 9

    C.     If Plaintiffs' unsupportable interpretation of the law were accepted, this case would be non-justiciable as a political question and subject to the religious abstention doctrine. ................... 10

    D.     Plaintiffs' vague and conclusory allegations of state action are insufficient to state a claim for relief under § 1983. ........................... 11

    E.     Plaintiffs have not alleged any burden on their Free Exercise rights, let alone a substantial burden........................................................ 13

    F.     Statements critical of Israel and guilt-by-association are not sufficient to show discriminatory intent. ................................................ 15

    G.     Plaintiffs cannot explain how Title VI or Education Code § 220 apply to UTLA Defendants, who do not receive public funds. ............ 15

    H.     UTLA Defendants are not subject to the other Education Code provisions relied on by Plaintiffs, and Plaintiffs have waived arguments to the contrary.................................................................. 16

    I.     UTLA Defendants' challenged actions are political speech and petitioning activity protected by the First Amendment. ...................... 17

    J.     Plaintiffs fail to respond to UTLA Defendant's defenses under Civil Code § 47 and the *Noerr-Pennington* Doctrine. ......................... 18

    K.     The challenged conduct and speech of Defendants is protected under the first prong of the Anti-SLAPP statute.................................. 19

III.   CONCLUSION ...................................................................................... 21

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Allen v. Wright,*
    468 U.S. 737 (1984) ............................................................................. 6

*Am. Family Ass'n, Inc. v. City and Cnty. of S.F.,*
    277 F.3d 1114 (9th Cir. 2002) ............................................................ 14

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ............................................................................. 9

*Barren v. Harrington,*
    152 F. 3d 1193 (9th Cir. 1998) ............................................................ 4

*Blantz v. Cal. Dep't of Corr. & Rehab., Div. of Corr. Health Care
    Servs.,*
    727 F.3d 917 (9th Cir. 2013) ........................................................... 4, 8

*Brandenburg v. Ohio,*
    395 U.S. 444 (1969) ........................................................................... 18

*Brunette v. Humane Soc. of Ventura Cty.,*
    294 F.3d 1205 (9th Cir. 2002) ............................................................ 12

*Cal. Parents v. Torlakson,*
    267 F. Supp. 3d 1218 (N.D. Cal. 2017)......................................... 10, 14

*Church of Lukumi Babalu Aye v. Hialeah,*
    508 U.S. 520 (1993) ........................................................................... 14

*Clapper v. Amnesty Int'l USA,*
    568 U.S. 398 (2013) ............................................................................. 5

*Daniel v. Nat'l Park Serv.,*
    891 F.3d 762 (9th Cir. 2018) ............................................................... 8

*Dietrich v. John Ascuaga's Nugget,*
    548 F.3d 892 (9th Cir. 2008) ............................................................. 12

*Gibson v. U.S.,*
    781 F.2d 1334 (9th Cir. 1986) ............................................................ 12

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

iii

*Grimes v. Sobol*,
  832 F. Supp. 704 (S.D.N.Y 1993) .................................................................. 15

*Hess v. Indiana*,
  414 U.S. 105 (1973) ....................................................................................... 18

*Iodice v. Archcare at Terence Cardinal Cooke Health Care Ctr.*,
  2022 U.S. Dist. LEXIS 162605 (S.D.N.Y. Sept. 8, 2022) .............................. 12

*Ivey v. Bd. of Regents of Univ. of Alaska*,
  673 F.2d 266 (9th Cir. 1982) ........................................................................... 8

*Johnson v. Knowles*,
  113 F.3d 1114 (9th Cir. 1997) ........................................................................ 12

*Johnson v. Starbucks Corp.*,
  2015 U.S. Dist. LEXIS 195252 (C.D. Cal. Dec. 10, 2015)............................. 12

*Keyishian v. Bd. of Regents of Univ. of State of NY*,
  385 U.S. 589 (1967) ......................................................................................... 9

*Laird v. Tatum*,
  408 U.S. 1 (1972) ............................................................................................. 5

*Mandel v. Bd. of Trs. of the Cal. State Univ.*,
  2018 U.S. Dist. LEXIS 39345 (N.D. Cal. Mar. 9, 2018) ............................... 15

*Manistee Town Ctr. v. City of Glendale*,
  227 F.3d 1090 (9th Cir. 2000) ........................................................................ 19

*Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*,
  138 S. Ct. 1719 (2018)..................................................................................... 14

*Mogan v. Hendricks*,
  2023 U.S. Dist. LEXIS 81471 (C.D. CA May 9, 2023)................................... 21

*Monteiro v. Tempe Union High Sch. Dist.*,
  158 F.3d 1022 (9th Cir. 1998) ........................................................................ 10

*Newman v. Point Park Univ.*,
  No. 2:20-cv-00204, 2022 U.S. Dist. LEXIS 60722 (W.D. Pa. Mar.
  31, 2022)........................................................................................................... 10

*Oakley v. McWilliams*,
  879 F. Supp. 2d 1087 (C.D. Cal. 2012).............................................................. 9

*Radcliffe v. Rainbow Const. Co.*,
    254 F.3d 772 (9th Cir. 2001) ............................................................. 13

*Rozier v. Dep't of Homeland Sec. Fed. Protective Serv.*,
    No. 2:21-CV-07232-SB-AFM, 2022 WL 2199938 (C.D. Cal. Mar.
    7, 2022) ......................................................................................... 17, 19

*Sabra v. Maricopa County Community College District*,
    44 F.4th 867 (9th Cir. 2022) ............................................................. 5, 6

*Schucker v. Rockwood*,
    846 F.2d 1202 (9th Cir. 1988) ............................................................. 12

*Simmons v. Sacramento Cnty. Superior Ct.*,
    318 F.3d 1156 (9th Cir. 2003) ............................................................. 12

*Somers v. Apple, Inc.*,
    729 F.3d 953 (9th Cir. 2013) ............................................................. 13

*Sutton v. Providence St. Joseph Med. Ctr.*,
    192 F.3d 826 (9th Cir. 1999) ............................................................. 12

*T. K. v. Adobe Sys.*,
    No. 17-CV-04595-LHK, 2018 U.S. Dist. LEXIS 142988 (N.D. Cal.
    Aug. 22, 2018) ..................................................................................... 5

*United Bhd. of Carpenters & Joiners v. Bldg. & Constr. Trades Dep't*,
    770 F.3d 834 (9th Cir. 2014) ............................................................. 12

*Valley Forge Christian Coll. v. Americans United for Separation of
    Church & State, Inc.*,
    454 U.S. 464 (1982) ............................................................................. 6

*Van Dyke v. Regents of Univ. of Cal.*,
    815 F. Supp. 1341 (C.D. Cal. 1993) ..................................................... 9

*Whitaker v. Tesla Motors, Inc.*,
    985 F.3d 1173 (9th Cir. 2021) ............................................................. 13

**California Cases**

*Finato v. Keith A. Fink & Assocs.*,
    68 Cal. App. 5th 136 (2021) ............................................................... 20

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

*Oasis W. Realty, LLC v. Goldman,*
  51 Cal. 4th 811 (2011) ......................................................................... 21

*Taus v. Loftus,*
  40 Cal. 4th 683 (2007) ......................................................................... 21

*Vargas v. City of Salinas,*
  46 Cal. 4th 1 (2009) ............................................................................. 20

**Other State Cases**

*Hyun Jin Moon v. Family Fed'n for World Peace & Unification,*
  281 A.3d 46 (D.C. 2022) ...................................................................... 11

**California Statutes**

Cal. Educ. Code
  § 51225.3(a)(1)(G)(i) ........................................................................... 16

California Civil Code
  § 47 ...................................................................................................... 4, 18, 19

Education Code
  § 220 .................................................................................................... 15, 16

**Other Authorities**

U.S. Constitution, First Amendment .................................................... *passim*

Cal. Code. Civ. Proc. § 425.16(b)(1) .................................................... 19

California Constitution Equal Protection Clause ................................. 15

Fed R. Civ. Proc. 8 ............................................................................... 8

Fed R. Civ. Proc. 12(b)(6) ................................................................... 12, 21

U.S. Constitution, Fourteenth Amendment Equal Protection Clause ..... 15

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

# I.     __INTRODUCTION__

Plaintiffs' Omnibus Opposition ("Opp."), Dkt. No. 129, fails to shield their Second Amended Complaint ("SAC"), Dkt. No. 119, from the dispositive impact of the Motion to Dismiss (Dkt. No. 121) and Special Motion to Strike ("Anti-SLAPP Motion"), Dkt. No. 122, filed by Defendants United Teachers Los Angeles and Cecily Myart-Cruz ("UTLA Defendants").

As is detailed below, nothing in the Opposition detracts from the conclusion that the SAC is an inappropriate attempt to get a federal court to rule on the non-justiciable question of whether anti-Zionism is inherently antisemitic and punish a labor union, its President, and other educators for their protected speech and petitioning activity.  The classroom communications to which Plaintiffs say they object are not the responsibility or within the control of UTLA Defendants, and it remains clear that that none of the challenged conduct of UTLA Defendants—who do not employ the teachers whose classroom presentations Plaintiffs say they want to regulate—is state action or activity otherwise subject to anti-discrimination laws. It also remains clear that Plaintiffs, who are not teaching or being taught the Liberated Ethnic Studies Model Curriculum ("LESMC"), and whose children are not being taught the LESMC, have not suffered a concrete and particularized injury. The classroom communications to which Plaintiffs say they object are not the responsibility or within the control of UTLA Defendants. If there were any viable case here, these would be the wrong plaintiffs and the wrong defendants.

In addition to these glaring problems, the SAC contains numerous other fundamental deficiencies that the Opposition fails to explain away.  What, specifically, have UTLA Defendants done, or are they doing, that is unlawful?  How is that wrongful conduct causing the LESMC to be taught in classrooms?  How could a remedy against UTLA Defendants redress Plaintiffs' alleged injuries without being an impermissible prior restraint on speech and petitioning?   These are questions that Plaintiffs do not—and cannot—answer.  All they can do is try to

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1  muddy the waters because if they were to provide clarity about what the SAC

2  actually alleges, they would have to admit that they are suing UTLA Defendants for

3  their protected speech and petitioning on a matter of public concern, which subjects

4  them to UTLA Defendants' Anti-SLAPP Motion.

5      Plaintiffs have already had two opportunities to amend since seeing UTLA

6  Defendants' arguments in their first Motion to Dismiss, which were essentially the

7  same arguments presented in the Motion to Dismiss currently pending.  Yet

8  Plaintiffs still have not come close to overcoming the insurmountable hurdles to

9  their claims, namely UTLA Defendants' status as private parties and the protected

10  nature of their challenged speech and conduct.  Allowing Plaintiffs a third, futile

11  opportunity to amend their complaint will only serve to further their goal of

12  harassing the Defendants, draining their resources, and chilling speech.   UTLA

13  Defendants therefore respectfully request that this Court dismiss the SAC without

14  leave to amend and grant the Anti-SLAPP Motion.

15  **II.    LEGAL ARGUMENT**

16

17      A.    **Plaintiffs effectively concede that they have no claim against UTLA**

18          **Defendants, private parties who have no control over what teachers**

19          **teach in the classroom.**

20      In their Opposition, Plaintiffs state that the only basis for their claims is the

21  teaching of the LESMC in the classroom and that the only relief they are seeking is

22  a bar on the use of LESMC materials in public school classrooms and publicly

23  funded speech, Opp., p. 1.  They further claim, in flat contradiction to their

24  allegations regarding a conspiracy to conceal LESMC use and their Prayer for

25  Relief, that they are not seeking any limitation on what Defendants say to teachers

26  and that aside from "the publicly funded words that come out of the mouths of

27  LAUSD public school teachers. . . . [n]o other conduct is said to be a violation of

28  any law".  *Compare* Opp., p. 1 *with* SAC ¶¶ 225a, 229, 235, 244; SAC, Prayer ¶ 6.

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1  If Plaintiffs are taken at their word though,  there is no reason for UTLA Defendants

2  to be in this case; their complaint is only against the Los Angeles Unified School

3  District ("District"), which is responsible for and in control of the lessons imparted

4  in District classrooms.

5       UTLA Defendants do not engage in, much less control, classroom speech.  As

6  Plaintiffs themselves allege:

7       [The District] is the entity with formal control over, and responsibility

8       for, the curriculum and teaching materials used by all public schools in

9       Los Angeles, California. LAUSD has ultimate control over and

10      responsibility for the use and public disclosure of any teaching

11      materials in Los Angeles public schools other than those materials

12      whose use is directed by the California State Board of Education.

13  SAC ¶ 63.  UTLA Defendants, on the other hand, do not employ District teachers

14  and have no control, formal or otherwise, over teachers or what is taught in District

15  classrooms except as specifically provided for in their Collective Bargaining

16  Agreement with the District ("CBA").  *See* Exhibit 1, 2019-2022 CBA Article III,

17  3.0 (e)-(f), p. 6-7 (reservation of District's authority to determine curriculum and

18  teaching materials); Exhibit 2, 2022-2025 Tentative Agreement, p. 1, §A

19  (incorporating by reference unaltered terms of the 2019-2022 CBA).[1]  Plaintiffs'

20  allegations that UTLA Defendants somehow skirt or override LAUSD's power and

21  smuggle teaching materials into the classroom through the *advisory* LAUSD-UTLA

22

23  _____

24  [1] The Collective Bargaining Agreement between UTLA and the District, publicly
    available at https://utla.net/app/uploads/2022/07/2019-2022_utla-

25  lausd_collective_bargaining_agreement.pdf (2019-2022 CBA) and

26  https://utla.net/app/uploads/2023/04/UTLA-LAUSD-TA-2022-2025-CBA-Signed-
    4-24-23.docx-1.pdf (2022-2025 Tentative Agreement), was referenced and relied

27  upon in the SAC, and it can be accurately and readily determined from sources
    whose accuracy cannot reasonably be questioned. SAC ¶¶ 34-36.  UTLA

28  Defendants hereby request that this Court take judicial notice of it.

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1  Ethnic Studies Committee is not plausible, and even if it were plausible, it is too
2  vague and conclusory to show that an injunction against UTLA Defendants would
3  have any effect on what teachers teach in the classroom. SAC ¶¶ 33, 38.  *See Blantz*
4  *v. Cal. Dep't of Corr. & Rehab., Div. of Corr. Health Care Servs.*, 727 F.3d 917,
5  926–27 (9th Cir. 2013) (holding that bare allegation that a defendant was in control
6  of the actions at issue in the complaint was both conclusory and, in context,
7  implausible); *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir.
8  2013) ("When faced with two possible explanations, only one of which can be true
9  and only one of which results in liability, plaintiffs cannot offer allegations that are
10  'merely consistent with' their favored explanation but are also consistent with the
11  alternative explanation."); *Barren v. Harrington*, 152 F. 3d 1193, 1194 (9th Cir.
12  1998) ("A plaintiff must allege facts, not simply conclusions, to show that an
13  individual was personally involved in the deprivation of his civil rights.").

14      All UTLA Defendants can do with respect to the issue of ethnic studies in
15  District classrooms is bargain with or lobby the District, or reach out to teachers
16  directly, and these activities are protected by the First Amendment, the *Noerr-*
17  *Pennington* Doctrine, and California Civil Code section 47.

18      **B.    Plaintiffs do not have standing for any of their claims.**
19          **1.    Plaintiffs have not alleged that they themselves are suffering**
20              **a concrete and particularized injury.**

21      Plaintiffs do not attend or will attend a school where the LESMC is taught.
22  They cannot explain in their Opposition how *they*, as parents and teachers, are
23  cognizably injured by the teaching of the LESMC in other classrooms.  They do not
24  allege that they, or any of their children, are or will be in a classroom where the
25  LESMC is taught, or even that they.  Without such allegations, their suit is subject to
26  dismissal for lack of standing.

27      Instead of articulating facts demonstrating actual or imminent harm, Plaintiffs
28  disgorge several overheated paragraphs proclaiming the truism that teaching

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1   children can have effects on those children and on others. Opp., pp. 11-12.  This

2   evades the dispositive point: none of the Plaintiffs nor any of their children are being

3   taught the LESMC or will imminently be taught the LESMC.  Plaintiffs are

4   complaining about alleged harm to *someone else*, which is precisely what the

5   doctrine of standing is meant to exclude.

6        Plaintiffs also point out that certain standing doctrines may be relaxed in

7   some circumstances for First Amendment claims. Opp., pp. 17-18.[2]  But the cases

8   they cite involved pre-enforcement facial challenges to statutes—a situation in

9   which there is nearly always a real, imminent risk of injury via enforcement.  These

10  cases do not represent a departure from the requirement that plaintiffs who have not

11  yet been harmed plead a substantial risk of impending injury.  *See Laird v. Tatum*,

12  408 U.S. 1, 13–144 (1972).

13       As for the parent Plaintiffs, their primary asserted basis for standing is that

14  they are being "forced" to choose between sending their children to school and

15  protecting their children's religious beliefs.  SAC ¶ 31.  This is a misleading sleight-

16  of-hand pleading trick, not a concrete injury: the parents do not allege that their

17  children had to change schools *or* that their children are being taught the LESMC

18  (much less that the UTLA Defendants can be held responsible therefor), only that

19  they had to make a "choice" with no stated consequences whatsoever.  Even if

20  Plaintiffs could allege a concrete self-imposed harm, this would not be sufficient for

21  standing because it would not be in response to a harm that is "certainly

22  impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013).  Here, the

23  harm is not certainly impending.  *See*, *e.g*., *T. K. v. Adobe Sys*., No. 17-CV-04595-

24  LHK, 2018 U.S. Dist. LEXIS 142988, at *13 (N.D. Cal. Aug. 22, 2018) (dismissing

25  prospective relief claims with prejudice because a "possible requirement by a

26

27

28  [2] Plaintiffs must have standing for *each* of their claims, and only one of their claims
    is grounded in the First Amendment.

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

5

1    hypothetical future teacher cannot be said to be certainly impending").

2        Plaintiffs cite *Sabra v. Maricopa County Community College District*, 44

3    F.4th 867 (9th Cir. 2022), for the proposition that the Plaintiffs have suffered

4    injuries by being "forced" to expend resources.  However, they can point to only a

5    single example of expenditure of resources involving one individual Plaintiff who

6    voluntarily chose to seek out information regarding the LESMC.  *Sabra* does not

7    give standing to this individual.  First, the case does not abrogate the rule that a

8    plaintiff cannot manufacture standing through self-infliction of harm; the case

9    requires that the plaintiff "would have suffered some other injury had they not

10   diverted resources to counteracting the problem." *Id.* at 879 (9th Cir. 2022) (cleaned

11   up).  Here, as explained in depth in the Motion to Dismiss, there is no impending

12   injury to any of the Plaintiffs.  Second, *Sabra*, and the line of cases it relies on,

13   concerns organizational plaintiffs with well-defined core missions that are impeded

14   by the actions they are challenging.  It has no application to individual plaintiffs, nor

15   could it without effectively giving any individual standing to challenge any injury to

16   anything or anyone by asserting some abstract, unfalsifiable personal mission

17   related to such injury.

18       Plaintiffs also argue that subjective injuries may in some cases be sufficiently

19   concrete to ground standing.  Observation of conduct or speech, however, even if it

20   is subjectively damaging, is not a *particularized* injury unless there is something

21   that ties the conduct or speech to the plaintiff personally, and not just as a member

22   of a religious or ethnic group.  *See Allen v. Wright*, 468 U.S. 737, 755 (1984)

23   (stigmatic injury may be the basis for Article III standing only for "those persons

24   who are personally denied equal treatment by the challenged discriminatory

25   conduct"); *Valley Forge Christian Coll. v. Americans United for Separation of*

26   *Church & State, Inc.*, 454 U.S. 464, 485–86 (1982)  "[P]sychological consequence

27   presumably produced by observation of conduct with which one disagrees. . . .  is

28   not an injury sufficient to confer standing under Art. III.).  Here, there is no

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1    disparate treatment of Plaintiffs personally alleged, nor is there any speech or other

2    activity being directed at them or their children; they are, at best, impermissibly

3    attempting to raise the claims of others not before the Court.

4        **2.**    **None of the alleged injuries from teaching the LESMC are**

5            **fairly traceable to UTLA Defendants.**

6          Even if it Plaintiffs had properly alleged that they have been or imminently

7    will be injured by the LESMC being taught, this injury would not be fairly traceable

8    to UTLA Defendants.  Because Plaintiffs have obfuscated the nature of their claims,

9    it is important to deconstruct precisely what their causation theory is.  Given the

10   concessions in the Opposition, the following are the only activities of UTLA

11   Defendants that Plaintiffs allege have led to the LESMC being taught in LAUSD

12   classrooms, which they have now conceded is the only basis for liability:

13       1.    UTLA appoints members to the joint LAUSD-UTLA advisory

14   Committee that provides input on ethnic studies curriculum and teaching materials.

15   Defendant Myart-Cruz, UTLA's President, is alleged to have served on the Board at

16   some point.

17       2.    Through unspecified means, at unspecified times, UTLA Defendants

18   are using the unspecified powers that participation in this Committee grants them to

19   include unspecified challenged LESMC materials in an unspecified number of

20   unspecified LAUSD classes taught by unspecified teachers.[3]

21   ———————————————

22   [3] It is impossible to glean from the SAC what, if anything, the Committee actually
23   did, let alone how UTLA Defendants were involved.  There is a conclusory
     allegation that the *advisory* Committee "exercises public power over the content of
24   the Ethnic Studies curriculum and teaching materials," but there is no specific
     allegation that the Committee has ever actually exercised such power.  SAC ¶ 33.
25   Indeed, other SAC allegations suggest whatever UTLA Defendants may have done,
26   it was outside of official committee channels.  SAC ¶ 229 (alleging Defendants
     conspired to introduce LESMC material while *concealing* it from LAUSD); SAC ¶
27   49 (implying UTLA's role in the Committee somehow cloaks UTLA Defendants
28   with governmental authority in all of their activities).

Bush Gottlieb
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

3.    UTLA Defendants participated in a conspiracy with the other

Defendants and unspecified LAUSD teachers, under unspecified circumstances, at

an unspecified time, to introduce LESMC materials into the LAUSD and to conceal

their use, including from LAUSD itself.

4.    This conspiracy involved all Defendants counseling unspecified

LAUSD teachers, at an unspecified time, in an unspecified manner, to conceal their

actions in teaching the LESMC, though none of the specific allegations regarding

advising teachers involve UTLA Defendants.[4]

In other words, "UTLA Defendants did something that somehow caused some

teachers to teach the LESMC."  This is nothing more than a bare, conclusory

allegation of causal connection and responsibility, which provides UTLA

Defendants with no understanding of the nature of the claims against it, or how

Plaintiffs overcome the protected character of any communications or advocacy of

particular curricular content.  For this reason, the SAC fails to meet the minimum

Rule 8 pleading standards and must be dismissed.  *Daniel v. Nat'l Park Serv.*, 891

F.3d 762, 766-67 (9th Cir. 2018) (holding that for purposes of the fair traceability

prong of standing, bare allegations of causation are insufficient, and a plaintiff must

allege specific factual allegations plausibly tying defendant's actions to the injury);

*Blantz v. Cal. Dep't of Corr. & Rehab., Div. of Corr. Health Care Servs.*, 727 F.3d

917, 926–27 (9th Cir. 2013) (holding that bare allegation that one defendant directed

the other defendants to take the actions at issue in the complaint was a conclusion,

not entitled to a presumption of truth); *Ivey v. Bd. of Regents of Univ. of Alaska*, 673

---

[4] The SAC contains several paragraphs with quotations from LESMC-related
materials that Plaintiffs claim amount to advice to teachers to teach the LESMC
secretly. Opp., pp. 5-6.  However, these portions of the SAC all concern statements
that Plaintiffs do not (and cannot) attribute to UTLA Defendants.  The SAC contains
no specific facts regarding UTLA Defendants advising teachers to teach the
LESMC, let alone teach it secretly.

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

F.2d 266, 268 (9th Cir. 1982).

Moreover, looking at the SAC as a whole, it is not plausible that UTLA Defendants' unspecified activities that allegedly led to teachers using the LESMC in their classrooms were anything other than protected speech and petitioning. *See Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009) (holding that an inference of liability is not plausible when the allegations in a complaint give rise to an "obvious alternative explanation" of legality).

### 3.    Any redress would require an impermissible prior restraint on speech.

Most importantly, the redressability element of standing is not met here because UTLA Defendants' challenged speech and conduct is protected by the First Amendment. As argued in the Motion to Dismiss, none of UTLA Defendants' alleged activities amount to unprotected government speech. And even if UTLA Defendants had been, at times, government speakers, their activities would not be redressable through a prospective remedy. Despite Plaintiffs' various confusing disclaimers and concessions, the fact remains that any remedy enjoining UTLA Defendants would be blatantly overbroad and thus unconstitutional. The proposed remedy "prohibiting all Defendants from using the elements of the LESMC at issue in this case in their public school classrooms or in any training sessions funded by public funds, or for which salary points are awarded," SAC, Prayer ¶ 6, sweeps far beyond unprotected government speech into private speech that is obviously protected; public funding does not remove the protections of the First Amendment. *Keyishian v. Bd. of Regents of Univ. of State of NY*, 385 U.S. 589, 604 (1967). The court is not bound to the remedies requested by Plaintiffs, but even the most thoughtfully constructed remedy imposed by a court would inevitably be an overbroad prior restraint on speech because of the impossibility of determining, in advance, what speech content is protected and what is not. *Oakley v. McWilliams*, 879 F. Supp. 2d 1087, 1090 (C.D. Cal. 2012); *Van Dyke v. Regents of Univ. of Cal.*,

Bush Gottlieb
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

9
UTLA & MYART-CRUZ'S REPLY ISO MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE

815 F. Supp. 1341, 1346 (C.D. Cal. 1993).  Redressability here cannot be corrected by amendment and requires dismissal with prejudice.

**C.    <u>If Plaintiffs' unsupportable interpretation of the law were accepted, this case would be non-justiciable as a political question and subject to the religious abstention doctrine.</u>**

Plaintiffs are proceeding on a theory of liability that would, if it were accepted, be completely unworkable and lead to arbitrary and overreaching judicial pronouncements regarding non-justiciable political and religious questions.  To avoid these issues, courts regularly dismiss cases seeking judicial determinations that certain words or ideas, regardless of the specific context in which they are expressed, are inherently discriminatory or burdensome on the practice of religion. *See Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1032 (9th Cir. 1998); *Newman v. Point Park Univ.*, No. 2:20-cv-00204, 2022 U.S. Dist. LEXIS 60722, at *80 n.16 (W.D. Pa. Mar. 31, 2022) ("Such disagreements on a contentious geopolitical conflict do not in and of themselves form the basis of a hostile work environment claim . . . . If such were the case, then as a practical consequence, the fair employment practice laws invoked by Plaintiff would serve as parking brake on those academic and public debates about those highly contentious topics and would put the thumb of those fair employment practice laws on the First Amendment scale, tipping it irrevocably in favor of Plaintiff's point of view on those same topics."); *Cal. Parents v. Torlakson*, 267 F. Supp. 3d 1218, 1225-27 (N.D. Cal. 2017).

This Court should dismiss for that reason.  Plaintiffs' theory of the case is that exposure to a curriculum with materials that are allegedly anti-Zionist is, ipso facto, discrimination against Jewish people and an impermissible burden on their free exercise of religion.  Opp., p. 30.  If a court were to accept this theory, it would in essence be outlawing a legitimate and insoluble political and religious debate in the second largest school district in the nation.

Plaintiffs argue that their claims are justiciable because courts regularly

Bush Gottlieb
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1  determine whether beliefs are religious in nature and whether they are sincerely held

2  for purposes of the Free Exercise clause.  UTLA Defendants do not contest that

3  Zionism may be a religious belief sincerely held by an individual, and that this is

4  something a court may, in an appropriate case, determine.  But Plaintiffs are asking

5  the Court for something much more sweeping: to determine that, as a general

6  matter, criticism of Israel is tantamount to criticism of Judaism or the Jewish people

7  as such.  For example, Plaintiffs make the following argument:

8  > The SAC pleads at length and in detail that Defendants focus

9  > obsessively on Israel and Zionism, announcing their belief that "we

10 > have to always be confronting" this Jewish belief; that they intend to

11 > drive public speech in support of the Jewish commitment to Zion out of

12 > the public square; that they denounce the existence of exactly one

13 > country in the world – the Jewish state – while leaving uncriticized

14 > such nations as North Korea or even countries where slavery is

15 > officially legal.

16 Opp., p. 30.  This is asking the court to determine that Zionism is inherently a

17 Jewish belief and in effect answer a religious doctrinal questions that rabbis,

18 scholars, and congregations have debated for centuries, without resolution.  This

19 court should decline Plaintiffs' invitation to answer this question.  *See*, *e.g.*, *Hyun*

20 *Jin Moon v. Family Fed'n for World Peace & Unification*, 281 A.3d 46, 51 (D.C.

21 2022).

22 ### D.    <u>Plaintiffs' vague and conclusory allegations of state action are</u>

23 <u>insufficient to state a claim for relief under § 1983.</u>

24 UTLA Defendants extensively argued in their Motion to Dismiss that the

25 SAC is devoid of specific factual allegations supporting Plaintiffs' conclusory

26 allegations of state action and proximate causation, and thus does not state a claim

27 under § 1983.  Instead of directly confronting the determinative caselaw cited in

28 UTLA Defendants' Motion to Dismiss, Plaintiffs make several frivolous arguments

Bush Gottlieb
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1    that are easily disposed of.

2        Plaintiffs argue that state action is a question of fact that sometimes lends

3    itself to a subtle, totality-of-the-circumstances-style analysis. Opp., p. 25.  This may

4    be true—*if* the plaintiff can plead the bare minimum necessary to survive a motion

5    to dismiss, which these Plaintiffs have not. The potentially fact-intensive inquiry

6    must start with Plaintiffs' pleading facts to support their desired conclusion that a

7    private actor has taken on the mantle of the state, and Plaintiffs have utterly failed to

8    do so in this case.  The Ninth Circuit has repeatedly made clear that conclusory

9    allegations of state action, including conclusory allegations of conspiracy or other

10   joint action, cannot save a complaint from dismissal under Rule 12(b)(6).  *See*, *e.g.*,

11   *Simmons v. Sacramento Cnty. Superior Ct.*, 318 F.3d 1156, 1161 (9th Cir. 2003);

12   *Johnson v. Knowles*, 113 F.3d 1114, 1117 (9th Cir. 1997); *Schucker v. Rockwood*,

13   846 F.2d 1202, 1205 (9th Cir. 1988); *Gibson v. U.S.*, 781 F.2d 1334, 1343 (9th Cir.

14   1986); *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999)

15   (explaining that courts "start with the presumption that private conduct does not

16   constitute governmental action."

17       To allege conspiracy in a non-conclusory manner, "the complaint must

18   answer the basic questions: who, did what, to whom (or with whom), where, and

19   when?" *United Bhd. of Carpenters & Joiners v. Bldg. & Constr. Trades Dep't*, 770

20   F.3d 834, 842-43 (9th Cir. 2014); *accord Iodice v. Archcare at Terence Cardinal*

21   *Cooke Health Care Ctr.*, 2022 U.S. Dist. LEXIS 162605 (S.D.N.Y. Sept. 8, 2022)

22   (collecting cases dismissing union-employer conspiracy claims that provided no

23   more than bare  allegations).  Plaintiffs cannot answer these questions—the closest

24   they get is their vague allegation that all non-District Defendants counseled teachers

25   who were teaching the LESMC to conceal their activities, but merely encouraging a

26   public official to do something that they then do does not make one a conspirator.

27   *E.g.*, *Radcliffe v. Rainbow Const. Co.*, 254 F.3d 772, 783-784 (9th Cir. 2001).

28       Plaintiffs argue that UTLA Defendants' participation in the advisory LAUSD-

Bush Gottlieb
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1    UTLA Ethnic Studies Committee somehow makes them state actors.  But beyond

2    the vague and conclusory statement that UTLA Defendants "have used [the power

3    of the Committee] to include [the challenged materials] in LAUSD classes," SAC ¶

4    33, the Plaintiffs never actually specify what the Committee did and who on the

5    Committee did it.  Additionally, it is clear that the role of the UTLA appointees in

6    this Committee was to represent UTLA and the District's teachers, not the District.

7    Any other interpretation of the SAC's allegations is implausible.

8         Plaintiffs also aver that while their allegation of conspiracy might lack detail,

9    they have provided facts to the extent they can know them at this point, and that this

10   should somehow rescue the SAC from dismissal. Opp., pp. 26, 29.  This argument

11   has no merit—it is now well established that a plaintiff's lack of information that

12   might be obtained through discovery does not abrogate or weaken the

13   *Twombly/Iqbal* pleading standard.  *See Whitaker v. Tesla Motors, Inc.*, 985 F.3d

14   1173, 1177 (9th Cir. 2021); *Somers v. Apple, Inc.*, 729 F.3d 953, 966 (9th Cir.

15   2013).

16        Finally, Plaintiffs argue that they have properly alleged state action because

17   determination of curriculum in the public schools is a public function.  But they

18   never actually allege that the District delegated this function to UTLA Defendants,

19   only that UTLA Defendants, through some unknown but apparently unofficial

20   means, snuck the LESMC into District classrooms.  The idea that UTLA took

21   control of the District's authority to determine what teachers teach is absurd, and it

22   is not what the Plaintiffs alleged.

23   **E.    Plaintiffs have not alleged any burden on their Free Exercise**

24   **rights, let alone a substantial burden.**

25        As UTLA Defendants explained in their Motion to Dismiss, Plaintiffs' fail to

26   allege any burden on their free exercise rights, as mere exposure to religiously

27   offensive ideas is not a cognizable burden.  The Opposition's arguments do not

28   weaken this conclusion.

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

Plaintiffs argue that the question of substantial burden is a question of fact, citing *World Outreach Conference Center v. City of Chicago*, 591 F.3d 531, 539 (7th Cir. 2009). Here though, the question is not whether the burden is substantial; Plaintiffs allege no burden *whatsoever,* beyond Plaintiffs' subjective offense.

Such subjective offense is, as a matter of law, not a substantial burden. *See Am. Family Ass'n, Inc. v. City and Cnty. of S.F.*, 277 F.3d 1114, 1124 (9th Cir. 2002) ("Alleging a subjective chilling effect on free exercise rights is not sufficient to constitute a substantial burden."); *Cal. Parents v. Torlakson*, 267 F. Supp. 3d at 1225-27 (dismissing similar claim for failure to state a claim). Plaintiffs suggest that, in fact, a subjective chilling effect can be a burden, quoting two cases out of context: *Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*, 138 S. Ct. 1719 (2018) and *Church of Lukumi Babalu Aye v. Hialeah*, 508 U.S. 520 (1993). But these cases do not stand for the proposition that government speech hostile to religion is a substantial burden. In both cases, there was a substantial *concrete* burden placed on the plaintiffs' actions or conduct: in *Masterpiece Cakeshop*, 138 S. Ct. at 1731, the plaintiff was ordered by a government commission to change their business practices and in C*hurch of Lukumi Babalu Aye*, the plaintiffs were prohibited from performing animal sacrifices according to their religion, 508 U.S. at 533.

Plaintiffs also quote *Jones v Williams*, for the following proposition about substantial burden:

> Government action places a substantial burden on an individual's right to free exercise of religion when it tends to coerce the individual to forego her sincerely held religious beliefs or to engage in conduct that violates those beliefs.

791 F.3d 1023, 1031-32 (9th Cir. 2015) (cleaned up). There is no "coercion" of any kind alleged in the SAC. Even if ordinary classroom teaching could be considered "coercion," there is no allegation of any such coercion, let alone an allegation that

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1    Plaintiffs or their children specifically were coerced.

2    **F.    Statements critical of Israel and guilt-by-association are not**

3    **sufficient to show discriminatory intent.**

4    Plaintiffs argue that they sufficiently plead intent for purposes of the Equal

5    Protection Clauses of the U.S. Constitution and the California Constitution.  But

6    their argument is still essentially that strong criticism of Israel and presentation of a

7    Palestinian perspective is criticism of Zionism, and criticism of Zionism is an attack

8    on Judaism and the Jewish people as such. This is a notion this Court should not

9    accept.  As explained in the Motion to Dismiss, an alleged hostility to the State of

10   Israel and its status as a Jewish state, or association with others who might hold

11   these views, is insufficient to show discriminatory intent. *See Mandel v. Bd. of Trs.*

12   *of the Cal. State Univ.*, 2018 U.S. Dist. LEXIS 39345, at *65-66 (N.D. Cal. Mar. 9,

13   2018).  Further, the fact that a curriculum includes a discussion of one thing and not

14   another is likewise not sufficient to show intent. *Grimes v. Sobol*, 832 F. Supp. 704,

15   708 (S.D.N.Y 1993).  Nothing in the SAC discloses an intent by Defendants to treat

16   Jewish students, teachers, or parents differently because they are Jewish.  All that is

17   alleged is hostility to Israel.

18   **G.    Plaintiffs cannot explain how Title VI or Education Code § 220**

19   **apply to UTLA Defendants, who do not receive public funds.**

20   Two of Plaintiffs' causes of action apply only to particular types of entities

21   receiving particular types of public funds.  *See* Title VI; *Cal. Educ. Code* § 220.

22   Plaintiffs do not allege that UTLA Defendants even receive public funds, let alone

23   that the other threshold requirements of these laws are satisfied, and their

24   Opposition does not explain how either of these laws could possibly apply.  It is

25   clear that these claims must be dismissed with prejudice because they cannot be

26   cured by amendment.

27

28

Bᴜsʜ Gᴏᴛᴛʟɪᴇʙ
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

### H.    UTLA Defendants are not subject to the other Education Code provisions relied on by Plaintiffs, and Plaintiffs have waived arguments to the contrary.

Plaintiffs' Opposition is devoid of substantive arguments supporting their other state law claims, and in many cases they make no argument at all, effectively conceding the issues.[5]

The most obvious problem with the SAC's Education Code claims is that none of the statutes relied on in the SAC (other than section 220, discussed above) put any restrictions on the conduct of a private actor or otherwise allow for an action against a private actor, and UTLA Defendants are both private actors.  All of these laws by their terms apply to either teachers, local education agencies, or the state Board of Education—not unions and their officers.  Plaintiffs do not explain how any of these provisions can apply to UTLA Defendants, other than to say that they are "acting as *de facto **public** parties*." Opp., p. 32.  Whatever a "de facto public party" is, UTLA Defendants are not (active) teachers, local education agencies, or the state Board of Education, and therefore have no duties under these laws.

Plaintiffs did not oppose UTLA Defendants' other arguments regarding these state law claims.  As discussed in the Motion to Dismiss, the ethnic studies statute's function is to create an ethnic studies graduation requirement (starting with the graduating class of 2029-2030) and a mandate that school districts offer a compliant ethnic studies course (by the 2025-2026 school year).  Cal. Educ. Code § 51225.3(a)(1)(G)(i).  This statute does not, by its terms, prevent a school district from offering or requiring ethnic studies courses that do not qualify for the state graduation requirement or course mandate.  *Accord id.* § 60210(a) ("Notwithstanding any other law, a local educational agency may use instructional

---

[5]   Aside from their references to A.B. 101, the ethnic studies mandate law, Plaintiffs do not cite a single state statute, regulation, or court case in their Opposition.

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

materials that are aligned with [specified academic content standards] including instructional materials that have not been adopted by the state board pursuant to Section 60200.").  Plaintiffs did not respond to, let alone refute, this argument.

UTLA Defendants also argued in their Motion to Dismiss that none of the laws cited by Plaintiffs would require public disclosure of the teaching materials at issue or require District or state approval of the teaching materials at issue; in fact, local school boards must *disapprove* of materials in order to make their use without official authorization unlawful.  *Id.* § 51510.  Again, Plaintiffs did not respond to or refute this argument.

Plaintiffs incorrectly state that none of the Defendants argue that the LESMC complies with California law. Opp., pp. 8.  In fact, Plaintiffs UTLA Defendants argued that the challenged content complies with state law as a matter of law, citing a case and a state statute.  Plaintiffs did not respond to or refute this argument.

Because Plaintiffs failed to respond to or overcome these dispositive arguments, even after the Reply in support of UTLA Defendants' previous Motion to Dismiss pointed out this same deficiency in the previous Opposition, they should be deemed to have waived or abandoned their state law claims, and the Court should dismissed these claims with prejudice.  *See*, *e.g.*, *Rozier v. Dep't of Homeland Sec. Fed. Protective Serv.*, No. 2:21-CV-07232-SB-AFM, 2022 WL 2199938, at *3 (C.D. Cal. Mar. 7, 2022).

## I.    <u>UTLA Defendants' challenged actions are political speech and petitioning activity protected by the First Amendment.</u>

All of UTLA Defendants' challenged actions are political advocacy and petitioning activities that fall squarely within the protections of the First Amendment.  Plaintiffs argue that UTLA Defendants' (largely unspecified) role in the joint advisory committee somehow makes them government speakers, but this is absurd.  Nowhere is it alleged that UTLA Defendants were acting on behalf of the District when they appointed members to the Committee (or in Myart-Cruz's case,

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1   served on it), nor would such an allegation be plausible.  UTLA's role, and reason

2   for having the ability to appoint people to the Committee, is to represent teachers

3   with views consonant with the Union's perspective, not the District's.

4        Plaintiffs also argue UTLA Defendants' speech is unprotected under

5   *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969) because it is an effective incitement

6   to imminent lawlessness. Opp., p. 33.  Of course, nothing UTLA Defendants

7   allegedly encouraged is illegal, as UTLA Defendants' briefing makes clear.  But

8   even setting that aside, no incitement to *imminent* lawlessness is alleged in the SAC,

9   and "advocacy of illegal action at some indefinite future time" is not actionable."

10  *Hess v. Indiana*, 414 U.S. 105, 108–09 (1973).  As the Ninth Circuit recognized in

11  *White v. Lee*, a case holding that speech in opposition to conversion of a local motel

12  into multi-family housing was protected under the First Amendment despite

13  promoting discrimination, "[t]he mere fact that citizens urge their government to

14  adopt measures that may be unlawful does not deprive the speech involved of its

15  First Amendment protection."  227 F.3d 1214, 1227-28.  Here too, any alleged

16  speech by UTLA Defendants regarding curriculum recommendations, if they could

17  have been alleged as unlawful, would not deprive that speech of its First

18  Amendment protection.

19       **J.    Plaintiffs fail to respond to UTLA Defendant's defenses under Civil**

20            **Code § 47 and the *Noerr-Pennington* Doctrine.**

21       UTLA Defendants argued in their Motion to Dismiss and Anti-SLAPP

22  Motion that Plaintiffs' claims, as alleged, are barred by California Civil Code

23  section 47 and the *Noerr-Pennington* Doctrine as a matter of law because they are

24  based on activity in the nature of lobbying or petitioning. Plaintiffs did not oppose

25  the section 47 argument at all, and had no substantive response to the *Noerr-*

26  *Pennington* argument.  Accordingly they should be deemed to have abandoned the

27  issues, requiring dismissal of the SAC.  *Rozier v. Dep't of Homeland Sec. Fed.*

28  *Protective Serv.*, 2022 WL 2199938, at *3.  Plaintiffs' argument that UTLA

1    Defendants are state actors or government speakers is not only flawed as a matter of

2    pleading rules; it also does not implicitly function as a response to these defenses,

3    and it is certainly not an effective response. California Civil Code section 47 applies

4    to state actors, as does the *Noerr-Pennington* Doctrine, *Manistee Town Ctr.* v. *City*

5    *of Glendale*, 227 F.3d 1090, 1093 (9th Cir. 2000).

6

7    **K.    The challenged conduct and speech of Defendants is protected**

8    **under the first prong of the Anti-SLAPP statute.**

9    UTLA Defendants argued in their Anti-SLAPP Motion that all of the UTLA

10    activities alleged in the SAC were "in furtherance of [their] right of petition or free

11    speech", Cal. Code. Civ. Proc. § 425.16(b)(1), and thus protected under the first

12    prong of the Anti-SLAPP test.  Plaintiffs argue that UTLA Defendants misconstrued

13    the basis of their claims, and that the activity their claims are actually based on is

14    unprotected by the Anti-SLAPP statute.  Opp., pp. 32-33.  This argument fails at

15    both stages.

16    Plaintiffs claim that UTLA Defendants' Anti-SLAPP Motion was primarily

17    directed at allegations that are not in fact the basis of their claims, which they assert

18    only "arise from speech in the classroom."  Opp., p. 33.  While UTLA Defendants

19    welcome the concessions made in the Opposition, it is clear that these are in fact

20    concessions and not accurate summaries of what is actually alleged in the SAC,

21    which is extremely broad and impenetrably vague.  Plaintiffs' Prayer for Relief is

22    not limited to classroom teaching, but rather seeks an injunction against UTLA

23    Defendants limiting their ability to use LESMC materials in professional

24    development courses.  SAC, Prayer ¶ 6.  Further, the SAC implies that the LESMC

25    is inherently discriminatory, *e.g.*, SAC ¶¶ 228, 233, 239, and that exposure to it even

26    outside the classroom is injurious, SAC ¶ 30. It even includes a statement that "[t]he

27    principles Defendants espouse as alleged herein are not protected ideas, beliefs, or

28    expressions[]."), SAC ¶ 225(c).  While Plaintiffs assert that the SAC does not

801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

BUSH GOTTLIEB

924715v1  11250-32004                                    19                    Case No. 2:22-cv-03243-FMO-PVC
UTLA & MYART-CRUZ'S REPLY ISO MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE

1   challenge "non-government funded speech," SAC ¶ 22, the SAC implies that all of

2   UTLA Defendants' speech and conduct may be publicly funded because of their

3   association with the advisory Committee.  SAC ¶¶ 49.  It follows that all of UTLA

4   Defendants' alleged advocacy activities are potentially the basis for Plaintiffs'

5   claims.[6]

6          Even if Plaintiffs were correct that the claims in the SAC are based only on

7   UTLA's actions in participating on the advisory Committee and unspecified

8   publicly funded speech, this would not matter because these activities are all

9   protected under the first prong of the anti-SLAPP statute.  Plaintiffs suggest that

10  these activities are not covered by the anti-SLAPP statute because they involve what

11  they claim (incorrectly) is unprotected speech, including government speech.  But

12  the claim that UTLA Defendants' speech was unprotected has no bearing on the

13  protected activities prong of the anti-SLAPP statute.  Whether or not speech is

14  government speech is entirely irrelevant to the protected activity prong of section

15  425.16.  *See Vargas v. City of Salinas*, 46 Cal. 4th 1, 17 (2009) (explaining "the

16  statutory remedy afforded by section 425.16 extends to statements and writings of

17  governmental entities and public officials on matters of public interest and concern

18  that would fall within the scope of the statute if such statements were made by a

19  private individual or entity").  Likewise, a defendant bringing an anti-SLAPP

20  motion only needs to show the existence of a legitimate issue as to the constitutional

21  protection of the speech or conduct at issue, so speech that is purportedly

22  unprotected due to illegality must be shown by the plaintiffs to be illegal as a matter

23  of law for them to succeed on prong one.  *Oasis W. Realty, LLC v. Goldman*, 51 Cal.

24  4th 811, 828 (2011); *Taus v. Loftus*, 40 Cal. 4th 683, 706–707 (2007).  Here, UTLA

25

26  _____

27  [6] As explained in the Anti-SLAPP Motion, Plaintiffs cannot avoid liability through
    these kinds of disclaimers.  *Finato v. Keith A. Fink & Assocs.*, 68 Cal. App. 5th 136,
28  151 (2021).  Plaintiffs have not responded to this argument.

Bush Gottlieb
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1   Defendants have clearly shown, based on Plaintiffs' own allegations, that there is a

2   legitimate issue as to whether their speech and conduct is protected.

3   **III.   <u>CONCLUSION</u>**

4         The SAC suffers from numerous fatal defects that Plaintiffs have failed to

5   explain away, despite having had two opportunities to amend following the filing of

6   UTLA Defendants' first Motion to Dismiss.  These defects cut to the heart of

7   Plaintiffs' case and cannot be cured by amendment.  Plaintiffs also fail to provide

8   any valid reason as to how they can succeed on the first, protected activity prong of

9   the Anti-SLAPP analysis, and they are unable to succeed on the second prong of the

10  Anti-SLAPP analysis for the same reasons their state law claims are subject to

11  dismissal.  ULA Defendants therefore respectfully request that the Court grant their

12  Anti-SLAPP Motion and their Motion to Dismiss, without leave to amend. *Mogan v.*

13  *Hendricks*, 2023 U.S. Dist. LEXIS 81471 (C.D. Cal. May 9, 2023).

14  DATED:  November 30, 2022         IRA L. GOTTLIEB

15                                   LISA C. DEMIDOVICH
                                     ADAM KORNETSKY
16                                   BUSH GOTTLIEB, A Law Corporation

17

18                                   By: _____

19
                                         ADAM KORNETSKY
20                                   Attorneys for United Teachers Los Angeles and
                                     Cecily Myart-Cruz
21

22

23

24

25

26

27

28

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants United Teachers Los Angeles and Cecily Myart-Cruz, certifies that this Reply contains 6,953 words, which complies with the word limit of L.R. 11-6.1.

DATED:  November 30, 2022

IRA L. GOTTLIEB
LISA C. DEMIDOVICH
ADAM KORNETSKY
BUSH GOTTLIEB, A Law Corporation

By: _____

ADAM KORNETSKY
Attorneys for United Teachers Los Angeles and Cecily Myart-Cruz

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260