MARK ALLEN KLEIMAN (SBN 115919)
mark@krlaw.us
KLEIMAN / RAJARAM
12121 Wilshire Boulevard Suite 810
Los Angeles, California 90025
Telephone: 310-392-5455
Facsimile: 310-306-8491

Counsel for Defendants Montaño, Cardona & LESMCC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| Concerned Jewish Parents and Teachers of Los Angeles, John and Jane Does 1-5,<br><br>Plaintiffs,<br><br>vs.<br><br>Liberated Ethnic Studies Model Curriculum Consortium, et al.,<br><br>Defendants. | Case No. 2:22-cv-03243-FMO (PVCx)<br><br>**CONSORTIUM DEFENDANTS' MOTION FOR ATTORNEYS' FEES**<br><br>**[Declarations of Mark Allen Kleiman, Stephen F. Rohde and Matthew Strugar In Support Thereof, Filed Concurrently Herewith]**<br><br>Hearing Date: February 6, 2025<br>Hearing Time: 10:00 a.m.<br><br>Location: First Street Courthouse<br>350 W. 1st Street<br>Courtroom 6D |

**PLEASE TAKE NOTICE THAT** on February 6, 2025, at 10:00 a.m., or as soon thereafter as counsel may be hearing in the courtroom of the Honorable Fernando M. Olguin, located in Courtroom 6D of the United States Courthouse, 350 West 1st Street, 10th Floor, Defendants Liberated Ethnic Studies Model Curriculum Consortium, Dr. Theresa Montano, and Guadalupe Cardona (collectively, "Consortium Defendants") will and do bring a Motion for Attorneys' Fees.

The motion is made upon the following grounds that this Court has granted the moving Defendants' Special Motion to Strike (Dkt. No. 125), based on Cal. Code. Civ. Proc. §425.16.

The motion is made following a conference with Plaintiffs' counsel pursuant to L.R. 7-3.

Dated:  December 30, 2024        By:    /s/ Mark Kleiman
                                        Mark Kleiman (SBN 115919)
                                        Counsel for Consortium Defendants
                                        mark@krlaw.us
                                        KLEIMAN / RAJARAM
                                        12121 Wilshire Blvd., Ste. 810
                                        Los Angeles, CA  90025
                                        Tel: 310-392-5455
                                        Fax: 310-306-8491

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .......... 5

MEMORANDUM OF POINTS AND AUTHORITIES .......... 8

1. Introduction and Summary of Argument .......... 8

2. Pertinent Procedural History .......... 8

3. Application of California's Anti-SLAPP Law in Federal Court .......... 10

4. Standards and Methods of Fee Calculations .......... 11

5. How to Address Fee-Shifting and Non-Fee Shifting Claims .......... 12
.

A. The Confusing Topography of Plaintiffs' Claims Should Not Defeat the Principle of Full Compensation for the Fee-Shifting Claims .......... 13

B. The Standing Analysis Affects Fee and Non-Fee Claims Equally .......... 13

C. The First Amendment Analysis Affects Fee and Non-Fee Claims Equally .......... 14

6. Some Overlap or Duplication of Effort is Unavoidable Where Different Defendants Are Sued Under the Same Facts and Theories .......... 14

7. Time Spent on This Fee Application is Compensable .......... 15

8. We Request a Reasonable Rate of $950 per Hour .......... 15

9. An Enhanced Lodestar is Merited .......... 16

A. Excellent Results With Broad Significance Merit an Enhancement .......... 16

B. Enhancement is Merited Because of the Contingent Fee .................... 17

C. Accepting an Undesirable Case Merits Enhancement ........................ 17

10. CONCLUSION ........................................................................ 18

4

CONSORTIUM DEFENDANTS' MOTION FOR ATTORNEYS' FEES

# TABLE OF AUTHORITIES

**Page**

Blum v. Stenson,
465 U.S. 886 (1984)........................................................................ 15

Camacho v. Bridgeport Fin., Inc.,
523 F.3d 973 (9th Cir. 2008)............................................................ 18

Chabner v. United of Omaha Life Ins. Co,
No. C-95-0447 MHP, 1999 US Dist. Lexis 16552.................................... 16

Chalmers v. City of Los Angeles,
796 F.2d 1205 (9th Cir. 1986)............................................................ 15

City of Burlington v. Dague,
505 U.S. 557 (1992)........................................................................ 17

Comm'r. INS v. Jean,
496 U.S. 154 (1990)........................................................................ 15

Cruz v. Alhambra Sch. Dist.,
601 F.Supp.2d 1183 (C.D. Cal. 2009) ................................................ 11

Graham v. DaimlerChrysler Corp.,
(2004) 34 Cal. 4th 553 .................................................................... 17

Guam Soc'y of Obstetricians & Gynecologists v. Ada,
100 F.3d 691 (9th Cir. 1996)............................................................ 18

Hallock v. Healey, No. CV 20-02726-CJC(MAAx),
2020 U.S. Dist. LEXIS 198700, 2020 WL 6255384
(C.D. Cal. Sep. 24, 2020) ................................................................ 11

Hensley v. Eckerhart,
461 U.S. 424 (1983)........................................................................ 11

Hilton v. Hallmark Cards,
599 F.3d 894 (9th Cir. 2010)........................................................................ 17

Irvine Unified Sch. Dist. V. K.G.,
853 F.3d 1087 (9th Cir. 2017)................................................................ 11,16

Johnson v. Univ. Coll. of Univ. of Ala.,
706 F.2d 1205 (11th Cir. 1983)............................................................. 14,15

Kiewit Power Constructors Co. v. City of L.A.,
No. 2:16-cv-02590-AB (GJSx), 2018 U.S. Dist. LEXIS 224038,
2017 WL 3478491, (C.D. Cal. Sep. 27, 2018) ........................................... 12

Love v. Associated Newspapers, Ltd.,
611 F.3d 601 (9th Cir. 2010)........................................................................ 12

MacDonald v. Ford Motor Co.,
No. 13-cv-02988-JST,, 2016 U.S. Dist. LEXIS 70809,
(N.D. Cal. May 31, 2016)........................................................................ 11,16

Moreno v. City of Sacramento,
534 F.3d 1106 (9th Cir. 2008)...................................................................... 11

Pierce v. County of Orange,
905 F.Supp.2d 1017, 1040 (CD Cal. 2012) ................................................ 16

Ryan v. Editions Ltd. West, Inc.,
786 F.3d 754. (9th Cir. 2015)....................................................................... 12

Thoms v. Fry's Elecs., Inc.
400 F.3d 1206 (9th Cir. 2005)...................................................................... 11

United States ex rel Newsham v. Lockheed Missiles & Space Co.,
190 F.3d 963 (9th Cir. 1999)................................................................ 10,11

Vasquez v. Rackauckas, No. SACV09-1090 VBF(RNBx),
2011 U.S. Dist. LEXIS 83696, *8-9, 2011 WL 3320482
(C.D. Cal. July 28, 2011)............................................................................. 16

Vortex Marine Constr. v. Grimm, 878 F.3d 709 (9th Cir. 2017)........ 15

**STATUTES**

42 U.S.C. §1983........ 13

Cal.Code. Civ. Proc. § 425.16(c)(1)........ 11

Cal. Educ. Code § 220........ 13

Cal. Educ. Code §51500........ 13

Cal. Educ. Code §51501........ 13

**MISCELLANEOUS**

Cal. Const. Art. I, § 7........ 13

Fed.R.Civ.Proc. 26(f)........ 9

Title VI of the 1964 Civil Rights Act........ 13

# MEMORANDUM OF POINTS AND AUTHORITIES

## 1. Introduction and Summary of Argument

Pages filled with vitrol. Miles of print in search of an inch of meaning. "[A] morass of largely irrelevant – and sometimes contradictory allegations.." (Order Re: Pending Motions, p.3, Dkt. No. 145). How two graduates from T1 law schools produced this result is puzzling. But the results trouble more than they puzzle. Between defense counsel and this Court, these haphazard pleadings have consumed hundreds of hours of time. They have also upended professional lives, chilled speech, and improperly influenced local school-community decision-making.

In litigation that is a veritable advertisement for anti-SLAPP laws, the Consortium defendants urge make-whole redress. The law allows it, and equity calls out for it.

In a complaint this poorly thought out, it is no surprise that the wildly ranging facts and badly jumbled theories defy separation or categorization. Whatever its cause, there is no doubt that the defendants should no longer bear its consequences. We respectfully call on this Court to require full and fair compensation for the defendant's anti-SLAPP success.

## 2. Pertinent Procedural History

Plaintiffs' initial complaint (Dkt. No. 001) spanned 208 paragraphs and came to 124 pages (including exhibits.) The nature of the allegations were fully captured in this Court's recent Order Re: Pending Motions (henceforth "Order), and will be described here only insofar as necessary to explain the bases for this motion. Plaintiffs filed a First Amended Complaint (Dkt. No. 039) six weeks later that was not materially different from their original pleading. Plaintiffs then sought to further amend their complaint and negotiated a stipulation with the defendants to do so, but then delayed filing their amended complaint until the deadline for all defendants' responsive pleadings was imminent, forcing UTLA and Myart-Cruz ("UTLA

Defendants") and the Consortium Defendants, to file responsive pleadings. (Dkt. Nos. 58 and 60).

After compelling this needless filing  Plaintiffs filed their <u>second</u> "First Amended Complaint" (Dkt. No. 62), adding thirty new paragraphs (but no new causes of action) to an already unwieldy pleading. The UTLA Defendants and Consortium Defendants then renewed their attacks on the complaint (Dkt. Nos. 64 and 65 and Dkt No. 69, respectively.)

The parties then met (remotely) for a conference pursuant to Fed.R.Civ.Proc. 26(f). Following the conference Plaintiffs insisted on inserting into the Joint Report (Dkt. No. 81) claims they had not dared to make in any of the three versions of the complaint they had filed. Neither version of theFirst Amended Complaint claimed that the Consortium Defendants' curriculum was being used by the District, but merely that it *might* be used. Plaintiffs insisted that the 26f report include this new allegation. Similarly, the First Amended Complaint never claimed that the non-District Defendants had "taken effective control" of the ethnic studies curriculum. (Dkt. Nos. 39 and 62). Yet this new issue was inserted into the 26f Report.

All Defendants filed motions to stay discovery (Dkt. Nos. 82, 83, 85, 86, 87, and 88.) Dkt. 88 was the Consortium Defendants' Request for Judicial Notice. One of the items for which Notice was requested was an extrajudicial admission of Plaintiffs' counsel's law firm, "The Deborah Project" did not mind losing lawsuits so long as they were able to use the suit to get discovery. Plaintiffs filed an omnibus opposition to the motions (Dkt. No. 91) and used the occasion to accuse the Consortium Defendants of engaging in "racist and antisemetic" [sic] speech.

While the Motions to dismiss were pending Plaintiffs filed three notices of supplemental authority and also moved for leave to proceed pseudonomyously. (Dkt. No. 94.) This Court then dismissed the second version of the First Amended Complaint without prejudice, granted plaintiffs' motions to stay discovery, and denied defendants' motion to proceed pseudonymously. (Dkt. No. 116).

Plaintiffs then made their fourth attempt at a coherent pleading, filing what they called their Second Amended Complaint ("SAC") which by then had grown yet again to 258 pagraphs and 162 pages/ (Dkt. No. 119).  As this Court noted, 56 of those paragraphs focused "on the non-District defendants' actions and speech outside the classroom." Order. p. 45.  Indeed, in a suit ostensibly about high school teachers, the SAC mentioned Hamas 21 times and used the words "terror" "terrorism", or "terrorists" 45 times.

All defendants filed Motions to Dismiss and Special Motions to Strike. (Dkt. Nos. 121, 122, 124, and 125.)

On November 30, 2024 the Court granted all Defendants' motions to dismiss and special motions to strike, noting that "plaintiffs' SAC is difficult to understand and contains a morass of largely irrelevant – and sometimes contradictory – allegations, few of which state with any degree of clarity precisely what plaintiffs believe defendants have done or, more importantly, how plaintiffs have been harmed". Order, p. 3.  The Court also remarked that "Indeed, so confusing are the allegations that plaintiffs spend approximately a third of their Omnibus Memorandum of Points and Authorities in Opposition to Defendants' Motions (Dkt. 129, "Opp."), endeavoring to explain exactly what they contend their SAC alleges – and, at times, attempting to walk back certain  allegations or add new ones. (See id. at 4-17)"  Order, p. 3.

All parties stipulated to new deadlines for Defendants' fee motions and a briefing schedule.  The stipulations were granted (Dkt. Nos. 148 and 151), making the instant motion timely. (Plaintiffs have filed a Notice of Appeal from this Court's Order granting the motions to dismiss and special motions to strike, and from the Judgement (Dkt. No. 152.)

3. **Application of California's Anti-SLAPP Law in Federal Court**

Anti-SLAPP motions to strike and entitlement to fees and costs are available in federal court. United States ex rel Newsham v. Lockheed Missiles &

Space Co., 190 F.3d 963, 970-973 (9th Cir. 1999), *accord* Thoms v. Fry's Elecs., Inc. 400 F.3d 1206, 1206-1207 (9th Cir. 2005) This includes the substantive law regarding attorneys' fee awards pursuant to Cal.Code. Civ. Proc. § 425.16(c)(1). Hallock v. Healey, No. CV 20-02726-CJC(MAAx), 2020 U.S. Dist. LEXIS 198700 *30-31, 2020 WL 6255384 (C.D. Cal. Sep. 24, 2020)

Thus, although there is significant overlap between the California and federal approaches to attorneys' fee issues, where California's anti-SLAPP statute and the case law around it departs from general federal fee principles, California's substantive law regarding fees in anti-SLAPP proceedings is to be followed. *Ibid.* This difference becomes significant when the Court is asked to consider a lodestar enhancement because of our purely contingent fee arrangement with the Consortium Defendants, *infra*.

4. **Standards and Methods of Fee Calculations**

Fee awards pursuant to statute must be based on a lodestar method, multiplying the number of hours the prevailing party reasonably spent by a reasonable hourly fee. Cruz v. Alhambra Sch. Dist. 601 F.Supp.2d 1183, 1188 (C.D. Cal. 2009). In cases of exceptional success or for other reasons, an enhancement above the lodestar may be warranted. *Id.* at 1191, quoting Hensley v. Eckerhart, 461 U.S. 424, 435 (1983)

Time reasonably spent on litigation is compensable if the time would reasonably have been billed to a fee-paying client. Moreno v. City of Sacramento 534 F.3d 1106, 1111 (9th Cir. 2008). "By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case . . ." Irvine Unified Sch. Dist. V. K.G. 853 F.3d 1087, 1095 (9th Cir. 2017).

Deference to counsel's judgement includes the recognition that a diligent lawyer will explore many possible routes to success, and a wise one will not necessarily use all avenues thus explored. *See* MacDonald v. Ford Motor Co., No.

13-cv-02988-JST, 2016 U.S. Dist. LEXIS 70809, at *17 (N.D. Cal. May 31, 2016) approving compensation for time spent exploring litigation theories that were not ultimately used. Here, for example, Kleiman worked to assess the additional value that might be added by an *amicus* brief by Jewish Studies scholars who could debunk Plaintiffs' claim that robust criticism of Israel, or anti-Zionism is inherently anti-Semitic. Kleiman's billing records reflect correspondence and discussions with several such scholars but ultimately the Consortium Defendants decided that such a brief was unnecessary. Although not used, the work was done and is compensable.

5. **How to Address Fee-Shifting and Non-Fee Shifting Claims**

Since the anti-SLAPP law is substantive, it applies only to state law claims, and does not apply to claims arising from federal statutes or federal constitutional claims. The general rule is work on non-fee claims should not be awarded. Kiewit Power Constructors Co. v. City of L.A., No. 2:16-cv-02590-AB (GJSx), 2018 U.S. Dist. LEXIS 224038, at *6, 2017 WL 3478491, (C.D. Cal. Sep. 27, 2018). However, apportionment is not required where the claims "involve a common core of facts or [are] based on related legal theories" that keep the lawsuit from being viewed as a series of discrete claims. Love v. Associated Newspapers, Ltd. 611 F.3d 601, 614 (9th Cir. 2010) [Alteration in original].

The analytic problem arises when there is a close relationship between the fee and non-fee allegations a *pro rata* reduction will not ensure that the fees awarded are sufficient to represent the fees earned for the successful (or, in this case, fee-shifting) claims. Ryan v. Editions Ltd. West, Inc. 786 F.3d 754. 765-766 (9th Cir. 2015).

//

//

//

//

**A. <u>The Confusing Topography of Plaintiffs' Claims Should Not Defeat the Principle of Full Compensation for the Fee-Shifting Claims</u>.**

Plaintiffs invoke five different state-based legal theories. Four are statutory and one is constitutional. Because all five are state-based, defeating each of them establishes a basis for fee-shifting. But Plaintiffs' jumbled aggregation of this muddies the waters.

<u>Cal. Const. Art. I, § 7</u> – Plaintiffs have included this in Count I, along with a Fourteenth Amendment equal protection claim, made applicable by 42 U.S.C. §1983. Merging the state and federal claims into the same Count, based on the same facts is the most powerful example of why the fee and non-fee claims cannot be separated here. The theories are the same and the allegations on which they depend are the same.

<u>Cal. Educ. Code §§ 220, 51500, and 51501</u> These three code provisions have been lumped together in Count IV and called "Curricular Material" Discrimination, even though only one of the statutes (§51501) addresses this subject. Each of these three claims rests upon the same facts and the same analytic frame as Count I (equal protection) and Count III (Title VI of the 1964 Civil Rights Act.)

The problem is worsened because the Ed. Code. § 220 claims are to be analyzed exactly the way a Title IX violation would be, and Title VI claims affect the same plaintiffs in the same way. <u>Order</u>, 35-36. Thus any analysis of Count III's Title VI claim will be virtually identifcal to the analysis of Count IV's Education Code violations.

**B. <u>The Standing Analysis Affects Fee and Non-Fee Claims Equally</u>**

The lack of standing infects all of the claims, fee and non-fee alike. "[P]laintiffs' allegations fail to establish a concrete and particularized injury in fact." <u>Order</u>, p. 13. A separate but related ground for dismissal is plaintiffs' failure to offer any plausible explanation of how they were harmed. The danger that the

individual plaintiffs might be exposed to ideas they don't like is simply not sufficient to establish an injury. Order, p. 14. And without an injury, they also lack redressable claims. Order, pp. 18-19. with which they disagree is insufficient. Once again, the standing analysis defies separation of the fee claims from the non-fee claims.

**C. The First Amendment Analysis Affects Fee and Non-Fee Claims Equally**

Just as Plaintiffs' failure to establish standing infects all of their claims, Plaintiffs' effort to conscript this Court into restricting protected speech affects them all as well. Order, pp. 37-38. Their sought-after relief also impairs the receipt of information, treading upon the First Amendment rights of teachers the Consortium Defendants train and potentially the high school students they all educate. Order, pp. 39-40.

Were Plaintiffs the ostensible victims of wage theft and discrimination, or sex trafficking and conversion, the claims, and the work to refute them could be analyed separately. Here they cannot, and apportionment fails. Defendants are entitled to all of their work to defeat standing, and all of their work to vindicte First Amendment rights. Anything less is partial justice.

**6. Some Overlap or Duplication of Effort is Unavoidable Where Different Defendants Are Sued Under the Same Facts and Theories.**

We anticipate the the Plaintiffs will complain that lawyers in two different law firms representing two entirely different parties are sometimes duplicating their efforts. When multiple defendants are sued on the same claims there is nothing unusual about them retaining separate counsel. Such was the case here with Kleiman representing the Consortium defendants and the Bush Gottlieb firm representing the UTLA defendants. Under such circumstances no reduction is warranted unless "the attorneys are *unreasonably* doing the *same* work." Johnson

v. Univ. Coll. of Univ. of Ala., 706 F.2d 1205, 1208 (11th Cir. 1983) (emphasis in original)  There is simply no evidence of this, and no reduction for it is merited.

7. **Time Spent on This Fee Application is Compensable**

We are in a 'fees on fees' jurisdiction. Anything less would have counsel laboring mightily but without compensation for the fee application. Comm'r. INS v. Jean, 496 U.S. 154, 158 (1990); Vortex Marine Constr. v. Grimm 878 F.3d 709, 709-710 (9th Cir. 2017). Thus, the time required for this Motion is reflected in the billing records.  Moreover,  we reasonably anticipate that spending another 15 hours preparing a reply brief after seeing Plaintiffs' opposition, so this additional compensation is also requested.

8. **We Request a Reasonable Rate of $950 per Hour**

Calculating a reasonable hourly rate asks the Court to decide on what the prevailing rate would be for attorneys of comparable skill, experience, and reputation. Chalmers v. City of Los Angeles, 796 F.2d 1205, 1210-11 (9th Cir. 1986), reh'g denied, amended on other grounds, 808 F.2d 1373 (9th Cir. 1987) (citing Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984)).  The fee petitioner has the burden of producing evidence.  Blum v. Stenson, 896 n.11.

Here the evidence is (a) the results; (b) my experience (Kleiman Decl., ¶¶ 2-5; (c) my reputation (Strugar Decl., ¶ 13.), and (d) the prevailing rates, showing that my hourly rate is below many lawyers with comparable accomplishments and less experience than it. (Strugar Decl., ¶¶ 14-22.)  This is confirmed by the Declaration of Carol A. Sobel in another case (Kleiman Decl, ¶5, Exh. 1).  Sobel's rate is 21% higher than my own. And both Sobel (¶23 of her Dec, at p. 74 of the document and Strugar, ¶20, refer to the victorious defense counsel in a recent anti-SLAPP decision whose $1,400 hourly rate was deemed reasonable by Judge Kin of the Los Angeles Superior Court.  That rate is fully 50% above mine.

//

9. **An Enhanced Lodestar is Merited**

Just as the winning lawyer is entitled to a presumption that the work they did to win a case was reasonably necessary Irvine Unified Sch. Dist. V. K.G. 1095, there is a presumption that the lodestar calculation is sufficient. But rules have exceptions and presumptions may be overcome. In the right case the lodestar amount can be adjusted based upon the novelty of the issues, the skill in addressing them, and the contingent nature of the fee. MacDonald v. Ford Motor Co., No. 13-cv-02988-JST, 2016 U.S. Dist. LEXIS 70809, at *6-7 (N.D. Cal. May 31, 2016)

**A. Excellent Results With Broad Significance Merit an Enhancement**

Excellent results are also grounds for an enhancement, especially where those results benefit not just the concerned party, but have broader significance. *See* Chabner v. United of Omaha Life Ins. Co. No. C-95-0447 MHP, 1999 US Dist. Lexis 16552, *19 (enhancement due to deterrent effect curbing insurance industry discrimination against consumers with disabilities), aff'd 225 F.3d 1042 (9th Cir. 2000, Pierce v. County of Orange 905 F.Supp.2d 1017, 1040 (CD Cal. 2012) (public benefit in setting humane standards for pretrial detention).

The factors of a novel question, the quality of representation, and the contingent risk counsel accepts all merited a 1.2 multiplier in Vasquez v. Rackauckas, No. SACV09-1090 VBF(RNBx), 2011 U.S. Dist. LEXIS 83696, *8-9, 2011 WL 3320482 (C.D. Cal. July 28, 2011) (Aff'd in part and rev'd in part (reversal on other grounds) 734 F.3d 1025 (9th Cir. 2013).

The benefit to the Consortium Defendants is manifest. The broader benefit lies with teachers, school administrators, and community members up and down the state who can now make decisions about their local curriculum without fear of a ruinous lawsuit. Whether or not one agrees with the Consortium Defendants, the principle behind local schools is that decisions should be made locally, and not

by a pair of lawyers sitting thousands of miles away. Plaintiffs' counsel launched its media campaign the moment the suit was filed, and used the suit, used the defendants, and used this Court as props for political theater aimed at usurping the local school model. (Kleiman Dec., ¶¶15-16.)

**B. Enhancement is Merited Because of the Contingent Fee**

The problem with the contingent recovery of a lodestar amount is that it never makes up for either the delay in recovery or the increases risk that there will be no recovery. "The purpose of [a lodestar adjustment] is to fix a fee at the fair market value for the particular action." Graham v. DaimlerChrysler Corp., (2004) 34 Cal. 4th 553, 579. Thus the California Supreme Court maintained the importance of lodestar enhancements to offset this risk, even after City of Burlington v. Dague, 505 U.S. 557, 563-566 (1992), barring contingent fee-based enhancements (and only those enhancements). But the court must apply the substantive provisions of California's anti-SLAPP law, and apply them just as California appellate jurisprudence has applied them. Hilton v. Hallmark Cards, 599 F.3d 894, 905–07 (9th Cir. 2010). This includes the fee-shifting provisions.

Here, the Consortium Defendant's counsel accepted their case on a pure contingent fee basis. Anything less would have bankrupted the Consortium and given Plaintiffs' counsel the easy victory they hoped for. A contingent fee enhancement is allowed here – and is surely merited.

**C. Accepting an Undesirable Case Merits Enhancement**

Lawyers who advocated for Palestine or for pro-Palestine educators and activists do so at their peril. An anonymous blacklisting site, canarymission.org, smears doctors, lawyers, professors, and others as anti-Semitic. (Kleiman Dec., ¶19.) Just few minutes of searching turned up four well-regarded human rights and civil rights lawyers who have been denounced on the site.

Foley and Lardner has fired at least one lawyer over this. Chehade v. Foley & Lardner, N.D. Ill. 1:24-cv-04414, and another was forced out of New York

County Defenders Services. https://tempestmag.org/2023/12/forced-to-resign-over-palestine/ last visited Dec. 30, 2024.

Fear of being ostracized specifically may be grounds for an enhancement. Guam Soc'y of Obstetricians & Gynecologists v. Ada, 100 F.3d 691, 697 (9th Cir. 1996), and undesirability generally may be grounds for one. Camacho v. Bridgeport Fin., Inc., 523 F.3d 973, 982 n.1.

**10. CONCLUSION**

Counsel's lodestar amount is $177,460 pre-fees motion and he has reduced it 20% in an exercise of billing judgment. I have spent 37 hours reviewing my billing, and researching and writing this motion. I expect to spend at least another fifteen hours on the reply, for a total of 52 more hours, another $49,400 for a total of $226,860.

We urge the Court to consider applying a make-whole multiplier here to acknowledge both the result and the risk taken to achieve it.

Dated: December 30, 2024 By: /s/ Mark Kleiman

Mark Kleiman (SBN 115919)
Counsel for Consortium Defendants
mark@krlaw.us
KLEIMAN / RAJARAM
12121 Wilshire Blvd., Ste. 810
Los Angeles, CA 90025
Tel: 310-392-5455
Fax: 310-306-8491